# UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

FRANK E. POLO, SR.
   Plaintiff,

         v.

JUAN FERNANDEZ-BARQUIN
SCOTT MARCUS BERNSTEIN;
ST. THOMAS UNIVERSITY, INC.;

        Defendants,
_____/

)
)
) CASE NO: _____
)
)
)
) **JURY TRIAL IS DEMANDED**
)
)
)
)
)
)
)
)
)
)
)
)

FILED BY _____ D.C.

DEC 12 2025

## § 1.COMPLAINT

1. Plaintiff, FRANK E. POLO SR., files this complaint against the defendants JUAN FERNANDEZ-BARQUIN (in his Official Capacity); SCOTT MARCUS BERNSTEIN (in his Personal Capacity); ST. THOMAS UNIVERSITY, INC.; (the "DEFENDANTS" in this complaint) and alleges as follows:

## § 2. JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over Plaintiff's federal claim in **Count 1** under **28 U.S.C. § 1331** (federal question), because Count 1 arises under **42 U.S.C. § 1983** and the First and Fourteenth Amendments.

2. This Court has authority to grant declaratory relief under **28 U.S.C. §§ 2201–2202** and injunctive relief under traditional equitable principles.

3. This Court has supplemental jurisdiction over Plaintiff's state-law claims in **Counts 2–3** under **28 U.S.C. § 1367(a)** because those claims form part of the same case or controversy as Plaintiff's federal claim, in that they arise from related events and alleged injuries described in the Statement of Facts.

4. Venue is proper in the **Southern District of Florida** under **28 U.S.C. § 1391(b)** because:

A) A substantial part of the events or omissions giving rise to the claims occurred in Miami-Dade County, Florida; and b. Defendants reside in, or are located in, this District for venue purposes.

5. All acts and omissions alleged in this Complaint occurred within the Southern District of Florida unless otherwise stated.

## § 3. PARTIES

1. Plaintiff, FRANK E. POLO., individually, ("MR. POLO" or "POLO") is a resident of Miami-Dade County, Florida.

2. Defendant, JUAN FERNANDEZ-BARQUIN, is the Clerk of the Circuit Court and Comptroller of Miami-Dade County and, upon information and belief a resident of Miami Dade County.

3. Defendant, ST. THOMAS UNIVERSITY, INC. ("STU"), is a Florida Not-for-Profit Corporation organized and existing under the laws of the State of Florida, with its principal place of business in Miami-Dade County, Florida.

4. Defendants, SCOTT M. BERNSTEIN (Judge "BERNSTEIN") is, upon information and belief, a resident of Miami-Dade County

## § 4.INTRODUCTION SUMMARY OF THE CASE

## INTRODUCTION SUMMARY OF THE CASE

5. This is a civil action arising from (i) the ongoing refusal to accept and docket Plaintiff's filings in **Family Case No. 2012-017787-FC-04** through the Miami-Dade Clerk's case maintenance system, and (ii) the termination of Plaintiff's law-school enrollment and degree candidacy at St. Thomas University following disciplinary proceedings initiated after a state-court judge transmitted a recusal order and letter to STU's administration.

6. In **Count 1**, Plaintiff seeks only prospective declaratory and injunctive relief under **42 U.S.C. § 1983** against Defendant Juan Fernandez-Barquin in his official capacity as Miami-Dade Clerk of Court and Comptroller. Plaintiff alleges that the Clerk's continuing practice of rejecting filings with "Filing Moved to Correction Queue" and "barred by order of court or otherwise

incapable of being filed" prevents docketing and judicial review and thereby results in an ongoing denial of meaningful access to the courts and procedural due process.

7. In **Count 2**, Plaintiff asserts a state-law claim against St. Thomas University for breach of an implied-in-fact agreement arising from Plaintiff's enrollment and payment of tuition and fees, under which STU represented it would administer student discipline pursuant to its published Honor Code procedures. Plaintiff alleges STU suspended and ultimately expelled him through a process that departed from those published procedures, including reliance on undisclosed external materials, exclusion of Plaintiff during witness testimony, and other irregularities described in the Statement of Facts.

