# UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

FRANK E. POLO, SR.                                   )
    Plaintiff,                                       )
       v.                                           )   CASE NO: **25-CV-26058**
                                 )
JUAN FERNANDEZ-BARQUIN;                               )
SCOTT MARCUS BERNSTEIN;                               )
MERLIN HERNANDEZ;                                     )   **JURY TRIAL IS DEMANDED**
RANDOLPH MARTINEZ;                                    )
MANUEL SEGARRA, III;                                  )
ST. THOMAS UNIVERSITY, INC.;                          )

FILED BY _Mco_ D.C.

JAN 14 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

    Defendants,

## § 1. FIRST AMENDED COMPLAINT

1. Plaintiff, FRANK E. POLO SR., files this complaint against the defendants JUAN FERNANDEZ-BARQUIN (in his Official Capacity); MANUEL A. SEGARRA, III; SCOTT MARCUS BERNSTEIN (in his Personal Capacity); ST. THOMAS UNIVERSITY, INC.; MERLIN HERNANDEZ, and RANDOLPH MARTINEZ (the "DEFENDANTS" in this complaint), and alleges as follows:

## § 2. JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over Plaintiff's federal claims under **28 U.S.C. § 1331** because Plaintiff asserts claims arising under **42 U.S.C. §§ 1983** and **1985(2)** and the First and Fourteenth Amendments.

3. This Court has authority to grant declaratory relief under **28 U.S.C. §§ 2201–2202** and injunctive relief under traditional equitable principles.

4. This Court has supplemental jurisdiction over Plaintiff's state-law claims under **28 U.S.C. § 1367(a)** because the state-law claims form part of the same case or controversy as the federal claims and arise from related events and alleged injuries described in the Statement of Facts.

5. Venue is proper in the Southern District of Florida under **28 U.S.C. § 1391(b)** because a substantial part of the events or omissions giving rise to the claims occurred in Miami-Dade County, Florida; and at least one Defendant resides in or is located in this District for venue purposes.

6. All acts and omissions alleged occurred within this District unless otherwise stated.

7.   To the extent Plaintiff asserts any state-law claims that were previously dismissed without prejudice in the prior federal action, Plaintiff pleads that the limitations period was tolled pursuant to **28 U.S.C. § 1367(d)** during the pendency of the prior action and for the applicable post-dismissal period.

8.   Plaintiff does not reassert any federal claims previously dismissed with prejudice in the prior action and pleads pre-dismissal conduct only as factual predicates where relevant.

## § 3. PARTIES

9.   Plaintiff **FRANK E. POLO, SR.** is a resident of Miami-Dade County, Florida.

10. Defendant **JUAN FERNANDEZ-BARQUIN** is the Clerk of the Circuit Court and Comptroller of Miami-Dade County, Florida, and is sued in his official capacity for prospective declaratory and injunctive relief only.

11. Defendant **ST. THOMAS UNIVERSITY, INC.** ("STU") is a Florida not-for-profit corporation with its principal place of business in Miami-Dade County, Florida.

12. Defendant **SCOTT MARCUS BERNSTEIN,** a judicial officer assigned to the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, is sued in his individual capacity.

13. Defendant **MERLIN HERNANDEZ** is, upon information and belief, a resident of Miami-Dade County, Florida.

14. Defendant **RANDOLPH MARTINEZ** is, upon information and belief, a resident of Miami-Dade County, Florida.

15. Defendant **MANUEL A. SEGARRA, III** is, upon information and belief, a Florida resident and/or an attorney conducting business in Miami-Dade County, Florida.

## § 4.INTRODUCTION SUMMARY OF THE CASE

16. This action arises from two injury clusters: (i) an ongoing Clerk practice that prevents Plaintiff's filings from being accepted and docketed in Miami-Dade Family Case No. **2012-017787-FC-04,** thereby blocking docketing and judicial review; and (ii) Plaintiff's law-school discipline and expulsion at St. Thomas University ("STU") following proceedings Plaintiff alleges relied on undisclosed materials and irregular procedures.

17. **Count 1** seeks prospective declaratory and injunctive relief under 42 U.S.C. § 1983 against Defendant Fernandez-Barquin in his official capacity for an ongoing denial of access to courts and procedural due process based on continuing rejection of attempted filings through the case maintenance system.

18. **Count 2** asserts a claim under 42 U.S.C. § 1985(2) against Defendants Hernandez and Martinez based on alleged retaliation "on account of" Plaintiff's participation as a party in federal court proceedings, as pleaded in the post–July 22, 2024 allegations.

19. **Count 3** asserts a claim under 42 U.S.C. § 1985(2) against Defendants Hernandez and Segarra based on alleged retaliatory coordination tied to post–July 22, 2024 recordation/encumbrance conduct pleaded as injury to Plaintiff's property interests "on account of" Plaintiff's federal-court participation.

20. **Count 4** asserts a Florida claim against STU for breach of an implied-in-fact agreement arising from Plaintiff's enrollment and tuition payments. Plaintiff alleges STU suspended and expelled him through a process that departed from its published Honor Code procedures, including withholding core information, excluding Plaintiff from witness testimony, and relying on undisclosed materials.

21. **Count 5** asserts a Florida claim for tortious interference against Defendant Bernstein (individual capacity) based on alleged extrajudicial communications to STU that foreseeably prompted adverse disciplinary action.

22. **Count 6** asserts a Florida claim for civil conspiracy against STU and Bernstein (individual capacity) based on alleged coordinated acts to procure Plaintiff's expulsion through extrajudicial communications and procedural concealment within the Honor Council process.

23. Plaintiff seeks (i) prospective declaratory and injunctive relief to restore a ministerial docketing path and access to judicial review in the family case, and (ii) damages and appropriate equitable relief (including expungement/annotation of STU disciplinary records) as permitted by law.

## § 5. STATEMENT OF FACTS

### (A) FACTS RELEVANT TO COUNT 1

1. Miami-Dade County's Clerk of Court and Comptroller is Juan Fernandez-Barquin, whose office is responsible for docketing and maintaining filings in the Miami-Dade court case maintenance system.

