**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 25-cv-26058-DPG**

**FRANK E. POLO, SR.**,

      Plaintiff,

vs.

**JUAN FERNANDEZ-BARQUIN,** et al.*,*

      Defendants.

_____/

**ORDER DENYING MOTION TO PROCEED *IN FORMA PAUPERIS***
**AND REPORT AND RECOMMENDATION DISMISSING COMPLAINT**

**THIS CAUSE** is before the Court on Frank E. Polo Sr.'s ("Plaintiff" or "Polo") Motion

for Leave to Proceed *in forma pauperis* (the "IFP Motion"). [ECF No. 3]. The matter was referred

to the undersigned by the Honorable Darrin P. Gayles. *See* [ECF No. 10]. For the reasons set forth

below, it is **ORDERED** that Plaintiff's IFP Motion [ECF No. 12] be **DENIED**. It is **FURTHER**

**RECOMMENDED** that Plaintiff's Amended Complaint [ECF No. 11] be **DISMISSED**.

**BACKGROUND**

Plaintiff commenced the instant action on December 22, 2025, with the filing of his three-

count Complaint against Defendants Mr. Juan Fernandez-Barquin ("Fernandez-Barquin"), Judge

Scott M. Bernstein ("Judge Bernstein"), and St. Thomas University, Inc. ("STU"). *See* [ECF No.

1 at 1–3]. Although Plaintiff paid the filing fee in the amount of $405.00, he stated that he moved

for IFP to obtain an order from the Court directing the U.S. Marshal to serve his Complaint. *See*

[ECF No. 4; ECF No. 13 ¶ 1].

Thereafter, Plaintiff filed an Amended Complaint, including new defendants Ms. Merlin

Hernandez ("Hernandez"), Mr. Randolph Martinez ("Martinez"), and Mr. Manuel A. Segarra, III

("Segarra") (collectively with Fernandez-Barquin, Judge Bernstein, and STU, the "Defendants").

*See* [ECF No. 11 at 1, 2]. The Amended Complaint also included three additional counts. *See* [*id.* at 3].

Though somewhat unclear, the Amended Complaint appears to allege facts arising from Plaintiff's family law case, *Hernandez v. Polo*, Case No. 2012-017787-FC-04 (Fla. 11th. Cir. Ct. Jul. 19, 2012) (the "Family Law Action"), which he tries to connect to other tenuously related incidents. *See generally* [ECF No. 11].

Plaintiff's Amended Complaint alleges three federal claims and three state claims against Defendants as follows: Prospective Declaratory and Injunctive Relief on Account of Federal Court Proceedings (Access to Courts/Procedural Due Process) against Defendant Fernandez-Barquin (Count I); Conspiracy to Intimidate or Injure a Party on Account of Federal Court Proceedings against Defendants Hernandez and Martinez (Count II); Conspiracy to Intimidate or Injure a Party on Account of Federal Court Proceedings against Defendants Hernandez and Segarra (Count III); Breach of Implied-in-Fact Agreement against Defendant STU (Count IV); Tortious Interference with Contract against Defendant Bernstein in his individual capacity (Count V); and Civil Conspiracy against Defendant STU and Defendant Bernstein in his individual capacity (Count VI). *See* [*id.*].

### A. Federal Counts

Under Count I, Plaintiff seeks "prospective declaratory and injunctive relief" under 42 U.S.C. § 1983 against Defendant Fernandez-Barquin in his official capacity as Miami-Dade County Clerk and Comptroller for what Plaintiff claims to be the "denial of access to courts and procedural due process" for the repeated rejection of case filings. [ECF No. 11 at 3]. Plaintiff was a party to the Family Law Action in Miami-Dade County in which his filing rights became restricted on October 24, 2017. *See* [*id.* at 4]. This restriction required Plaintiff's pleadings,

motions, and letters to the court to be reviewed by a member of the Florida Bar before filing. *See* [*id.*]. Based on this restriction, Plaintiff was ostensibly banned from making a filing on December 19, 2025, giving rise to Count I. *See* [*id.*]. It appears that Defendant Hernandez won a state-court judgment from the Family Law Action against Plaintiff. *See* [*id.* at 5].

Under Count II, the Plaintiff asserts a claim under 42 U.S.C § 1985(2) against Defendants Hernandez and Martinez for alleged retaliation based on Plaintiff's prior federal case. *See* [*id* at 3]. On May 4, 2023, Plaintiff filed a federal civil action against Defendants Hernandez and Martinez, as well as other state judicial officers, including Judges Scott M. Bernstein and Spencer J. Multack (the "2023 Federal Action").[1] *See* [*id.* at 4]. On July 22, 2024, the court dismissed Plaintiff's federal claims with prejudice and dismissed the state-law claims without prejudice. *See* [*id.* at 5]. During this period, Plaintiff and Defendant Hernandez were purportedly subject to an Agreed Final Judgement ("AFJ") governing parental rights and obligations over their shared children stemming from the Family Law Action. *See* [*id.*]. Plaintiff alleges that Defendants Hernandez and Martinez violated the established AFJ, removing the minor children from the United States without either the permission of the Plaintiff or a court order authorizing such travel. *See* [*id.*]. Because of the filing bar placed upon him by Defendant Fernandez-Barquin, Plaintiff was unable to "obtain timely judicial relief" to address the alleged violation by Defendants. *See* [*id.* at 6]. As such, Plaintiff alleges that Defendant Hernandez and Martinez retaliated against him