8. In **Count 3**, Plaintiff asserts a state-law claim for tortious interference with contract against former state-court Judge Scott Bernstein in his individual capacity. Plaintiff alleges that after Judge Bernstein recused himself and stated on the record that he was no longer the judge in Plaintiff's family case, he sent STU's Dean a letter and enclosed the recusal order on official judicial letterhead, and that STU initiated the Honor Council proceeding based on allegations contained in that recusal order, culminating in Plaintiff's expulsion and resulting damages.

9. Plaintiff seeks declaratory and injunctive relief to restore a meaningful docketing path and access to judicial review in the family case, and seeks damages from STU and Judge Bernstein as permitted by law for the educational, economic, and reputational injuries alleged.

## § 5.IMPORTANT FACTS FOR ISSUE PRECLUSION

On **July 22, 2024**, in Polo v. Bernstein, Case No. 1:23-cv-21684 (S.D. Fla., Judge Robert N. Scola, Jr.), the court dismissed the federal causes of action with prejudice and dismissed the state causes of action without prejudice (ECF No. 55).

The facts below are organized into events occurring before and after the July 22, 2024 dismissal order to provide context for the claims asserted here and to identify additional post-dismissal conduct giving rise to claims not previously dismissed with prejudice.

## § 6.STATEMENT OF FACTS

### (A) FACTS RELEVANT TO COUNT 1

1.   Miami-Dade County's Clerk of Court and Comptroller is Juan Fernandez-Barquin, whose office is responsible for docketing and maintaining filings in the Miami-Dade court case maintenance system.

2.   Plaintiff is a party to **Family Case No. 2012-017787-FC-04** in Miami-Dade County.

3.   **On October 24, 2017**, following a hearing noticed for "resolution of competing orders," the family court restricted Plaintiff's filing rights in the family case. The restriction required Plaintiff's pleadings, motions, and letters to the court to be reviewed by a member of the Florida Bar before filing.

4.   Since **October 24, 2017**, each time Plaintiff attempted to file any document in the family case, the Clerk rejected the filing with messages including: "Filing Moved to Correction Queue" and "Is barred by order of court or is otherwise incapable of being filed in the clerk's case maintenance system."

5.   Plaintiff could not afford to retain a lawyer to review filings to satisfy the filing-review restriction.

6.   **On December 19, 2025**, Plaintiff attempted to file in the family case a motion titled: "RESPONDENT'S MOTION TO DIRECT THE CLERK TO ACCEPT AND DOCKET FILINGS, TO CEASE ENFORCING VOID FILING-RESTRICTION ORDERS ENTERED WITHOUT DUE PROCESS, AND TO REMOVE/CLARIFY ANY 'DO NOT FILE' FLAG."

7.   The Clerk did not docket that **December 19, 2025** motion and instead returned it with the status "Filing Moved to Correction Queue" and the remark: "Is barred by order of court or is otherwise incapable of being filed in the clerk's case maintenance system."

### (B) FACTS RELEVANT TO COUNT 2

8.   **On January 31, 2019**, Plaintiff was enrolled at STU and tuition and fees were paid through federal student loans.

9.   **On January 31, 2019**, Plaintiff was nearing completion of his Juris Doctor degree and a Tax Law Certificate.

Page **4** of **16**

10. **On February 7, 2019,** Dean Tamara Lawson initiated an Honor Council proceeding against Plaintiff based on allegations contained in Judge Bernstein's recusal order.

11. Associate Dean Patricia Moore and Professor Jay Silver oversaw the Honor Council proceedings involving Plaintiff.

12. STU's published Honor Code includes provisions stating, among other things:
    a. the Honor Code may not be used to resolve personal conflicts (§ 3.03(A)(3));
    b. the accused student has a right to be present during testimony (§ 3.04(D)(3)(a)); and
    c. sanctions require a finding of guilt by clear-and-convincing evidence (§ 3.04(E)).