2. Plaintiff is a party to **Family Case No. 2012-017787-FC-04** in Miami-Dade County.

3. **On October 24, 2017**, following a hearing noticed for "resolution of competing orders," the family court restricted Plaintiff's filing rights in the family case. The restriction required Plaintiff's pleadings, motions, and letters to the court to be reviewed by a member of the Florida Bar before filing.

4. Since **October 24, 2017**, each time Plaintiff attempted to file any document in the family case, the Clerk rejected the filing with messages including: "Filing Moved to Correction Queue" and "Is barred by order of court or is otherwise incapable of being filed in the clerk's case maintenance system."

5. Plaintiff could not afford to retain a lawyer to review filings to satisfy the filing-review restriction.

6. **On December 19, 2025**, Plaintiff attempted to file in the family case a motion titled: "RESPONDENT'S MOTION TO DIRECT THE CLERK TO ACCEPT AND DOCKET FILINGS, TO CEASE ENFORCING VOID FILING-RESTRICTION ORDERS ENTERED WITHOUT DUE PROCESS, AND TO REMOVE/CLARIFY ANY 'DO NOT FILE' FLAG."

7. The Clerk did not docket that **December 19, 2025** motion and instead returned it with the status "Filing Moved to Correction Queue" and the remark: "Is barred by order of court or is otherwise incapable of being filed in the clerk's case maintenance system."

### (B) FACTS RELEVANT TO COUNT 2

(Conspiracy To Intimidate or Injure a Party – Hernandez and Martinez)

8. On **May 4, 2023**, Plaintiff filed a federal civil action asserting constitutional and related claims against Defendant Hernandez, Defendant Martinez, and state judicial officers, including Judges Bernstein and Multack.

9. Plaintiff's filing of the federal action constituted protected activity under the First Amendment.

10. On **July 22, 2024**, in *Polo v. Bernstein*, Case No. 1:23-cv-21684 (S.D. Fla.), the court dismissed Plaintiff's federal claims with prejudice and dismissed the state-law claims without prejudice.

11. At all relevant times, Plaintiff and Defendant Hernandez were subject to a controlling **Agreed Final Judgment**, which incorporated a **Mediated Settlement Agreement ("MSA")** governing parental rights and obligations.

12. The Agreed Final Judgment and MSA expressly prohibited either parent from taking the minor children on **international travel** without either (a) the express consent of the other parent or (b) a court order authorizing such travel.

13. Defendant Martinez was present at the mediation during which the MSA was reached and had actual knowledge of the international-travel restriction contained in the agreement.

14. Following Plaintiff's federal filing, Plaintiff remained subject to **filing restrictions and access barriers** in the family-court case that limited his ability to obtain timely judicial review or enforcement of the Agreed Final Judgment.

15. On **July 23, 2024**, one day after the federal dismissal order, Defendant Hernandez recorded a state-court judgment arising from the family-court case in the Miami-Dade County Official Records as **CFN 2024R0553664**, encumbering Plaintiff's property interests.

16. In **June 2025**, during a period in which the Agreed Final Judgment granted Plaintiff exclusive time-sharing with the children, Defendants Hernandez and Martinez removed the children from the United States to the **Bahamas** without Plaintiff's consent and without any court order authorizing international travel.

17. After Plaintiff objected to the international travel, Defendant Hernandez asserted that Plaintiff's consent was not required because the travel involved a cruise to the Bahamas for which passports were not required.

18. At the time of the June 2025 removal, Defendants Hernandez and Martinez knew that the Agreed Final Judgment prohibited international travel without Plaintiff's consent or a court order, regardless of passport requirements.

19. Defendants Hernandez and Martinez further knew that Plaintiff's ability to obtain timely judicial relief remained impaired by existing filing restrictions and access barriers in the family-court case.

20. Following the July 22, 2024 federal dismissal order, and contemporaneously with the judgment recording and international removal, Defendant Hernandez engaged in a continued pattern of unilateral conduct and delayed notice in matters requiring parental coordination, which Plaintiff alleges solely as contextual evidence of intent and continuation of conduct.

21. The adverse actions described above occurred after Plaintiff's protected federal litigation and in circumstances in which Defendants Hernandez and Martinez were aware that Plaintiff's access to state-court enforcement mechanisms was materially limited.

22. As a result of Defendants' post-litigation conduct, Plaintiff was deprived of court-ordered time-sharing, subjected to encumbrances on property interests, and deterred from the continued exercise of protected First Amendment activity.

## (C) FACTS RELEVANT TO COUNT 3

### *(Conspiracy To Intimidate or Injure a Party – Hernandez and Segarra)*

23. Between **September 14, 2018** and **September 30, 2018,** Segarra initiated personal service attempts at Plaintiff's residence for papers also served electronically, reflected in a return of non-service after multiple attempts. During the **2018 academic year,** Segarra's office had direct knowledge Plaintiff was attending law school through a paralegal who attended STU Law with Plaintiff. Hernandez also questioned the minor children about whether Plaintiff was home or away. Plaintiff pleads these facts as circumstantial evidence Defendants knew or should have known Plaintiff was frequently away when home service was attempted.

24. Between **January 31, 2019** and **February 26, 2019,** St. Thomas University officials received family-court filings supplied by Hernandez's counsel. In an internal email to Honor Council participants, an STU official stated: "Mr. Manuel Segarra, the opposing counsel in that case, provided me with numerous filings."

25. On **October 8, 2021,** Plaintiff filed a federal civil action seeking injunctive and declaratory relief arising from Plaintiff's family-court proceedings.

26. Defendant Segarra served as Defendant Hernandez's counsel in Plaintiff's family-court case and communicated with Hernandez regarding litigation strategy and enforcement actions directed at Plaintiff.

27. On **July 5, 2022**, during a hearing in the family case, the presiding judge indicated Plaintiff would be permitted to file motions/pleadings to raise jurisdictional issues; Plaintiff advised the court that he had filed federal litigation against state judicial actors. On **July 11, 2022**, the court entered an order materially limiting Plaintiff's filing access to limited pleadings restricted to a single attorney's-fee motion.

28. On **March 13, 2023**, a state-court judgment for attorney's fees and/or costs was entered.

29. On **May 4, 2023**, Plaintiff filed a federal civil action asserting claims against, among others, Hernandez and Segarra.