---

[1] On May 5, 2023, Plaintiff filed a 147-page complaint against over 30 defendants, including several public and judicial figures, alleging 19 counts that appear to similarly arise from the Family Law Action and events taking place at STU College of Law. *See* Complaint, *Polo v. Bernstein*, et al., No. 23-cv-21684-RNS (S.D. Fla. May 4, 2023), [ECF No. 2]. After multiple rounds of amendments, Plaintiff's lawsuit was ultimately dismissed for his failure to properly cure shotgun pleading-related deficiencies and failure to follow Court orders. *See* Second Omnibus Order, *id.*, [ECF No. 55].

by failing to follow the controlling AFJ while being aware of his restrained filing abilities. *See* [*id.*].

Under Count III, Plaintiff asserts another claim under 42 U.S.C § 1985(2) against Defendants Hernandez and Segarra again based on alleged retaliation on account of Plaintiff's 2023 Federal Action, in which both Defendants Hernandez and Segarra were named Defendants. *See* [*id.* at 7].[2] Defendant Segarra served as Defendant Hernandez's counsel in the Family Law Action. *See* [*id.*]. One day after the dismissal of Plaintiff's 2023 Federal Action, Defendant Hernandez allegedly recorded the state-court judgement she obtained from the Family Law Action with Miami-Dade County, which Plaintiff claims encumbered his property interests. *See* [*id.*]. Plaintiff alleges that the timing of Defendant Hernandez's filing demonstrates its coercive nature and was a form of punishment for bringing the 2021 Federal Action and 2023 Federal Action. *See* [*id.*]. Plaintiff argues, based on "information and belief", that Defendant Segarra assisted Defendant Hernandez in this retaliatory action and coordinated the coercive timing of the state-court judgement filing. *See* [*id.*].

### B. State Counts

Under Count IV, Plaintiff asserts a state claim against STU for breach of an implied-in-fact agreement arising from the Plaintiff's suspension and expulsion from the institution. *See* [*id.* at 3]. On February 7, 2019, Dean Tamara Lawson initiated an Honor Council proceeding against Plaintiff based on the allegations purportedly contained in a letter and recusal order sent to STU faculty by Judge Bernstein, who had previously presided over the Family Law Action. *See* [*id.* at

---

[2] It also appears that Plaintiff had filed another, earlier, federal lawsuit in 2021 (the "2021 Federal Action") seeking "injunctive and declaratory relief" arising from the Family Law Action. *See* [ECF No. 11 at 7]. It is unclear what the final disposition of the 2021 Federal Action was as Plaintiff does not provide more detail in the Amended Complaint.

8, 11]. Between February 7, 2019, and April 6, 2019, Plaintiff alleges that he was excluded from proceedings during the testimony of a live witness, was not provided a summary of witness testimony, was not informed of a confidential memorandum containing internal evaluative comments and was not informed that Judge Bernstein was the initiating complainant. *See* [*id.* at 8–9]. On April 22, 2019, a member of STU faculty emailed Plaintiff informing him that the Honor Council had found Plaintiff "guilty of all accusations." *See* [*id.* at 9]. Plaintiff appealed the disciplinary decision and went on to attend an appeal meeting. *See* [*id.*]. After being informed of his finalized expulsion, Plaintiff came to learn of the Honor Council materials allegedly used in his proceedings, including the confidential memorandum and Judge Bernstein's letter and recusal order. *See* [*id.*]. Plaintiff alleges that STU departed from its Honor Code procedures when reaching the decision to remove him as an enrolled student, including "withholding material information, excluding him from witness testimony, and relying on undisclosed materials." *See* [*id.* at 3].

Under Count V, Plaintiff asserts a state claim for tortious interference against Defendant Bernstein, in his individual capacity, based on "alleged extrajudicial communications" to STU that led to his final expulsion. *See* [*id.* at 3]. On January 29, 2019, Defendant Bernstein signed an order of recusal, disqualifying himself from Plaintiff's Family Law Action. *See* [*id.* at 10]. Plaintiff claims that on January 31, 2019, Defendant Bernstein sent a letter and his recusal order to STU's Dean Lawson "on official Eleventh Judicial Circuit letterhead and with his official signature block." [*Id.*]. On February 7, 2019, STU initiated its Honor Council proceedings against Plaintiff and ultimately expelled him from the institution, which Plaintiff claims was done so based on the allegations contained within Defendant Bernstein's letter and recusal order. *See* [*id.*].

Lastly, under Count VI, Plaintiff asserts a state claim for civil conspiracy against Defendants STU and Bernstein based on alleged coordinated acts to expel Plaintiff through

"extrajudicial communications and procedural concealment" throughout the Honor Council proceedings. *See* [*id.* at 3, 8–10].