13. **On February 7, 2019,** before any Honor Council finding, STU suspended Plaintiff and, in an email sent by Dean Lawson, instructed Plaintiff to amend his Florida Bar application.

14. **On February 21, 2019,** Plaintiff requested the complaint and the identity of the accuser. STU did not provide them.

15. **On February 25, 2019,** Plaintiff emailed Professor Jay Silver and copied Honor Council members, transmitting a ninety-six (96) page document containing arguments and attachments, including court transcripts and an audio recording of a court hearing.

16. At the Honor Council hearing, Plaintiff was excluded from the room during the testimony of Professor Juan Carlos Planas, the only live witness.

17. Plaintiff was not provided a summary of Professor Planas's testimony before the hearing.

18. STU did not disclose to Plaintiff that Judge Bernstein was the initiating complainant.

19. STU did not disclose to Plaintiff certain materials supplied to the Honor Council, including filings provided by Hernandez's family-court counsel.

20. **On February 25, 2019,** Associate Dean Moore authored a "Highly Confidential Memorandum" attaching Judge Bernstein's letter and recusal order and including internal evaluative comments regarding Plaintiff.

21. STU did not provide the memorandum or its attachments to Plaintiff before the Honor Council hearing.

22. **On or about March 23, 2019**, STU deactivated Plaintiff's ID card, removed gate access, and revoked network access. Plaintiff was informed at the campus gate that his name no longer appeared on the "Current Students" list.

23. **On April 2, 2019**, Plaintiff received an automated message stating: "To qualify for graduation in May 2019; you are required to complete 50 hours of pro bono by April 25, 2019 (the last day of Spring classes). As of today, you have not met the pro bono requirement."

24. **On April 22, 2019**, STU confirmed to Plaintiff that Plaintiff's pro bono hours had been on file since 2018.

25. **On April 6, 2019**, Professor Jay Silver emailed Plaintiff stating that the Honor Council had found Plaintiff guilty of all accusations.

26. Plaintiff appealed the disciplinary decision **on or about April 16, 2019**.

27. The appeal meeting consisted of an in-person discussion with Dean Lawson and Dean Moore. During the appeal meeting, no documentary evidence was discussed, and Plaintiff was asked questions rather than being provided a review of the record on appeal.

28. During the appeal meeting, Dean Moore asked Plaintiff about his political activity, including why he ran for office.

29. During the appeal meeting, with Plaintiff's wife present outside the room and able to hear the conversation, Dean Lawson stated to Plaintiff: "I don't think your problem is cognitive, but I think your problem is one of honesty," after Plaintiff declined to admit wrongdoing.

30. **On May 17, 2019**, STU issued a letter stating that Plaintiff's expulsion was final.

31. **On May 20, 2019**, Plaintiff discovered for the first time the "Highly Confidential Memorandum" and Judge Bernstein's **January 31, 2019** letter and recusal order.

32. **On May 20, 2019**, Plaintiff contacted STU officials requesting reconsideration based on the newly discovered materials. STU did not reopen the disciplinary proceedings.

### (C) FACTS RELEVANT TO COUNT 3

33. **On January 29, 2019**, Judge Bernstein signed an order granting disqualification/recusal.

*Complaint Frank Polo*

34. At the **January 29, 2019** recusal hearing, Judge Bernstein stated on the record: "I have drafted an order granting disqualification which I am now signing in your presence."

35. After signing the recusal order at the **January 29, 2019** hearing, Plaintiff's counsel presented a motion to withdraw, and Judge Bernstein stated on the record: "I am no longer the Judge in the case. I can't sign it."

36. **On January 31, 2019**, Judge Bernstein sent a letter and his recusal order to STU's Dean Lawson on official Eleventh Judicial Circuit letterhead and with his official signature block.