30. On **July 22, 2024**, the federal court dismissed Plaintiff's federal claims with prejudice and dismissed state-law claims without prejudice. On **July 23, 2024**, Hernandez recorded the **March 13, 2023** judgment in the Miami-Dade County Official Records as CFN 2024R0553664, encumbering Plaintiff's property interests. Plaintiff pleads the timing of the recordation—one day after the federal dismissal—as circumstantial evidence that the recordation was used as a coercive act aimed at punishing Plaintiff for federal litigation and deterring further resort to federal court.

31. On **January 27, 2024**, Plaintiff had recorded a Lady Bird deed reflecting a remainder interest in real property. Despite that recorded interest, Hernandez did not record the judgment until **July 23, 2024**.

32. Segarra was a named defendant in Plaintiff's **May 4, 2023** federal case. On information and belief, Segarra participated in the retaliatory objective by coordinating with Hernandez concerning the timing and use of the **July 23, 2024** recordation as a coercive response to Plaintiff's federal litigation activity.

### (D) FACTS RELEVANT TO COUNT 4

33. **On January 31, 2019**, Plaintiff was enrolled at STU, and tuition and fees were paid through federal student loans.

34. **On January 31, 2019**, Plaintiff was nearing completion of his Juris Doctor degree and a Tax Law Certificate.

35. **On February 7, 2019,** Dean Tamara Lawson initiated an Honor Council proceeding against Plaintiff based on allegations contained in Judge Bernstein's recusal order.

36. Associate Dean Patricia Moore and Professor Jay Silver oversaw the Honor Council proceedings involving Plaintiff.

37. STU's published Honor Code includes provisions stating, among other things: a. the Honor Code may not be used to resolve personal conflicts (§ 3.03(A)(3)); b. the accused student has a right to be present during testimony (§ 3.04(D)(3)(a)); and c. sanctions require a finding of guilt by clear-and-convincing evidence (§ 3.04(E)).

38. **On February 7, 2019,** before any Honor Council finding, STU suspended Plaintiff and, in an email sent by Dean Lawson, instructed Plaintiff to amend his Florida Bar application.

39. **On February 21, 2019,** Plaintiff requested the complaint and the identity of the accuser. STU did not provide them.

40. **On February 25, 2019,** Plaintiff emailed Professor Jay Silver and copied Honor Council members, transmitting a ninety-six (96) page document containing arguments and attachments, including court transcripts and an audio recording of a court hearing.

41. At the Honor Council hearing, Plaintiff was excluded from the room during the testimony of Professor Juan Carlos Planas, the only live witness.

42. Plaintiff was not provided a summary of Professor Planas's testimony before the hearing.

43. STU did not disclose to Plaintiff that Judge Bernstein was the initiating complainant.

44. Between **January 31, 2019** and **February 26, 2019,** an STU employee sent an email to Honor Council members stating that "Mr. Manuel Segarra, the opposing counsel in that case, provided me with numerous filings." Plaintiff pleads this as evidence that STU obtained litigation materials from an adverse party and relied on those materials in connection with the Honor Council proceedings.

45. **On February 25, 2019,** Associate Dean Moore authored a "Highly Confidential Memorandum" attaching Judge Bernstein's letter and recusal order and including internal evaluative comments regarding Plaintiff.

46. STU did not provide the memorandum or its attachments to Plaintiff before the Honor Council hearing.

47. **On or about March 23, 2019**, STU deactivated Plaintiff's ID card, removed gate access, and revoked network access. Plaintiff was informed at the campus gate that his name no longer appeared on the "Current Students" list.

48. **On April 2, 2019**, Plaintiff received an automated message stating: "To qualify for graduation in May 2019, you are required to complete 50 hours of pro bono by April 25, 2019 (the last day of Spring classes). As of today, you have not met the pro bono requirement."

49. **On April 22, 2019**, STU confirmed to Plaintiff that Plaintiff's pro bono hours had been on file since 2018.

50. **On April 6, 2019**, Professor Jay Silver emailed Plaintiff stating that the Honor Council had found Plaintiff guilty of all accusations.

51. Plaintiff appealed the disciplinary decision **on or about April 16, 2019**.

52. The appeal meeting consisted of an in-person discussion with Dean Lawson and Dean Moore. During the appeal meeting, no documentary evidence was discussed, and Plaintiff was asked questions rather than being provided a review of the record on appeal.

53. During the appeal meeting, Dean Moore asked Plaintiff about his political activity, including why he ran for office.

54. During the appeal meeting, with Plaintiff's wife present outside the room and able to hear the conversation, Dean Lawson stated to Plaintiff: "I don't think your problem is cognitive, but I think your problem is one of honesty," after Plaintiff declined to admit wrongdoing.

55. **On May 17, 2019**, STU issued a letter stating that Plaintiff's expulsion was final.

56. **On May 20, 2019**, Plaintiff discovered for the first time the "Honor Council Material," which was classified as "Highly Confidential," and contained, among other things, Judge Bernstein's **January 31, 2019** letter and the **January 29, 2019** recusal order.

57. Additionally, the "Honor Council Material" contained a "Highly Confidential Memorandum" prepared by Dean Moore, which contained a Contradictory and misleading characterization of Plaintiff's appeal used to label him "frivolous."

58. In a February 25, 2019 memorandum to Professor Jay Silver, Associate Dean Patricia Moore acknowledged that Plaintiff's March 30, 2016 Notice of Appeal to the Third District Court of Appeal (No. 16-720) was "not clear" as to whether it appealed a contempt order or the Amended Final Judgment. In the same memorandum, Moore later asserted that Plaintiff "apparently appealed" the 2015 Amended Final Judgment in 2016 and that the Third District affirmed in 2017, and then used that framing to deem Plaintiff's arguments "frivolous on their face." The memorandum therefore relied on an internally inconsistent and misleading description of the appellate record to brand Plaintiff's filings as frivolous and vexatious.