**LEGAL STANDARD**

Under 28 U.S.C. § 1915, a litigant may seek to commence a civil action without prepayment of fees by submitting an affidavit which demonstrates that the person is unable to pay such fees. 28 U.S.C. § 1915(a)(1). Furthermore, the statute requires a federal court to dismiss a plaintiff's suit if the court determines that: (A) the allegation of poverty is untrue; or (B) the action or appeal (i) *is frivolous or malicious* or (ii) *fails to state a claim on which relief may be granted*. 28 U.S.C. § 1915(e)(2) (emphasis added). This screening process applies equally to non-prisoner *pro se* plaintiffs. *Fletcher v. President of Albert Einstein Med. Ctr.*, No. 15-24355-CIV, 2016 WL 11547296, at *1 (S.D. Fla. Feb. 10, 2016), *report and recommendation approved*, No. 15-24355-CIV, 2016 WL 11547297 (S.D. Fla. Apr. 5, 2016) (citing *Boyington v. Geo Grp., Inc.*, No. 2:09-cv-570-FtM-29SPC, 2009 WL 3157642 *1 (M.D. Fla. 2009) (in turn citing *Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002) (holding that 28 U.S.C. § 1915 dismissals apply to non-prisoners, even if fee assessment provisions do not)).

Under § 1915(e)(2)(B)(i), a court may find an action frivolous "if it is without arguable merit either in law or fact." *Fletcher*, 2016 WL 11547296, at *1 (citing *Napier v. Preslicka*, 314 F.3d 528, 531 (11th Cir. 2002)). Dismissal is appropriate when a claim "is based on an indisputably meritless legal theory, or when it relies on factual allegations that are 'clearly baseless,' which includes allegations that are 'fanciful,' 'fantastic,' and 'delusional.'" *Fletcher*, 2016 WL 11547296, at *1 (quoting *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992) (internal quotation marks omitted)). "'[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible . . . .'" *Fletcher*, 2016 WL 11547296, at *1

(quoting *Denton*, 504 U.S. at 33). Therefore, "proceeding *in forma pauperis* is a privilege, not a right." *Emrit v. Saint Thomas Univ. Sch. of L.*, No. 22-CV-20835, 2022 WL 874089, at \*2 (S.D. Fla. Mar. 24, 2022) (internal citation and quotation marks omitted).

To state a claim for relief, a complaint must contain: "(1) a short and plain statement of the grounds for the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought[.]" Fed. R. Civ. P. 8(a). "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Further, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facial plausibility requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Our courts are more lenient to *pro se* filings than those drafted by practicing attorneys. *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). But neither the court nor its staff can serve as "*de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell*, 760 F.3d at 1168 (citation and quotation marks omitted). Ultimately, "proceeding *in forma pauperis* is a privilege, not a right." *Emrit v. Saint Thomas Univ. Sch. of L.*, No. 22-CV-20835, 2022 WL 874089, at \*2 (S.D. Fla. Mar. 24, 2022) (internal citation and quotation marks omitted).

## DISCUSSION

### I. Plaintiff's Motion for IFP.

Section 1915 of United States Code Title 28 provides that a court may authorize a person who is unable to pay court fees to proceed in his action so long as he is unable to pay such fees or

give security therefore. *See* 28 U.S.C. § 1915(a)(1); *see also Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1306 n.1 (11th Cir. 2004) (explaining that § 1915(a)(1) applies to all persons requesting leave to proceed IFP).

> When considering a motion filed pursuant to § 1915(a), "[t]he only determination to be made by the court ... is whether the statements in the affidavit satisfy the requirement of poverty." An affidavit addressing the statutory language should be accepted by the court, absent a serious misrepresentation, and need not show that the litigant is "absolutely destitute" to qualify for indigent status under § 1915. Such an affidavit will be held sufficient if it represents that the litigant, because of his poverty, is unable to pay for the court fees and costs, and to support and provide necessities for himself and his dependents.

*Martinez*, 364 F.3d at 1307 (citations omitted).

Section 1915 of United States Code Title 28 provides that a court may authorize a person who is unable to pay court fees to proceed in his action so long as he is unable to pay such fees or give security therefore. *See* 28 U.S.C. § 1915(a)(1); *see also Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1306 n.1 (11th Cir. 2004) (explaining that § 1915(a)(1) applies to all persons requesting leave to proceed IFP).

Here, however, Plaintiff has already paid the filing fee. *See* [ECF No. 4]. Indeed, Plaintiff admits he is only now moving for IFP for "an order directing service by the US Marshal[.]" *See* [ECF No. 13 ¶ 1]. However, this is not the intended purpose of § 1915. *See Sumrall v. Georgia Dep't of Corr.*, No. 1:23-CV-5395-VMC-CMS, 2024 WL 6473641, at *2 (N.D. Ga. July 3, 2024), *report and recommendation adopted*, No. 1:23-CV-05395-VMC, 2024 WL 6473643 (N.D. Ga. Aug. 29, 2024) ("IFP status exists for litigants who are *genuinely* 'unable to pay such fees'") (quoting 28 U.S.C. § 1915(a)(1) (emphasis added)).