37. In the **January 31, 2019** letter, Judge Bernstein wrote to STU that he "felt compelled to bring to [their] attention a matter concerning Mr. Frank Polo," identified Plaintiff as a litigant in his family-court division, and enclosed a copy of the recusal order.

38. **On February 7, 2019**, STU initiated an Honor Council proceeding against Plaintiff based on allegations contained in Judge Bernstein's recusal order and, before any Honor Council finding, suspended Plaintiff and instructed Plaintiff to amend his Florida Bar application.

39. **On February 25, 2019**, Associate Dean Moore authored a "Highly Confidential Memorandum" attaching Judge Bernstein's letter and recusal order and including internal evaluative comments regarding Plaintiff.

40. **On May 17, 2019**, STU issued a letter stating that Plaintiff's expulsion was final.

## § 7.COUNTS

**COUNT 1:** 42 U.S.C. § 1983 — PROSPECTIVE DECLARATORY AND INJUNCTIVE RELIEF (ACCESS TO COURTS / PROCEDURAL DUE PROCESS)

**Against Defendant Juan Fernandez-Barquin, in his Official Capacity as Miami-Dade Clerk of Court and Comptroller**

41. Plaintiff realleges and incorporates by reference § 4 (A), as if fully set forth here.

42. The First Amendment protects the right to petition the government for redress of grievances, including by seeking relief in court. The Fourteenth Amendment prohibits state officials from denying meaningful access to the courts through administrative practices that prevent docketing and judicial review.

43. Defendant Juan Fernandez-Barquin is the Clerk of the Court and Comptroller of Miami-Dade County and is responsible for docketing and maintaining filings in the Miami-Dade court case maintenance system.

44. Plaintiff seeks only prospective declaratory and injunctive relief to remedy ongoing violations of federal law.

45. Plaintiff has an ongoing need to file motions and other papers in Family Case No. 2012-017787-FC-04 and to obtain docketing and judicial review in that case.

46. Since **October 24, 2017**, Plaintiff has been unable to successfully file documents in the family case due to filing restrictions and administrative rejections.

47. On **December 19, 2025**, Plaintiff attempted to file "RESPONDENT'S MOTION TO DIRECT THE CLERK TO ACCEPT AND DOCKET FILINGS, TO CEASE ENFORCING VOID FILING-RESTRICTION ORDERS ENTERED WITHOUT DUE PROCESS, AND TO REMOVE/CLARIFY ANY 'DO NOT FILE' FLAG."

48. The Clerk's office did not docket the motion and instead returned it with status "Filing Moved to Correction Queue" and the remark: "Is barred by order of court or is otherwise incapable of being filed in the clerk's case maintenance system."

49. The continuing refusal to accept and docket Plaintiff's filings prevents Plaintiff from obtaining judicial review and relief in the family case and imposes an ongoing denial of access to the courts and procedural due process.

50. Unless enjoined, Defendant will continue to reject Plaintiff's filings under the same "barred by order"/case maintenance system mechanism, causing continuing and irreparable harm.

## DECLARATORY RELIEF REQUESTED

51. Plaintiff requests a declaration that the ongoing refusal to accept and docket Plaintiff's filings through the clerk's case maintenance system, including use of any "do not file" flag or equivalent mechanism that causes automatic rejection without a meaningful procedure to obtain docketing and judicial review, violates the First and Fourteenth Amendments.

## INJUNCTIVE RELIEF REQUESTED

52. Plaintiff requests a permanent injunction requiring Defendant, his agents, employees, and successors, in their official capacities, to:

B) Accept and docket Plaintiff's nonfrivolous filings tendered in Family Case No. 2012-017787-FC-04;

b. Remove, disable, or clearly identify and implement a procedure to override any "do not file" flag or equivalent case maintenance restriction that results in automatic rejection without docketing;

C) Refrain from rejecting Plaintiff's filings with "barred by order" or similar status messages when the effect is to prevent docketing and judicial review; and

D) Provide a ministerial docketing path (or an immediate presentment path to a judicial officer) so that any filing restriction is applied only after the filing is docketed and presented for judicial review.