59. **Adverse conclusions issued despite admitted lack of key documents and explanations.** Moore's memorandum concedes she lacked key filings and context, including the absence of documents "that might shed further light," the absence of the "Supplemental Petition," and that she did not know why Plaintiff was found in contempt. Nonetheless, Moore rendered extreme professional-judgment conclusions about Plaintiff's character and fitness, adopting "Judge Bernstein's assessment" that Plaintiff was vexatious and suggesting Plaintiff's "sense of reality is dangerously distorted."

60. **Undisclosed, ex parte memorandum used in Honor Council proceedings.** The Moore memorandum was labeled "confidential" and "protected" (attorney-client / work product). It was generated for internal use by STU decisionmakers and was relied upon to prosecute and adjudicate Plaintiff's Honor Council case; however, it was not disclosed to Plaintiff before the hearings, depriving Plaintiff of a fair opportunity to rebut the memo's factual claims and adverse inferences.

61. **On May 20, 2019**, Plaintiff contacted STU officials requesting reconsideration based on the newly discovered materials. STU did not reopen the disciplinary proceedings.

### (E) FACTS RELEVANT TO COUNT 5

62. **On January 29, 2019**, Judge Bernstein signed an order granting disqualification/recusal.

63. At the **January 29, 2019** recusal hearing, Judge Bernstein stated on the record: "I have drafted an order granting disqualification which I am now signing in your presence."

64. After signing the recusal order at the **January 29, 2019** hearing, Plaintiff's counsel presented a motion to withdraw, and Judge Bernstein stated on the record: "I am no longer the Judge in the case. I can't sign it."

65. **On January 31, 2019**, Judge Bernstein sent a letter and his recusal order to STU's Dean Lawson on official Eleventh Judicial Circuit letterhead and with his official signature block.

66. In the **January 31, 2019** letter, Judge Bernstein wrote to STU that he "felt compelled to bring to [their] attention a matter concerning Mr. Frank Polo," identified Plaintiff as a litigant in his family-court division, and enclosed a copy of the recusal order.

67. **On February 7, 2019**, STU initiated an Honor Council proceeding against Plaintiff based on allegations contained in Judge Bernstein's recusal order and, before any Honor Council finding, suspended Plaintiff and instructed Plaintiff to amend his Florida Bar application.

68. **On February 25, 2019**, Associate Dean Moore authored a "Highly Confidential Memorandum" attaching Judge Bernstein's letter and recusal order and including internal evaluative comments regarding Plaintiff.

69. **On May 17, 2019**, STU issued a letter stating that Plaintiff's expulsion was final.

## § 6. FEDERAL COUNTS

### COUNT 1:    42 U.S.C. § 1983 — PROSPECTIVE DECLARATORY AND INJUNCTIVE RELIEF (ACCESS TO COURTS / PROCEDURAL DUE PROCESS)
**Against Defendant Juan Fernandez-Barquin, in his Official Capacity as Miami-Dade Clerk of Court and Comptroller**

70. Plaintiff realleges and incorporates by reference Section 5(A), titled "FACTS RELEVANT TO COUNT 1".

71. The First Amendment protects the right to petition the government for redress of grievances, including by seeking relief in court. The Fourteenth Amendment prohibits state officials from denying meaningful access to the courts through administrative practices that prevent docketing and judicial review.

72. Defendant Juan Fernandez-Barquin is the Clerk of the Court and Comptroller of Miami-Dade County and is responsible for docketing and maintaining filings in the Miami-Dade court case maintenance system.

73. Plaintiff seeks only prospective declaratory and injunctive relief to remedy ongoing violations of federal law.

74. Plaintiff has an ongoing need to file motions and other papers in Family Case No. 2012-017787-FC-04 and to obtain docketing and judicial review in that case.

75. Since **October 24, 2017**, Plaintiff has been unable to successfully file documents in the family case due to filing restrictions and administrative rejections.

76. On **December 19, 2025**, Plaintiff attempted to file "RESPONDENT'S MOTION TO DIRECT THE CLERK TO ACCEPT AND DOCKET FILINGS, TO CEASE ENFORCING VOID FILING-RESTRICTION ORDERS ENTERED WITHOUT DUE PROCESS, AND TO REMOVE/CLARIFY ANY 'DO NOT FILE' FLAG."

77. The Clerk's office did not docket the motion and instead returned it with status "Filing Moved to Correction Queue" and the remark: "Is barred by order of court or is otherwise incapable of being filed in the clerk's case maintenance system."

78. The continuing refusal to accept and docket Plaintiff's filings prevents Plaintiff from obtaining judicial review and relief in the family case and imposes an ongoing denial of access to the courts and procedural due process.

79. Unless enjoined, Defendant will continue to reject Plaintiff's filings under the same "barred by order"/case maintenance system mechanism, causing continuing and irreparable harm.

## DECLARATORY RELIEF REQUESTED

80. Plaintiff requests a declaration that the ongoing refusal to accept and docket Plaintiff's filings through the clerk's case maintenance system, including use of any "do not file" flag or equivalent mechanism that causes automatic rejection without a meaningful procedure to obtain docketing and judicial review, violates the First and Fourteenth Amendments.

## INJUNCTIVE RELIEF REQUESTED

81. Plaintiff requests a permanent injunction requiring Defendant, his agents, employees, and successors, in their official capacities, to:

    A)  Accept and docket Plaintiff's nonfrivolous filings tendered in Family Case No. 2012-017787-FC-04;

B) Remove, disable, or clearly identify and implement a procedure to override any "do not file" flag or equivalent case maintenance restriction that results in automatic rejection without docketing;

C) Refrain from rejecting Plaintiff's filings with "barred by order" or similar status messages when the effect is to prevent docketing and judicial review; and

D) Provide a ministerial docketing path (or an immediate presentment path to a judicial officer) so that any filing restriction is applied only after the filing is docketed and presented for judicial review.

82. Plaintiff also requests costs and any other relief the Court deems just and proper.

83. **Irreparable Harm / No Adequate Remedy at Law**: Plaintiff is suffering ongoing and irreparable injury from the continuing refusal to accept and docket filings in Family Case No. **2012-017787-FC-04**, including denial of meaningful access to the courts and denial of a ministerial docketing path that would permit judicial review. Plaintiff lacks an adequate remedy at law for this ongoing deprivation and therefore seeks declaratory and injunctive relief.