Plaintiff has not shown he is unable to pay the filing fee and therefore the subsequent Motion to Proceed IFP [ECF No. 12] is **DENIED**. *See Chau v. United States*, No. CV 306-51,

2006 WL 2443351, at *1 (S.D. Ga. Aug. 18, 2006) (denying motion to proceed IFP as moot where petitioner already paid the filing fee); *Edilberto v. United States*, No. CV 306-49, 2006 WL 2474101, at *1 (S.D. Ga. Aug. 24, 2006) (same); *Thomas v. Governor's Off.*, No. 7:22-CV-00112 (WLS), 2023 WL 12239340, at *1 (M.D. Ga. Aug. 21, 2023) (same).

## II.      Plaintiff's Complaint.

Notwithstanding the issue of any filing fee, 28 U.S.C. § 1915(e)(2) also grants the Court the ability to dismiss a case at any time if the Court determines that the action is "frivolous or . . . fails to state a claim on which relief may be granted[.]" 28 U.S.C. § 1915(e)(2)(B)(i)–(ii); *see also Tazoe*, 631 F.3d at 1336. Here, Plaintiff fails to state a claim for relief.

A Complaint must plead enough facts to state the basis for each alleged claim. *See Vignoli v. Clifton Apartments, Inc.*, 930 F. Supp. 2d 1342, 1345 (S.D. Fla. 2013). The requisite factual predicate must be more than "labels and conclusions, and a formulaic recitation of a cause of action's elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

### (a) Shotgun Pleading

As an initial matter, the Court notes Plaintiff's Amended Complaint is a deficient shotgun pleading. "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). Shotgun pleadings include complaints that (1) are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (2) do not separate "into a different count each cause of action or claim for relief"; or (3) "assert[] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id*. (alteration added; footnote call numbers omitted). Shotgun complaints make it "virtually

impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trs.*, 77 F.3d 364, 366 (11th Cir. 1996). "As a result, shotgun pleadings are routinely condemned by the Eleventh Circuit." *Real Estate Mortg. Network, Inc. v. Cadrecha*, No. 11-cv-474, 2011 WL 2881928, at *2 (M.D. Fla. July 19, 2011) (citing *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991)).

Here, Plaintiff's Amended Complaint bears the hallmarks of a shotgun pleading as it is "replete with conclusory, vague, and immaterial' allegations," as explained further below. *See Barmapov v. Amuial*, 986 F.3d 1321, 1326 (11th Cir. 2021) (quoting *Weiland*, 792 F.3d at 1322–23). Plaintiff's scattershot complaint merges several tenuously related cases and events together to lodge improperly pleaded claims against the six defendants in this case. *See generally* [ECF No. 14]. However, Plaintiff is no stranger to this Court, nor to the concept of a shotgun pleading, having been previously dismissed by Senior District Judge Robert N. Scola, Jr. (ret.) no less than four times for this deficiency. *See* Second Omnibus Order, *Polo v. Bernstein*, et al., No. 23-cv-21684-RNS (S.D. Fla. July 23, 2024), [ECF No. 55]. Indeed, several parties, claims, and facts asserted in Plaintiff's previously dismissed 2023 Federal Action are asserted here once more. And as best described by Judge Scola, Plaintiff's Amended Complaint again provides a,

> meandering and non-linear narrative of events and grievances, in mainly conclusory terms . . . [in which he] repeatedly accuses all the Defendants, in broad strokes, of harassing Polo; violating his constitutional rights; intentionally humiliating him; and retaliating against him . . . [h]e also complains about adverse rulings in his state-court-custody proceedings (including that court's labeling him a vexatious litigant), contending the court, a guardian ad litem, and his former girlfriend were all acting out of malice, rather than addressing the merits of his case, thereby depriving him of due process at every turn[.]
>
> In addition to his dissatisfaction with the outcome of his state-court proceeding, another main thrust of Polo's complaint revolves around his expulsion from St. Thomas Law School. Polo complains that the state-court judge handling his custody dispute improperly prompted the law school to initiate an honor-council proceeding

against him which ultimately resulted in his separation from the school []. Polo maintains that, as a result of the state-court judges and other individuals' personal vendettas against him, he was treated unfairly by St. Thomas's honor council, in violation of its own rules [].

Second Order Striking Complaint, *Polo v. Bernstein*, et al., No. 23-cv-21684-RNS (S.D. Fla. June 8, 2023), [ECF No. 10 at 1–2].