53. Plaintiff also requests costs and any other relief the Court deems just and proper.

## § 8. STATE COUNTS

### COUNT 2: BREACH OF IMPLIED-IN-FACT AGREEMENT
AGAINST DEFENDANT ST. THOMAS UNIVERSITY, INC. ("STU")

54. Plaintiff realleges and incorporates by reference § 4 (B) of the Factual Background **that concern STU's disciplinary process and expulsion**, as though fully set forth herein.

55. STU's Student Handbook states it is not a contract. Plaintiff does not allege an express written contract based solely on the Handbook. Instead, Plaintiff alleges an implied-in-fact agreement arising from STU's acceptance of Plaintiff's enrollment and tuition payments and STU's provision of enrollment, instruction, and degree candidacy, under which STU

represented it would administer disciplinary proceedings pursuant to its published Honor Code and procedures.

56. By **January 31, 2019**, Plaintiff was enrolled at STU, his tuition and fees were paid (including through federal student loans), and STU's published Student Handbook (2014–2015) and Honor Code described the disciplinary procedures STU represented it would apply to students, including Plaintiff.

57. When Plaintiff matriculated, registered for courses, and paid tuition and fees, an implied-in-fact agreement arose between Plaintiff and STU under which STU agreed, among other things, to apply its published disciplinary rules and Honor Council procedures in a manner consistent with those published rules.

58. The Student Handbook (2014–2015) and Honor Code included provisions stating, among other things, that:

A) the Honor Code may not be used to resolve personal conflicts (§ 3.03(A)(3));

B) the accused student has a right to be present during testimony (§ 3.04(D)(3)(a)); and

C) sanctions require a finding of guilt established by clear-and-convincing evidence (§ 3.04(E)).

59. Plaintiff performed his obligations under the implied agreement by paying tuition, completing coursework, and completing required pro bono hours, which STU later confirmed had been on file since **2018**.

60. STU did not follow its published disciplinary procedures in Plaintiff's case, including the following conduct described in the incorporated facts:

A) On **February 7, 2019**, STU suspended Plaintiff and instructed him to amend his Florida Bar application before any Honor Council finding of guilt.

B) On **February 21, 2019**, Plaintiff requested the complaint and the identity of the accuser, and STU did not provide them.

C) During the Honor Council hearing, Plaintiff was excluded from the room during the testimony of Professor Juan Carlos Planas, the only live witness, and Plaintiff was not provided a summary of the testimony beforehand.

D) STU circulated or relied on materials in the Honor Council process—including a "Highly Confidential Memorandum" authored on **February 25, 2019** attaching Judge Bernstein's letter and recusal order and including internal evaluative comments—without providing the memorandum or its attachments to Plaintiff before the hearing.

E) On or about **March 23, 2019**, STU deactivated Plaintiff's ID/gate access and revoked network access while the Honor Council process remained ongoing.

F) On **April 2, 2019**, Plaintiff received an automated message stating he had not met the pro bono requirement; on **April 22, 2019**, STU confirmed to Plaintiff that his pro bono hours had been on file since **2018**.

61. On **April 6, 2019**, Professor Jay Silver emailed Plaintiff stating that the Honor Council had found Plaintiff guilty of all accusations.

62. Plaintiff appealed on or about **April 16, 2019**. The appeal meeting consisted of an in-person discussion with Dean Lawson and Dean Moore. During that meeting, Plaintiff was asked questions, and no documentary evidence was discussed.

63. On **May 17, 2019**, STU issued a letter stating that Plaintiff's expulsion was final.

64. On **May 20, 2019**, Plaintiff discovered for the first time STU's "Highly Confidential Memorandum" and Judge Bernstein's **January 31, 2019** letter and recusal order. Plaintiff requested reconsideration from STU officials based on those newly discovered materials, and STU declined to reopen the disciplinary proceedings.