**WHEREFORE,** Plaintiff respectfully requests that the Court grant the declaratory and permanent injunctive relief requested above (and as set forth in § 9), award costs, and grant such other relief as the Court deems just and proper.

### COUNT 2: 42 U.S.C. § 1985(2) — CONSPIRACY TO INTIMIDATE OR INJURE A PARTY ON ACCOUNT OF FEDERAL COURT PROCEEDINGS

#### Against Defendants Hernandez and Martinez

84. Plaintiff realleges and incorporates by reference Section 5(B), titled "FACTS RELEVANT TO COUNT 2".

85. On **May 4, 2023,** Plaintiff filed a civil action in the United States District Court for the Southern District of Florida against, among others, Defendant Hernandez and Defendant Martinez. Plaintiff was a **party** to that federal case.

86. Defendant Hernandez and Defendant Martinez had actual knowledge of Plaintiff's federal case and of Plaintiff's participation as a party.

87. Following Plaintiff's federal filing, and as contextual evidence of motive and intent, Defendants engaged in conduct reflecting hostility toward Plaintiff's resort to federal court and a continuing course of coercive conduct directed at Plaintiff's parental and property interests.

88. At all relevant times, Plaintiff and Defendant Hernandez were subject to a controlling Agreed Final Judgment incorporating a Mediated Settlement Agreement ("MSA") governing time-sharing and expressly prohibiting international travel with the children absent Plaintiff's consent or a court order. Defendant Martinez had actual knowledge of this restriction.

89. **Agreement.** Defendants Hernandez and Martinez reached an understanding and agreement to injure Plaintiff in his person and property, and to impose coercive consequences upon him, **on account of** Plaintiff's participation in federal court proceedings and to deter Plaintiff from continuing to pursue federal judicial relief.

90. **Overt act (post–July 22, 2024).** On or about June 9–13, 2025, during a period in which the Agreed Final Judgment granted Plaintiff exclusive time-sharing, Defendants Hernandez and Martinez intentionally removed the children from the United States to the Bahamas **without Plaintiff's consent and without any court order authorizing international travel.**

91. Defendants' June 2025 removal of the children was coercive and intimidating in its natural and intended effect because it deprived Plaintiff of court-ordered time-sharing, imposed immediate emotional and practical harm, and placed Plaintiff in the position of either acquiescing or attempting to seek emergency judicial relief under constraints Defendants knew materially impaired prompt enforcement.

92. When Plaintiff objected to the international travel, Defendant Hernandez asserted that Plaintiff's consent was not required because the travel involved a cruise to the Bahamas for which passports were allegedly not required, notwithstanding the unambiguous restriction in the Agreed Final Judgment and MSA.

93. **Injury "on account of" federal-court participation.** Defendants' June 2025 removal of the children was undertaken with retaliatory purpose—i.e., to punish Plaintiff for having brought and pursued federal litigation and to discourage Plaintiff from further resort to federal courts—thereby injuring Plaintiff "in his person or property on account of his having so attended" a court of the United States within the meaning of § 1985(2).

94. **Damages.** As a direct and proximate result of Defendants' post, July 22, 2024, retaliatory conduct, Plaintiff suffered injury, including loss of court-ordered time-sharing, emotional distress, and other compensable damages to be proven at trial.

**WHEREFORE,** Plaintiff demands judgment against Defendants Hernandez and Martinez, jointly and severally, for compensatory damages, costs, and such other relief as the Court deems just and proper.

## COUNT 3: 42 U.S.C. § 1985(2) CONSPIRACY TO INTIMIDATE OR INJURE A PARTY ON ACCOUNT OF FEDERAL COURT PROCEEDINGS

### (Against Defendants HERNANDEZ and SEGARRA)

95. Plaintiff realleges and incorporates by reference Section 5(C), titled "FACTS RELEVANT TO COUNT 3". Plaintiff alleges pre–**July 22, 2024** events solely as background evidence of motive, knowledge, and intent, and does not seek damages on this Count for any pre–**July 22, 2024** injury previously adjudicated.

96. Plaintiff participated as a party in federal court proceedings beginning **October 8, 2021,** and again on **May 4, 2023,** by filing federal civil actions seeking judicial relief.

97. Defendants Hernandez and Segarra had actual knowledge of Plaintiff's federal-court participation.

98. Defendants Hernandez and Segarra agreed to injure Plaintiff in his person and property, and to impose coercive financial consequences upon him, on account of Plaintiff's federal-court participation and for the purpose of deterring Plaintiff from further resort to federal court.

99. As an overt act in furtherance of the agreement, on **July 23, 2024**—one day after the **July 22, 2024** federal dismissal—Hernandez recorded a state-court judgment in the Miami-Dade County Official Records as CFN 2024R0553664, thereby encumbering Plaintiff's property interests.

100.     At the time of the **July 23, 2024** recording, Segarra was not only Hernandez's counsel but also a named defendant in Plaintiff's federal litigation filed **May 4, 2023,** and therefore had a personal stake in deterring Plaintiff from further federal litigation.

101.     On information and belief, Segarra communicated with Hernandez regarding, and approved, the timing and use of the **July 23, 2024** recording as a coercive response to Plaintiff's federal-court participation.

102.     As a direct and proximate result of the post–**July 22, 2024** recording and encumbrance, Plaintiff suffered injury to property interests, including clouded title and related economic harm, and other damages to be proven at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendants Hernandez and Segarra, jointly and severally, for compensatory damages, costs, and such other relief as the Court deems just and proper.

## § 7. STATE COUNTS

### COUNT 4: BREACH OF IMPLIED-IN-FACT AGREEMENT
#### (AGAINST DEFENDANT ST. THOMAS UNIVERSITY, INC. ("STU"))

103.     Plaintiff realleges and incorporates by reference Section 5(D), titled "FACTS RELEVANT TO COUNT 4" of the Factual Background **that concerns STU's disciplinary process and expulsion**, as though fully set forth herein.

104.     STU's Student Handbook states it is not a contract. Plaintiff does not allege an express written contract based solely on the Handbook. Instead, Plaintiff alleges an implied-in-fact agreement arising from STU's acceptance of Plaintiff's enrollment and tuition payments and STU's provision of enrollment, instruction, and degree candidacy, under which STU represented it would administer disciplinary proceedings pursuant to its published Honor Code and procedures.