Similarly, here, due to Plaintiff's vague and conclusory allegations, "a defendant who reads the complaint would be hard-pressed to understand "the grounds upon which each claim [against him] rests." *See Barmapov*, 986 F.3d at 1326 (quotes and citation omitted). The Amended Complaint should be dismissed on this basis alone. Nevertheless, in line with this Circuit's practice of construing pro se complaints liberally, the undersigned will proceed with a count-by-count analysis of the federal claims. *See Daniels v. Geraldi*, 578 F.App'x 811, 811 (11th Cir. 2014); *but see Barmapov*, 986 F.3d at 1228 ("[D]istrict courts are flatly forbidden from scouring shotgun complaints to craft a potentially viable claim for a plaintiff.") (Tjoflat, J., concurring).

**(b) Count I – Violation of 42 U.S.C. § 1983**

Plaintiff's first count, against Defendant Fernandez-Barquin in his official capacity as Clerk of the Court and Comptroller of Miami-Dade County, must be dismissed because courts have found that court clerks "have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction." *Johnson v. Bank of New York Mellon Tr. Co.*, No. 1:10-CV-00249-SPM-GR, 2011 WL 678635, at *5 (N.D. Fla. Feb. 3, 2011), *report and recommendation adopted sub nom. Johnson v. Bank of New York Mellon Tr. Co.*, No. 1:10-CV-249-SPM GRJ, 2011 WL 1119615 (N.D. Fla. Mar. 28, 2011), *aff'd sub nom. Johnson v. Bank of New York Mellon Tr. Co.*, 476 F. App'x 823 (11th Cir. 2012) (internal quotes omitted) (citing *Hyland v. Kolhage*, 267 Fed. Appx. 836, 2008 WL 495927 (11th Cir. Feb. 26,

11

2008));  *Jenkins v. Clerk of Ct., U.S. Dist. Ct., S. Dist. of Fla.*, 150 F. App'x 988, 990 (11th Cir. 2005) ("Nonjudicial officials have absolute immunity for their duties that are integrally related to the judicial process."); *see also Fuller v. Truncale*, 50 So.3d 25 (Fla. 1st DCA 2010) (quashing trial court order denying clerk of courts motion to dismiss and stating "[a]ccordingly, if a judicial or quasi-judicial officer's actions qualify for judicial immunity, no suit—whether for monetary damages or equitable relief—can be brought.").

"Absolute quasi-judicial immunity for nonjudicial officials is determined by a functional analysis of their actions in relation to the judicial process." *Jenkins*, 150 F. App'x at 990. Here, Plaintiff alleges he was informed that his filing rights became restricted on October 24, 2017, following a hearing in front of the family court. *See* [ECF No. 11 at 4]. He was informed that the restriction required his filings to be reviewed by a member of the Florida Bar before filing. *See* [*id.*]. Nevertheless, Plaintiff continued attempt to file by himself and continued to have his filings denied by Defendant Fernandez-Barquin with messages stating, "[f]iling Moved to Correction Queue" and "barred by order of court or is otherwise incapable of being filed in the clerk's case maintenance system." *See* [*id.*]. Thus, Plaintiff concedes he violated this restriction by continuing to file documents himself, without the requisite review from a member of the Florida Bar. *See* [*id.* ("Plaintiff could not afford to retain a lawyer to review filings to satisfy the filing-review restriction.")]. Such actions allegedly taken by Defendant Fernandez-Barquin pursuant to court order "undoubtedly falls within the ambit of quasi-judicial immunity." *See Fischer v. Rivera*, No. 0:19-CV-62499, 2022 WL 21778320, at *2 (S.D. Fla. Jan. 28, 2022). Therefore, to the extent Plaintiff contends Defendant Fernandez-Barquin breached a duty by refusing to submit filings to the court, Fernandez-Barquin is immune from suit because he was acting pursuant to court order. *See Johnson*, 2011 WL 678635, at *5 ("Therefore, to the extent that Plaintiffs contend Wheeler

12

breached a duty to them by refusing to submit filings to the Court, Wheeler is absolutely immune from suit because he was acting pursuant to a court order.").

It is thus **RECOMMENDED** that Count I be **DISMISSED WITH PREJUDICE**.[3]

**(c) Count II – Violation of 42 U.S.C. § 1985(2)**

Plaintiff next asserts a violation of 42 U.S.C § 1985(2) against Defendants Hernandez and Martinez for alleged retaliation. *See* [*id* at 3]. Though unclear, it appears that the claim has to do with past underlying custody proceedings between Plaintiff and Defendant Hernandez. Plaintiff alleges that because he previously filed the 2023 Federal Action against Defendants Hernandez and Martinez (and against five of the six current defendants), they retaliated by ignoring the final AFJ from the Family Law Action and took his minor children on a cruise to the Bahamas. *See* [*id.*]. Plaintiff, however, misapplies the relevant statute and fails to state a §1985(2) claim.