65. By the conduct described above, STU breached the implied-in-fact agreement by failing to apply its published disciplinary rules and procedures in Plaintiff's case as represented in the Student Handbook/Honor Code.

66. As a direct and proximate result, Plaintiff suffered damages, including loss of educational and credential expectations, economic harm, and reputational harm, in amounts to be proven at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendant STU for damages and such other relief as the Court deems just.

## COUNT 3: TORTIOUS INTERFERENCE WITH CONTRACT

**Against Defendant Judge Scott Bernstein (Individual Capacity)**

67. Plaintiff realleges and incorporates **§ 4 (C)** of the Statement of Facts as if fully set forth herein.

68. As of **January 31, 2019**, Plaintiff had an **implied-in-fact contractual relationship** with **St. Thomas University, Inc. ("STU")** arising from Plaintiff's matriculation, registration for courses, payment of tuition and fees, and STU's provision of instruction, academic credit, and degree candidacy.

69. The terms of STU's published Student Handbook (2014–2015) and Honor Code are evidence of the disciplinary procedures and standards STU represented it would apply in connection with student discipline affecting enrollment, good standing, and graduation eligibility.

70. Plaintiff performed under the implied-in-fact agreement by paying tuition and fees through federal student loans, completing coursework, and completing required pro bono hours, which STU later confirmed had been on file since **2018**.

71. Defendant Bernstein had knowledge of Plaintiff's contractual relationship with STU because Bernstein addressed Plaintiff's status to STU in his **January 31, 2019** letter, identified Plaintiff as a litigant in his division, and transmitted the letter to STU's law-school administration concerning "a matter concerning" Plaintiff.

72. On **January 31, 2019**, after Bernstein had signed an order of disqualification/recusal on **January 29, 2019** and stated on the record that he was "no longer the Judge in the case," Bernstein sent STU's Dean Lawson a letter on official Eleventh Judicial Circuit letterhead, using his official judicial title and signature block, and enclosed his recusal order.

73. In the **January 31, 2019** letter, Bernstein wrote that he "felt compelled" to bring the matter to STU's attention, identified Plaintiff by name, and enclosed the recusal order containing allegations concerning Plaintiff.

74. On **February 7, 2019**, STU initiated an Honor Council proceeding against Plaintiff based on allegations contained in Bernstein's recusal order and, before any Honor Council finding, suspended Plaintiff and instructed Plaintiff to amend his Florida Bar application.

75. During the Honor Council process, STU used materials related to Bernstein's communications, including a "Highly Confidential Memorandum" authored **February 25, 2019** attaching Bernstein's letter and recusal order and including internal evaluative comments regarding Plaintiff.

76. On **May 17, 2019**, STU issued a letter stating Plaintiff's expulsion was final, resulting in termination of Plaintiff's ongoing contractual relationship with STU and loss of the benefits of enrollment and graduation eligibility.

77. Bernstein intentionally and unjustifiably interfered with Plaintiff's implied-in-fact contract with STU by transmitting his letter and recusal order to STU for the purpose and with the foreseeable effect of prompting STU to take adverse action affecting Plaintiff's enrollment and graduation status.

78. Bernstein was not a party to Plaintiff's contract with STU and had no contractual right or administrative role within STU's disciplinary process.

79. As a direct and proximate result of Bernstein's interference, Plaintiff suffered damages including loss of educational and credential expectations, lost career opportunities, out-of-pocket and consequential losses, and reputational harm, in amounts to be proven at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendant Judge Scott Bernstein for compensatory damages, costs, and such other relief as the Court deems just and proper.

## § 9. DAMAGES

80. As a result of the acts alleged in this Complaint, Plaintiff has suffered damages, subject to proof at trial, including:

**A. Reliance damages** (primarily attributable to the STU-related conduct), including:

81. Tuition and fees paid to St. Thomas University ("STU");

82. Out-of-pocket costs for books, materials, and bar-related expenses;

83. The value of time and resources expended in reliance on continued enrollment and expected graduation;

84. Forgone alternative professional opportunities pursued or deferred in reliance on completing STU's J.D. program, including pursuing high-level certifications; and

85. Business-related losses Plaintiff contends were incurred in reliance on completing STU's program, including disposal or liquidation of telecommunications business assets.