105.     Alternatively, Plaintiff had an existing business relationship with STU and a reasonable expectation of continued enrollment and graduation eligibility.

106.     By **January 31, 2019**, Plaintiff was enrolled at STU, his tuition and fees were paid (including through federal student loans), and STU's published Student Handbook (2014–2015) and Honor Code described the disciplinary procedures STU represented it would apply to students, including Plaintiff.

107.     When Plaintiff matriculated, registered for courses, and paid tuition and fees, an implied-in-fact agreement arose between Plaintiff and STU under which STU agreed, among other things, to apply its published disciplinary rules and Honor Council procedures in a manner consistent with those published rules.

108.     The Student Handbook (2014–2015) and Honor Code included provisions stating, among other things, that:

A) the Honor Code may not be used to resolve personal conflicts (§ 3.03(A)(3));

B) the accused student has a right to be present during testimony (§ 3.04(D)(3)(a)); and

C) sanctions require a finding of guilt established by clear-and-convincing evidence (§ 3.04(E)).

109.     Plaintiff performed his obligations under the implied agreement by paying tuition, completing coursework, and completing required pro bono hours, which STU later confirmed had been on file since **2018**.

110.     STU did not follow its published disciplinary procedures in Plaintiff's case, including the following conduct described in the incorporated facts:

A) On **February 7, 2019**, STU suspended Plaintiff and instructed him to amend his Florida Bar application before any Honor Council finding of guilt.

B) On **February 21, 2019**, Plaintiff requested a copy of the complaint and the identity of the accuser. STU did not provide the complaint or disclose the accuser's identity before the hearing, thereby depriving Plaintiff of the information needed to prepare a defense.

C) During the Honor Council hearing, Plaintiff was excluded from the room during the testimony of Professor Juan Carlos Planas, the only live witness, and Plaintiff was not provided a summary of the testimony beforehand.

D) STU circulated or relied on materials in the Honor Council process—including a "Highly Confidential Memorandum" authored on **February 25, 2019** attaching Judge Bernstein's letter and recusal order and including internal evaluative comments—without providing the memorandum or its attachments to Plaintiff before the hearing.

E) On or about **March 23, 2019**, STU deactivated Plaintiff's ID/gate access and revoked network access while the Honor Council process remained ongoing.

F) On **April 2, 2019**, Plaintiff received an automated message stating he had not met the pro bono requirement; on **April 22, 2019**, STU confirmed to Plaintiff that his pro bono hours had been on file since **2018**.

111.     On **April 6, 2019**, Professor Jay Silver emailed Plaintiff stating that the Honor Council had found Plaintiff guilty of all accusations.

112.     Plaintiff appealed on or about **April 16, 2019**. The appeal meeting consisted of an in-person discussion with Dean Lawson and Dean Moore. During that meeting, Plaintiff was asked questions, and no documentary evidence was discussed.

113.     On **May 17, 2019**, STU issued a letter stating that Plaintiff's expulsion was final.

114.     On **May 20, 2019**, Plaintiff discovered for the first time STU's "Highly Confidential Memorandum" and Judge Bernstein's **January 31, 2019** letter and recusal order. Plaintiff requested reconsideration from STU officials based on those newly discovered materials, and STU declined to reopen the disciplinary proceedings.

115.     By the conduct described above, STU breached the implied-in-fact agreement by failing to apply its published disciplinary rules and procedures in Plaintiff's case as represented in the Student Handbook/Honor Code.

116.     STU continues to maintain disciplinary and expulsion records concerning Plaintiff and, on information and belief, such records may be disclosed or relied upon in contexts that affect Plaintiff's professional standing, licensing prospects, employment, and reputation.

117.     Plaintiff lacks an adequate remedy at law to address the continuing and prospective harms caused by STU's maintenance and potential dissemination of the disciplinary/expulsion record. Plaintiff therefore seeks appropriate equitable relief requiring STU to expunge the expulsion/disciplinary finding from Plaintiff's records or, in the alternative, to annotate the record to reflect that the expulsion/disciplinary determination is rescinded/invalid and should not be relied upon.

118.     As a direct and proximate result of STU's breach, Plaintiff suffered damages as described in § 8 (Damages), in amounts to be proven at trial.

**WHEREFORE,** Plaintiff demands judgment against Defendant STU for compensatory damages, declaratory relief, and permanent injunctive relief as set forth in § 9 (Prayer for Relief), plus interest and costs as allowed by law, and such other relief as the Court deems just and proper.

### COUNT 5: TORTIOUS INTERFERENCE WITH CONTRACT
### Against Defendant Judge Scott Bernstein (Individual Capacity)

119.     Plaintiff realleges and incorporates by reference Section 5(E), titled "FACTS RELEVANT TO COUNT 5".

120.     As of **January 31, 2019**, Plaintiff had an **implied-in-fact contractual relationship** with **St. Thomas University, Inc. ("STU")** arising from Plaintiff's matriculation, registration for courses, payment of tuition and fees, and STU's provision of instruction, academic credit, and degree candidacy.

121.     Alternatively, Plaintiff had an existing business relationship with STU and a reasonable expectation of continued enrollment and graduation eligibility.

122.     The terms of STU's published Student Handbook (2014–2015) and Honor Code are evidence of the disciplinary procedures and standards STU represented it would apply in connection with student discipline affecting enrollment, good standing, and graduation eligibility.

123.     Plaintiff performed under the implied-in-fact agreement by paying tuition and fees through federal student loans, completing coursework, and completing required pro bono hours, which STU later confirmed had been on file since **2018**.

124.     Defendant Bernstein had knowledge of Plaintiff's contractual relationship with STU because Bernstein addressed Plaintiff's status to STU in his **January 31, 2019** letter, identified Plaintiff as a litigant in his division, and transmitted the letter to STU's law-school administration concerning "a matter concerning" Plaintiff.

125.     On **January 31, 2019**, after Bernstein had signed an order of disqualification/recusal on **January 29, 2019** and stated on the record that he was "no longer the Judge in the case," Bernstein sent STU's Dean Lawson a letter on official Eleventh Judicial Circuit letterhead, using his official judicial title and signature block, and enclosed his recusal order.