"Section 1985(2) prohibits conspiracies to intimidate parties or witnesses to federal lawsuits." *Chance v. Cook*, No. 4:19CV335-MW/CAS, 2019 WL 13219834, at *3 (N.D. Fla. Nov. 15, 2019), *aff'd*, 50 F.4th 48 (11th Cir. 2022) (citing *Farese v. Scherer*, 342 F.3d 1223, 1229 (11th Cir. 2003)). "Subsection (2) provides a cause of action to victims of conspiracies intended to injure or deter 'any party or witness in any court ... from attending such court, or from testifying to any matter pending therein.'" *Farese*, 342 F.3d at 1229 (quoting 42 U.S.C. § 1985(2)). To prevail on a § 1985(2) retaliation claim, the plaintiff must prove: (1) a conspiracy existed; (2) retaliation spawned by the attendance or testimony in federal court; (3) an act in furtherance of the conspiracy;

---

[3] "A court may dismiss a claim with prejudice and without leave to amend where the claim is frivolous and any amendment would be futile." *Fischer*, 2022 WL 21778320, at *2 (dismissing with prejudice claim against clerk of court for failing to docket lawsuit and noting "any amendment would be futile because Plaintiff's claims are either barred by absolute immunity or clearly frivolous.").

and (4) injury. *Odum v. Rayonier, Inc.*, No. CIV.A. CV204-190, 2005 WL 3440817 (S.D. Ga. Dec. 14, 2005), *aff'd*, 316 F. App'x 855 (11th Cir. 2008). Here, Plaintiff has failed to allege the requisite elements. Moreover, the actions he alleges that give rise to the statutory violation only occurred after his federal case was dismissed. *See* [ECF No. 11 at 5, 14]. Therefore, there could not be a conspiracy intended to "injure or deter" him from testifying or participating in any federal action. *See Farese*, 342 F.3d at 1229.

Plaintiff first fails to properly allege the existence of a conspiracy or an act in furtherance of the conspiracy.  In conspiracy cases, a pleading must inform a defendant of the "nature of the conspiracy which is alleged." *Grappell v. Carvalho*, 847 F. App'x 698, 702 (11th Cir. 2021) (quoting *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984)). "It is not enough to simply aver in the complaint that a conspiracy existed[,]" a plaintiff must include specific allegations in the complaint of a joint agreement between Defendants. *Fullman*, 739 F.2d at 557. Conclusory allegations of the existence of a conspiracy are insufficient to state a claim. *See Mickens v. Tenth Judicial Circuit*, 181 F. App'x 865, 876 (11th Cir. 2006); *Kearson v. S. Bell Tel. & Tel. Co.*, 763 F.2d 405, 407 (11th Cir. 1985).

Here, Plaintiff pleads several conclusory allegations that a conspiracy existed between Defendants Martinez and Hernandez. *See, e.g.*, [ECF No. 11 at 14 ("Defendants Hernandez and Martinez reached an understanding and agreement to injure Plaintiff in his person and property, and to impose coercive consequences upon him[.]"). Such allegations, however, are mere conclusions based on his recurring legal disputes with Defendants Hernandez and Martinez. Plaintiff alleges no factual basis indicating an agreement or understanding or willful participation between the two defendants, nor does he provide any other predicate beyond conclusory allegations of a conspiracy. "Mere labels and conclusions or a formulaic recitation of the elements

14

of a cause of action will not do, and a plaintiff cannot rely on naked assertions devoid of further factual enhancement." *Mickens v. Cir. Ct. Second Jud. Cir.*, No. 4:25-CV-102-AW/MJF, 2025 WL 3635032, at *6 (N.D. Fla. Nov. 25, 2025), *report and recommendation adopted*, No. 4:25-CV-102-AW-MJF, 2025 WL 3634350 (N.D. Fla. Dec. 15, 2025) (citing *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (internal quotation marks and alteration omitted)); *see also Oldaker v. Giles*, 724 F. Supp. 3d 1315, 1348 (M.D. Ga. 2024) (dismissing § 1985(2) claim with prejudice for pleading "a number of conclusory allegations that a conspiracy existed between Defendants."). Similarly, Plaintiff fails to plead any act in furtherance of the conspiracy where he simply alleges Defendant Hernandez and Martinez "intentionally removed the children from the United States to the Bahamas" without his consent. *See* [ECF No. 14 at 14]. There cannot be an act in furtherance of a conspiracy where there is no indication a conspiracy existed in the first place. *See Oldaker*, 724 F. Supp. 3d at 1348.

Plaintiff also fails to allege retaliation. Under § 1985(2), otherwise legal acts, when conducted to retaliate against an individual for exercising a constitutional right, are prohibited. *See Odum*, 2005 WL 3440817, at *4 (citing 42 U.S.C. § 1985(2)). As an initial matter, Plaintiff does not properly allege any retaliatory facts. Rather, Plaintiff, again in conclusory fashion, simply states that because Hernandez and Martinez were involved in the Family Law Action, the subsequent action of traveling internationally with Plaintiff's children was "undertaken with retaliatory purpose" to punish Plaintiff. *See* [ECF No. 14 at 14]. Plaintiff provides little to no context as to why such conduct could be retaliatory or connected to his 2023 Federal Action. Even assuming *arguendo* Plaintiff did establish retaliation, he does not explain what constitutional right has been infringed by such retaliation. *See Grappell*, 847 F.App'x at 702 ("In any case, even if we assume these claims were properly preserved, nothing in the complaint suggests that the

defendants' allegedly wrongful conduct against Grappell was motivated by racial or class-based animus, which is required for claims under § 1985(2) and (3).");  *see also Chavis v. Clayton Cnty. Sch. Dist.*, 300 F.3d 1288, 1292 (11th Cir. 2002) (section 1985(2) claim "requires an allegation of class-based animus for the statement of claim.").