**B. Expectation and consequential damages** (primarily attributable to the STU-related conduct), including:

86. 6. Loss of the opportunity to complete legal education and pursue bar admission;

87. Lost earning capacity and career opportunities associated with the legal career Plaintiff expected to pursue; and

88. Lost income and profits Plaintiff contends he would have earned had he returned to or continued in his telecommunications business instead of committing to STU's program during the relevant period.

**C. Reputational and professional harm** (primarily attributable to the STU-related conduct), including:

89. Harm to Plaintiff's reputation in professional and business communities; and

90. Impaired employment, licensing, and business opportunities.

**D. Non-economic damages** (where recoverable under applicable law and supported by evidence),                                                                                     including:

11. Emotional distress and mental anguish associated with the loss of educational, professional, and parental-rights-related interests.

**E. Costs and other losses** proven at trial and recoverable under applicable law.

91. Separately, with respect to Count 1, Plaintiff alleges ongoing and irreparable injury from the continuing refusal to accept and docket filings in the family case, which prevents Plaintiff from obtaining judicial review and relief, and for which legal remedies are inadequate.

## § 10. PRAYER FOR RELIEF

82. Plaintiff respectfully requests that the Court enter judgment as follows:

### A. Count 1 — Prospective Declaratory and Injunctive Relief (Against Fernandez-Barquin in his official capacity)

92. A declaration that the ongoing refusal to accept and docket Plaintiff's filings through the clerk's case maintenance system, including use of any "do not file" flag or equivalent mechanism that causes automatic rejection without a meaningful procedure to obtain docketing and judicial review, violates the First and Fourteenth Amendments;

93. A permanent injunction requiring Defendant, his agents, employees, and successors, in their official capacities, to:

   A) Accept and docket Plaintiff's nonfrivolous filings tendered in **Family Case No. 2012-017787-FC-04**;

   B) Remove, disable, or clearly identify and implement a procedure to override any "do not file" flag or equivalent case maintenance restriction that results in automatic rejection without docketing;

   C) Refrain from rejecting Plaintiff's filings with "barred by order of court" or similar status messages when the effect is to prevent docketing and judicial review; and

   D) Provide a ministerial docketing path (or an immediate presentment path to a judicial officer) so that any filing restriction is applied only after the filing is docketed and presented for judicial review; and

94. Costs as allowed by law, and such other relief as the Court deems just and proper.

### B. Count 2 — Breach of Implied-in-Fact Agreement (Against STU)

95. Compensatory damages in an amount to be proven at trial, including reliance, expectation, consequential, reputational, and other recoverable damages described in § 7;

96. Pre- and post-judgment interest as allowed by law;

97. Costs of suit and, where permitted by law, attorney's fees; and

98. Such other relief as the Court deems just and proper.

### C. Count 3 — Tortious Interference with Contract (Against Judge Bernstein in his individual capacity)

99. Compensatory damages in an amount to be proven at trial, including the categories of damages described in § 7 that are proven to have been proximately caused by the alleged interference;

100.    Pre- and post-judgment interest as allowed by law;

101.    Costs of suit and, where permitted by law, attorney's fees;

102.    Punitive damages only if and to the extent allowed by applicable law; and

103.    Such other relief as the Court deems just and proper.

104.    Plaintiff further requests any additional relief the Court deems just and proper.

Respectfully submitted,

Dated: December 22, 2025

Frank E. Polo
FRANK E. POLO, SR.
Plaintiff, Pro Se
1475 SW 8th St Apt 411, Miami, FL. 33135
Telephone: 305-901-3360
Email: Frank.Polo@msn.com