126.     In the **January 31, 2019** letter, Bernstein wrote that he "felt compelled" to bring the matter to STU's attention, identified Plaintiff by name, and enclosed the recusal order containing allegations concerning Plaintiff.

127.     On **February 7, 2019**, STU initiated an Honor Council proceeding against Plaintiff based on allegations contained in Bernstein's recusal order and, before any Honor Council finding, suspended Plaintiff and instructed Plaintiff to amend his Florida Bar application.

128.     During the Honor Council process, STU used materials related to Bernstein's communications, including a "Highly Confidential Memorandum" authored **February 25, 2019** attaching Bernstein's letter and recusal order and including internal evaluative comments regarding Plaintiff.

129.     On **May 17, 2019**, STU issued a letter stating Plaintiff's expulsion was final, resulting in termination of Plaintiff's ongoing contractual relationship with STU and loss of the benefits of enrollment and graduation eligibility.

130.     Bernstein intentionally and unjustifiably interfered with Plaintiff's implied-in-fact contract with STU by transmitting his letter and recusal order to STU for the purpose and with the foreseeable effect of prompting STU to take adverse action affecting Plaintiff's enrollment and graduation status.

131.     Bernstein had no legitimate judicial, administrative, or regulatory role at STU and no legitimate need to transmit the order to STU after recusal; the transmission served no adjudicative function in the family case.

132.     The January 31, 2019 letter to STU was an extrajudicial communication to a private third party, not necessary to adjudicate any matter before the court, and was undertaken outside the courtroom after Bernstein stated he was no longer the judge in the case.

133.     Bernstein was not a party to Plaintiff's contract with STU and had no contractual right or administrative role within STU's disciplinary process.

134.     Bernstein's conduct induced STU to breach the implied-in-fact agreement by initiating and prosecuting discipline based on his communication and ultimately expelling Plaintiff.

135.     As a direct and proximate result of Bernstein's interference, Plaintiff suffered damages as described in § 8 (Damages), in amounts to be proven at trial.

**WHEREFORE,** Plaintiff demands judgment against Defendant Judge Scott Bernstein for compensatory damages, punitive damages to the extent permitted by law, costs, pre- and post-judgment interest as allowed by law, and such other relief as the Court deems just and proper.

### COUNT 6: CIVIL CONSPIRACY

**AGAINST DEFENDANTS ST. THOMAS UNIVERSITY, INC. ("STU") AND JUDGE SCOTT MARCUS BERNSTEIN (INDIVIDUAL CAPACITY)**

**Underlying Wrongful Act: Tortious Interference with Plaintiff's STU Contract/Business Relationship (by Unlawful Means).**

136.     Plaintiff realleges and **only** incorporates by reference Section 5(D), titled "FACTS RELEVANT TO COUNT 4" and Section 5(E), titled "FACTS RELEVANT TO COUNT 5", and **no other allegations**, as if fully set forth herein.

137.     Under Florida law, civil conspiracy requires: (a) an agreement between two or more parties; (b) to do an unlawful act or a lawful act by unlawful means; (c) an overt act in furtherance of the agreement; and (d) damages.

138.     At all material times, Plaintiff had an ongoing contractual and/or business relationship with STU arising from his enrollment, payment of tuition and fees (including through federal loans), and STU's provision of instruction, academic credit, and degree candidacy.

139.     Plaintiff alleges that Defendants' coordinated conduct was directed to and resulted in interference with Plaintiff's relationship with STU by causing STU to terminate Plaintiff's enrollment and degree candidacy through expulsion.

### (A) AGREEMENT / MEETING OF THE MINDS

140.     On information and belief, STU (acting through its officers, employees, and agents involved in the Dean's Office and Honor Council process) and Bernstein entered into an agreement, understanding, or meeting of the minds to bring about adverse disciplinary action against Plaintiff—culminating in expulsion—by using communications directed to STU and STU's Honor Council process as the mechanism to effectuate that outcome.

### (B) UNLAWFUL ACT / LAWFUL ACT BY UNLAWFUL MEANS

141.     Plaintiff alleges Defendants pursued a lawful institutional process (student discipline) by **unlawful means**, including relying on undisclosed ex parte materials and withholding core process information from Plaintiff, thereby depriving Plaintiff of a meaningful opportunity to review, rebut, and test the materials used against him before the Honor Council adjudicated the allegations and imposed sanctions.

## (C) OVERT ACTS IN FURTHERANCE

142.　　In furtherance of the conspiracy, Bernstein committed overt acts including, but not limited to, transmitting to STU on or about **January 31, 2019** an extrajudicial letter on official letterhead identifying Plaintiff and enclosing an order containing allegations concerning Plaintiff, after Bernstein had signed a recusal/disqualification order and stated on the record that he was no longer the judge in the family case.

143.　　In furtherance of the conspiracy, STU committed overt acts including, but not limited to:

A) initiating an Honor Council proceeding and imposing interim suspensions/limitations before any Honor Council finding of guilt;

B) after Plaintiff requested the initiating complaint and the identity of the accuser, failing and/or refusing to provide the complaint or disclose the accuser's identity before the hearing;

C) excluding Plaintiff from the room during the testimony of the only live witness and not providing a summary beforehand;

D) circulating and/or relying upon a "Highly Confidential Memorandum" and related attachments and internal evaluative comments without providing them to Plaintiff before the hearing;

E) restricting Plaintiff's access (including ID/gate/network access) while the disciplinary process was pending; and

F) issuing and maintaining a final expulsion decision based on the foregoing process.

144.　　Plaintiff alleges Defendants' acts were interdependent and operated together to bring about Plaintiff's expulsion and the termination of Plaintiff's contractual and/or business relationship with STU.

## (D) DAMAGES RESULTING FROM THE CONSPIRACY

145.　　As a direct and proximate result of Defendants' conspiracy and overt acts, Plaintiff suffered damages as described in § 8 (Damages), in amounts to be proven at trial.

146.　　Defendants are jointly and severally liable for damages caused by the conspiracy.

**WHEREFORE,** Plaintiff demands judgment against Defendants STU and Judge Scott Marcus Bernstein for compensatory damages, costs, pre- and post-judgment interest as allowed by law, and such other relief as the Court deems just and proper.