Finally, and perhaps most strikingly, Plaintiff fails to allege cognizable injury under § 1985(2). Courts construing the injury element of a § 1985(2) claim have held that "a claimant must show that the conspiracy hampered the claimant's ability to *present an effective case in federal court.*" *Foster v. Pall Aeropower Corp.*, 111 F. Supp. 2d 1320, 1325 (M.D. Fla. 2000) (emphasis added) (citing *Rutledge v. Arizona Bd. of Regents*, 859 F.2d 732, 735 (9th Cir. 1988)). In other words, Plaintiff must allege a "nexus to an actual court proceeding" to state a claim under § 1985(2). *See Oldaker*, 274 F. Supp. 3d at 1350.

Here, Plaintiff does not allege any facts inferring he was hampered in his ability to present an effective federal case. Indeed, the federal action that Plaintiff alleges was impacted by the conspiracy was dismissed *before* the alleged retaliatory actions and conspiracy. *Compare* [ECF No. 14 at 13–14 (alleging injury occurring in June 2025)], *with* Second Omnibus Order, *Polo v. Bernstein* et al., Case No. 23-cv-21684-RNS, (S.D. Fla. Jul. 23, 2024), [ECF No. 55] (July 2024 Order dismissing 2023 Federal Action). Therefore, the conspiracy complained of cannot be said to have "deter[red], by force, intimidation, or threat . . . [or] imped[ed], hinder[ed], obstruct[ed]" Plaintiff's ability to testify or present an effective case in federal court. *See* 42 U.S.C. § 1985(2). Moreover, § 1985(2) claims cannot be asserted based on purported attempts to deter future federal action. *See Oldaker*, 724 F. Supp. 3d at 1347 ("The Court, therefore, finds that the potential of a future federal lawsuit . . . is an insufficient nexus to a proceeding in federal court to sustain Section 1985(2) liability."). Simply put, there is no ongoing federal case that Plaintiff alleges was hindered

16

by Defendants Hernandez and Martinez's purported conspiracy. As such, Plaintiff fails to allege any cognizable injury within the ambit of § 1985(2).

For these reasons, the undersigned **RECOMMENDS** Count II be **DISMISSED WITHOUT PREJUDICE**.

### (d) Count III – Violation of 42 U.S.C. § 1985(2)

Plaintiff asserts another § 1985(2) claim under Count III against Defendants Hernandez and Segarra. Plaintiff alleges that Defendant Hernandez and her then-attorney Segarra "agreed to injure Plaintiff in his person and property, and to impose coercive financial consequences" based on Plaintiff's filing of two federal court actions in 2021 and 2023. *See* [ECF No. 14 at 15]. Specifically, Plaintiff alleges that on July 23, 2024, one day after the 2023 Federal Action was dismissed, Defendant Hernandez, with the assistance of Segarra, "recorded a state-court judgment in the Miami-Dade County Official Records" encumbering Plaintiff's property interests. *See* [*id.*]. This state-court judgment arises from Plaintiff's Family Law Action. [*Id.*]. Plaintiff argues that these actions were taken "on account" of Plaintiff's previous federal court actions, and to deter "Plaintiff from further resort to federal court." [*Id.*].

Plaintiff is again mistaken for all the reasons stated above. *See supra* § II.c. First, Plaintiff fails to properly allege the existence of a conspiracy or an act taken in furtherance of the conspiracy beyond vague and conclusory allegations. *See* [*id.* (vaguely alleging "Defendants Hernandez and Segarra agreed to injure Plaintiff" and basing allegation of conspiracy on "information and belief.")]; *see also Franklin*, 738 F.3d at 1251.

Next, as conceded by Plaintiff, Defendant Segarra was Defendant Hernandez's attorney at the time and during the Family Law Action. [ECF No. 11 at 14–15]. Therefore, the action of recording a judicially obtained judgment against Plaintiff is well within the scope of that

17

representation. *See* [ECF *id.*]; *see also Farese*, 342 F.3d at 1232. Indeed, the Eleventh Circuit has held that "as long as an attorney's conduct falls within the scope of representation of his client, such conduct is immune from an allegation of a § 1985 conspiracy." *See Farese*, 342 F.3d at 1232. Importantly, nowhere does Plaintiff allege that Defendant Segarra acted outside the scope of his representation of Defendant Hernandez. *See Armstrong v. Friduss*, 138 F. App'x 189, 194 (11th Cir. 2005) (general assertions that police officers and their attorneys conspired, committed perjury, or concealed facts during court proceeding were not facts "susceptible to characterization as a conspiracy under § 1985" (citing *Farese*, 342 F.3d at 1232))

Third, Plaintiff again fails to plead any facts alleging retaliation beyond conclusory allegations regarding the timing of the recording of the state court judgment and fails to allege what constitutional right was infringed by the purported retaliation. *See* [ECF No. 11 at 16 ("On information and belief, Segarra communicated with Hernandez regarding, and approved, the timing and use of the July 23, 2024 recording as a coercive response to Plaintiff's federal-court participation.")]; *see also Grappell*, 847 F. App'x at 702.