## § 8. DAMAGES

147.     Plaintiff seeks compensatory damages in an amount to be proven at trial.

148.     The damages alleged below are stated by category. Certain damages are attributable to specific groups of Defendants and specific conduct as alleged in the corresponding "Facts Relevant to" sections and counts.

### (A) GENERAL ECONOMIC DAMAGES (ACROSS THE CASE, WHERE APPLICABLE)

149.     Out-of-pocket expenses and economic losses proximately caused by Defendants' conduct, where recoverable, including travel, copying, postage, and related costs.

150.     Lost time and loss of productivity resulting from responding to Defendants' conduct and pursuing remedies.

### (B) STU-RELATED EXPECTATION, CONSEQUENTIAL, AND RELIANCE DAMAGES

151.     Damages resulting from the STU disciplinary process and expulsion, as alleged in the STU-related factual allegations, including but not limited to:

152.     Loss of the opportunity to complete legal education and maintain degree candidacy and graduation eligibility.

153.     Lost earning capacity and career opportunities associated with the legal career Plaintiff reasonably expected to pursue.

154.     Consequential and reliance damages, including loss of business income and opportunities from discontinuing Plaintiff's business upon enrolling at STU and allowing professional certifications (including Cisco and Microsoft certifications) to lapse while relying on continued enrollment and graduation eligibility.

155.     Consequential losses from selling business assets during law school to meet living expenses and support Plaintiff's family, impairing business capacity and future earning potential.

156.     Loss of tuition/fee value and loan-related harms associated with the inability to complete the program and obtain the expected credential.

### (C) Reputational and Professional Harm

157.     Reputational injury and professional harm proximately caused by Defendants' conduct, including stigma associated with allegations or characterizations of "unfitness," "vexatiousness," and/or "frivolous litigation" used in connection with Plaintiff's discipline and resulting limitations on professional opportunities.

### (D) Non-Economic Damages

158.     Emotional distress, mental anguish, humiliation, and loss of enjoyment of life proximately caused by Defendants' conduct, to the extent recoverable under the applicable causes of action.

### (E) Interest, Costs, and Other Recoverable Amounts

159.     Pre-judgment and post-judgment interest where allowed by law.

160.     Taxable costs and other recoverable litigation costs where allowed by law.

161.     Plaintiff's damages are continuing and will be proven at trial.

### § 9. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that the Court enter judgment and grant relief as follows:

### (A) Count 1 (42 U.S.C. § 1983 — Prospective Relief Only; Defendant Fernandez-Barquin in Official Capacity)

162.     A declaration that the ongoing refusal to accept and docket Plaintiff's filings through the Clerk's case maintenance system— including any "do not file" flag or equivalent mechanism that results in automatic rejection without a meaningful procedure to obtain docketing and judicial review—violates the First and Fourteenth Amendments;

163.     A permanent injunction requiring Defendant, his agents, employees, and successors in office, in their official capacities, to:

A)  Accept and docket Plaintiff's nonfrivolous filings tendered in Family Case No. 2012-017787-FC-04;

B)  Remove/disable any "do not file" flag or implement a clear procedure to override any restriction that causes automatic rejection without docketing;

C) Refrain from rejecting filings in a manner that prevents docketing and judicial review; and

D) Provide a ministerial docketing path (or immediate presentment path to a judicial officer) so that any filing restriction is applied only after docketing and judicial review;

164. Costs and, if represented by counsel and to the extent permitted by law, reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

165. Such other relief as the Court deems just and proper.

### (B) COUNTS 2 AND 3 (42 U.S.C. § 1985(2))

166. Compensatory damages against the liable Defendants jointly and severally in an amount to be proven at trial consistent with § 8 (Damages);

167. Pre- and post-judgment interest as allowed by law;

168. Costs of suit and, if represented by counsel, and to the extent permitted by law, reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

169. Such other relief as the Court deems just and proper.

### (C) COUNT 4 (BREACH OF IMPLIED-IN-FACT AGREEMENT; DEFENDANT STU)

170. Compensatory damages in an amount to be proven at trial consistent with § 8 (Damages);

171. A declaration that STU breached the implied-in-fact agreement by failing to administer Plaintiff's disciplinary proceeding in accordance with STU's published Honor Code procedures as alleged;

172. A permanent injunction requiring STU to expunge from Plaintiff's student and disciplinary records the Honor Council disciplinary finding(s) and expulsion decision issued in Plaintiff's matter and to cease disseminating those findings/decision as a basis for adverse action;

173. In the alternative to expungement, a permanent injunction requiring STU to annotate Plaintiff's student and disciplinary records to reflect that the disciplinary finding(s) and expulsion decision are rescinded/invalid and should not be relied upon, and to provide Plaintiff written confirmation of the corrected status;

174. Pre- and post-judgment interest as allowed by law;

175.      Costs of suit; and

176.      Such other relief as the Court deems just and proper.

**(D) COUNT 5 (TORTIOUS INTERFERENCE; DEFENDANT BERNSTEIN, INDIVIDUAL CAPACITY)**

177.      Compensatory damages in an amount to be proven at trial consistent with § 8 (Damages);

178.      Pre- and post-judgment interest as allowed by law;

179.      Costs of suit;

180.      Punitive damages only if and to the extent permitted by applicable law; and

181.      Such other relief as the Court deems just and proper.

**(E) COUNT 6 (CIVIL CONSPIRACY; DEFENDANTS STU AND BERNSTEIN)**

182.      Compensatory damages against Defendants STU and Bernstein jointly and severally in an amount to be proven at trial consistent with § 8 (Damages);

183.      Pre- and post-judgment interest as allowed by law;

184.      Costs of suit; and

185.      Such other relief as the Court deems just and proper.

**(F) JURY DEMAND**

186.      Plaintiff demands trial by jury on all claims so triable.

Respectfully submitted,

Dated: January 14, 2026

FRANK E. POLO, SR.
Plaintiff, Pro Se
1475 SW 8th St Apt 411,
Miami, FL. 33135
Telephone: 305-901-3360
Email: Frank.Polo@msn.com