Finally, and again, most strikingly, Plaintiff fails to allege a nexus between the purported conspiracy and any federal court action. *See Foster*, 111 F. Supp. 2d at 1325; *Oldaker*, 274 F. Supp. 3d at 1350. Again, Plaintiff bases his § 1985(2) claim on federal actions that were dismissed *before* any purported retaliatory or "coercive" conduct took place. *See* [ECF No. 11 at 15 (noting the retaliatory state court judgment recording occurred "one day after the July 22, 2024 federal dismissal.")]. To plead a § 1985(2) claim a claimant must show "that the conspiracy hampered the claimant's ability to *present an effective case in federal court*." *Foster*, 11 F. Supp. 2d at 1325 (emphasis added). There is no ongoing federal case that Plaintiff alleges was hampered by Defendants Hernandez and Segarra recording the state court judgment. *See* [ECF No. 11 at 15–

18

16]. Moreover, Plaintiff's attempt to allege that such recording deterred him "from further resort to federal court" is similarly unavailing. *See Oldaker*, 724 F. Supp. 3d at 1347 ("The Court, therefore, finds that the potential of a future federal lawsuit . . . is an insufficient nexus to a proceeding in federal court to sustain Section 1985(2) liability.").

Therefore, the undersigned **RECOMMENDS** Count III be **DISMISSED WITHOUT PREJUDICE**.

### (e) State Court Counts IV–VI

Plaintiff's remaining state law claims (Counts IV–VI) must be dismissed for lack of jurisdiction. *See* [ECF No. 14 at 16–26]. Under 28 U.S.C. § 1367(a), a federal district court that has original jurisdiction over a civil action may exercise supplemental jurisdiction over additional claims that are so related to the original claims that they form part of the same case or controversy under Article III of the U.S. Constitution. *See* 28 U.S.C. § 1367(a). The Court lacks jurisdiction over state-law claims that are not tied to a valid federal claim that could support supplemental jurisdiction. *See* 28 U.S.C. 1367(a) (Federal courts may consider state law claims with federal law claims when they "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."). "The decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court." *Ling v. Sec'y of Fla. Dep't of Child. & Fams.*, No. 4:24-CV-508-RH/MJF, 2025 WL 1198810, at *3 (N.D. Fla. Mar. 7, 2025), *report and recommendation adopted sub nom. Ling v. Sec'y of the Fla. Dep't of Child. & Fams.*, No. 4:24CV508-RH-MJF, 2025 WL 1192090 (N.D. Fla. Apr. 23, 2025) (quoting *Raney v. Allstate Ins. Co.,* 370 F.3d 1086, 1088–89 (11th Cir. 2004)). The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney*, 370 F.3d at 1089.

Here, Plaintiff asserts three state court claims that are, at best, tenuously related to his Family Law Action and previous federal cases. *See* [ECF No. 14 at 16–26]. However, because the undersigned has recommended the dismissal of Plaintiff's instant federal claims, and Plaintiff has not alleged an independent basis for this Court's jurisdiction over the remaining claims, Counts IV–VI should also be dismissed. *See Gonzalez v. Fla. Dep't of Highway Safety & Motor Vehicles Div. of Fla. Highway Patrol*, 237 F. Supp. 2d 1338, 1369 (S.D. Fla. 2002), *aff'd sub nom. Gonzalez v. Fla. Dep't of Hwy. Safety*, 45 F. App'x 886 (11th Cir. 2002) ("Because there are no remaining federal claims, this Court declines to exercise supplemental jurisdiction over the Plaintiffs' state law claims.").

Therefore, the undersigned **RECOMMENDS** Counts IV–VI be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

## CONCLUSION

**THEREFORE,** it is **ORDERED** that Plaintiff Frank E. Polo, Sr.'s Motion for Leave to Proceed *in forma pauperis* [ECF No. 12] be **DENIED** and Plaintiff's Expedited Motion for Ruling [ECF No. 19] and Plaintiff's Motion for Order Directing Service by United States Marshal [ECF No. 14] be **DENIED AS MOOT**.

It is further **RECOMMENDED** that Plaintiff's Complaint [ECF No. 1] be **DISMISSED** as follows:

- Count I be **DISMISSED WITH PREJUDICE** for failure to state a claim;

- Counts II–III be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim;

- Counts IV–VI be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

Objections to this Report may be filed with the District Judge within fourteen (14) days of receipt of a copy of the Report. Failure to timely file objections will bar a de novo determination

by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

   **SIGNED** this 4th day of March 2026.

                     HON. LISETTE M. REID
                     UNITED STATES MAGISTRATE JUDGE