# UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

(Miami Civil Division)

FILED BY____MCO____ D.C.

MAR 19 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

FRANK POLO )
      Plaintiff, )
       )
       )
       )
   v. ) CASE NO:_____25-cv-26058___/
       )
JUAN FERNANDEZ BARQUIN, et al. )
       )
       )
      Defendants, )
_____/ )
       )

## PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff FRANK E. POLO, SR., respectfully submits the following objections to the Report and Recommendation recommending dismissal of the First Amended Complaint.

1. Under Federal Rule of Civil Procedure 72(b)(3), the district court must make a **de novo determination** of any portion of the Report and Recommendation to which a specific objection is made.

2. The Report contains several legal and factual errors that require rejection of the recommendation of dismissal.

## I. THE REPORT IMPROPERLY DENIED PLAINTIFF'S MOTION TO PROCEED IN FORMA PAUPERIS WITHOUT CONDUCTING THE REQUIRED FINANCIAL ANALYSIS

3. The Report denies Plaintiff's motion to proceed in forma pauperis ("IFP") primarily because Plaintiff paid the filing fee. This reasoning is legally insufficient and fails to comply with the requirements of **28 U.S.C. § 1915**.

Page **1** of **18**

*Case No. 25-cv-26058*
*Polo, et al, V. Barquin, et al.*

4. **Payment of a Filing Fee Does Not Moot an IFP Application.** The Report's focus on the payment of the filing fee as a basis for denial is a misapplication of the law. The Eleventh Circuit has recognized that a party may be granted IFP status even if they have already paid the filing fee, as the status carries additional benefits, such as the right to service of process by a U.S. Marshal under **Fed. R. Civ. P. 4(c)(3)**. Furthermore, the Supreme Court has held that an affidavit is sufficient if it states that one "cannot because of his poverty pay or give security for the costs and still be able to provide himself and dependents with the necessities of life." **Adkins v. E.I. DuPont de Nemours & Co.**, 335 U.S. 331, 339 (1948).

5. **The Court Failed to Perform the Required Financial Inquiry.** The IFP statute requires a "functional" analysis of the litigant's financial health. The Court must evaluate the financial affidavit to determine if the litigant possesses the resources to sustain ongoing litigation. **Martinez v. Kristi Kleaners, Inc.**, 364 F.3d 1305, 1307 (11th Cir. 2004) (holding that a court must examine the affidavit and "not just the fact that a filing fee was paid"). In this case, Plaintiff utilized borrowed funds/credit to pay the fee to avoid missing deadlines; this does not establish a sustainable ability to pay the "necessities of life" and litigation costs simultaneously.

6. **The Report Ignored the Scope of § 1915.** The benefits of IFP status under **28 U.S.C. § 1915** are not limited to the initial filing fee. They include:

   a. **Service of Process:** Under § 1915(d), "the officers of the court shall issue and serve all process."

   b. **Transcripts and Records:** IFP status is a prerequisite for requesting transcripts at government expense under certain conditions.

c.  **Appellate Rights:** IFP status in the District Court often carries over to the Court of Appeals under **Fed. R. App. P. 24(a)(3)**.

7.  By failing to analyze any of the financial factors presented in Plaintiff's affidavit and relying solely on the payment of the fee, the Report bypassed the "meaningful review" required by Eleventh Circuit precedent. *See* <u>**Thomas v. Chattahoochee Judicial Circuit**</u>, 574 F. App'x 916, 917 (11th Cir. 2014) (remanding where the district court failed to explain why the financial affidavit was insufficient).

8.  **Conclusion** The denial of the IFP motion is unsupported by the required financial analysis. The District Court should reject this portion of the Report and evaluate Plaintiff's financial affidavit under the standards set forth in *Adkins* and *Martinez*.

## II. THE REPORT IMPROPERLY APPLIES § 1915 SCREENING AFTER DENYING IN FORMA PAUPERIS STATUS

9.  The Report denies Plaintiff's IFP application and subsequently proceeds to dismiss the Complaint under the screening provision of **28 U.S.C. § 1915(e)(2)**. This constitutes a procedural inconsistency that warrants rejection of the Report's dismissal analysis.

10. **The Statutory Scope of § 1915(e)(2) is Limited to IFP Litigants.** The screening mechanism of § 1915(e)(2) is a "gatekeeping" tool specifically designed to permit early dismissal of complaints filed by litigants proceeding *in forma pauperis*. The Eleventh Circuit has observed that § 1915(e) applies only to those litigants "proceeding in forma pauperis." **Farese v. Scherer**, 342 F.3d 1223, 1227 (11th Cir. 2003). Where the Court determines—as it did here—that a litigant is *not* proceeding under that statute because the filing fee was paid, the statutory basis for applying § 1915(e)(2) screening disappears.

11. **"Fee-Paid" Complaint Must Be Evaluated Under the Federal Rules, Not the IFP Statute.** When a plaintiff pays the full filing fee, the complaint is no longer subject to the "sua sponte" (voluntary) screening power of § 1915. Instead, the case must proceed through the normal adversarial process under the **Federal Rules of Civil Procedure**.

12. The Eleventh Circuit has held that while a court has inherent power to dismiss a frivolous claim, it generally cannot dismiss a **fee-paid** complaint for failure to state a claim without first providing the plaintiff with the procedural protections of **Rule 12(b)(6)**—including notice and a meaningful opportunity to respond to the specific arguments for dismissal. *See Jefferson* **Fourteenth Assocs. v. Wometco de Puerto Rico, Inc.**, 695 F.2d 524, 526 (11th Cir. 1983).

13. **The Report Creates a Procedural Paradox.** The Report applies § 1915 to deny the application (claiming Plaintiff is not poor enough for the statute) while simultaneously using that same statute to dismiss the case (using a procedure reserved for the poor). This "simultaneous application and denial" deprives the Plaintiff of the standard service of process and the opportunity to defend the complaint against a Motion to Dismiss filed by the Defendants.

14. **Failure to Provide Notice of Sua Sponte Dismissal.** Even if the court invokes its inherent power to dismiss a fee-paid complaint, it must provide the litigant with notice of its intent to dismiss and an opportunity to amend. **Surtain v. Hamlin Terrace Found.**, 789 F.3d 1239, 1248 (11th Cir. 2015). By utilizing the § 1915(e) "express lane" for a fee-paid case, the Report bypassed these fundamental due process requirements.

15. **Conclusion** Because Plaintiff paid the filing fee and was denied IFP status, the Complaint should not have been screened under § 1915(e)(2). The proper procedure is to allow the case to proceed to service under **Rule 4**, after which the sufficiency of the claims may be tested by the Defendants through a Rule 12 motion.

Case No. 25-cv-26058
Polo, et al. V. Barquin, et al.

## III. THE REPORT ERRONEOUSLY CONCLUDES THAT THE CLERK IS IMMUNE

16. The Report and Recommendation ("R&R") concludes that Defendant Fernandez-Barquin is entitled to absolute quasi-judicial immunity on the premise that the Clerk was acting pursuant to a judicial order. This conclusion is legally flawed and unsupported by the record for several reasons.

17. **The Clerk's Conduct Exceeded the Scope of the Judicial Order** (*See* EXHIBIT A). The 2017 order at issue required that Plaintiff's filings be reviewed by a member of the Florida Bar prior to filing. Critically, that order does not direct the Clerk to automatically reject, block, or prevent filings from being docketed. The Complaint alleges that the Clerk's office implemented an independent administrative system that rejects filings before they are ever docketed, thereby preventing them from even reaching the Court for judicial review.

18. **The Clerk's automated system was a choice, not a command**. Because the underlying order does not mandate this specific "blocking" mechanism, the Clerk's conduct reflects an independent administrative practice rather than the mere execution of a judicial directive. Absolute quasi-judicial immunity only extends to acts a clerk is "explicitly required to do" by court order. *See* **Hyland v. Kolhage,** 267 F. App'x 836, 840 (11th Cir. 2008). Here, the Clerk's automated rejection system is a discretionary administrative choice, not a ministerial mandate from the Bench.

19. **The Clerk is Not a "Judicial Officer" Under 42 U.S.C. § 1983.** The R&R erroneously applies a "total immunity" standard that ignores the plain text of **42 U.S.C. § 1983**. While § 1983 provides that injunctive relief shall not be granted against a "**judicial officer**" for acts taken in a judicial capacity, the Eleventh Circuit has not broadly expanded this term to include court clerks.

*Case No. 25-cv-26058*
*Polo, et al, V. Barquin, et al.*

20. Under the 1996 Federal Courts Improvement Act (FCIA) amendments to § 1983, Congress sought to protect *judges*—not administrative staff—from prospective injunctive relief. As an administrative official, the Clerk remains subject to prospective injunctive and declaratory relief under the long-standing rule in **Pulliam v. Allen**, 466 U.S. 522 (1984), which held that judicial immunity is not a bar to such relief. By treating the Clerk as a "judicial officer" for the purposes of § 1983, the R&R improperly expands a narrow statutory shield.

21. **Even if the Clerk were a "Judicial Officer," § 1983 Expressly Permits Declaratory Relief.** While § 1983 generally bars injunctive relief against a judge unless a declaratory decree was violated or is unavailable, it does not bar declaratory relief itself. The statute states in pertinent part:

> "...in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

22. By the plain text of the statute, you are allowed to seek a Declaratory Judgment that a certain practice (the blocking of filings) is unconstitutional, even if the actor is deemed a "judicial officer." Once you obtain that declaration, if the officer continues the practice, you can then move for an injunction.

## A. THE CHALLENGED PRACTICE EFFECTIVELY DENIES ACCESS TO THE COURTS

23. The Complaint alleges that Plaintiff was previously determined to be indigent. The filing restriction requiring review by a member of the Florida Bar, when applied to an indigent litigant who cannot afford counsel, operates as a total bar to access to the courts.

24. The Clerk's administrative practice of preventing filings from entering the docket entirely—rather than allowing the Court to address filings through traditional judicial mechanisms

*Case No. 25-cv-26058*
*Polo, et al, V. Barquin. et al.*

like sanctions—deprives Plaintiff of the ability to even *present* a case for judicial consideration. This administrative "gatekeeping" interferes with the fundamental right of access to the courts, a practice that the Eleventh Circuit has scrutinized when it prevents an indigent litigant from being heard.

### B. THE CLAIM SEEKS PROSPECTIVE RELIEF FOR AN ONGOING PRACTICE

25. The R&R's immunity analysis fails to address the nature of the relief sought. Count I seeks **prospective declaratory and injunctive relief** to address an ongoing administrative practice.

26. Even if the Clerk were entitled to quasi-judicial immunity from *damages* (money), that immunity does not automatically extend to claims for prospective relief intended to correct an ongoing constitutional deprivation. The R&R's reliance on state law immunity concepts (such as **Fuller v. Truncale**) is misplaced in a § 1983 action, as federal law distinguishes between the immunity afforded to judges and the administrative duties of clerks when constitutional rights are at stake.

### C. THE CHALLENGED CONDUCT IS ADMINISTRATIVE AND MINISTERIAL IN NATURE

27. The conduct alleged—the refusal to accept and docket filings through an automated system—is an **administrative**, not a judicial, act. In the Eleventh Circuit, the distinction between "judicial" acts and "ministerial" acts is vital. *See* **Esquire Props., Inc. v. Bragg**, 453 F. App'x 844 (11th Cir. 2012).

28. The Complaint does not challenge a judge's decision-making process; it challenges the manner in which the Clerk's office has chosen to implement a policy at the administrative level. Because the Clerk is failing to perform the ministerial duty of docketing filings that have not yet been judicially rejected, the Clerk is not entitled to the absolute immunity described in the R&R.

## IV. THE REPORT ERRONEOUSLY CHARACTERIZES STATE AND FEDERAL CLAIMS AS "TENUOUSLY RELATED"

29. **The Claims Arise from a Common Nucleus of Operative Fact.** The Report recommends dismissing the state law claims (Counts IV–VI) for lack of jurisdiction, asserting they are only "tenuously related" to the federal claims. This is a legal error. The Eleventh Circuit requires a court to exercise supplemental jurisdiction when claims "derive from a common nucleus of operative fact." **United Mine Workers of Am. v. Gibbs**, 383 U.S. 715, 725 (1966). Here, the state law claims (Breach of Agreement, Tortious Interference, and Conspiracy) are the direct result of the same retaliatory campaign alleged in the federal counts—specifically, a coordinated effort by Defendants to punish Plaintiff for his protected litigation activity by destroying his legal career and blocking his access to the courts.

30. **The State Claims Provide Necessary Context for Federal Retaliation.** The Report fails to see that the Honor Council proceedings at STU (Count IV) and the "extrajudicial communications" by Defendant Bernstein (Count V) are not isolated incidents. Rather, they constitute the "injury" and "acts in furtherance" of the broader conspiracy alleged under 42 U.S.C. §§ 1983 and 1985. By dismissing these as "tenuously related," the Report ignores the overarching factual narrative that binds these parties together in a singular course of retaliatory conduct.

31. **Judicial Economy and Fairness Mandate a Single Forum.** Because the state law claims involve the same evidence, witnesses, and background history as the federal claims, forcing Plaintiff to litigate them in separate forums would be a waste of judicial resources. The "proper amendment" of the Complaint will further clarify the "joint action" between the private defendants (STU and Segarra) and the state actors (Bernstein and the Clerk), showing that all counts are branches of the same constitutional deprivation.

32. **Conclusion**: The Court should reject the finding that the state claims lack a sufficient nexus to the federal action. These claims are inextricably linked by a shared history of retaliation and should be heard together to ensure a complete adjudication of the Defendants' coordinated conduct.

## V. SIMILARITY OF CLAIMS: THE REPORT ASSERTS THAT "SEVERAL PARTIES, CLAIMS, AND FACTS ASSERTED IN PLAINTIFF'S PREVIOUSLY DISMISSED 2023 FEDERAL ACTION ARE ASSERTED HERE ONCE MORE".

33. **Distinction Between Historical Background and Prayer for Relief.** The Report incorrectly asserts that the Amended Complaint is a repeat of the 2023 Federal Action because it references similar parties and background facts. However, there is a fundamental legal distinction between pleading "historical background" to establish the elements of a conspiracy and seeking damages for barred conduct. The Eleventh Circuit has recognized that prior acts—even those that are not themselves actionable—may be used as "background evidence in support of a timely claim." **United States v. Diez**, 515 F.2d 892, 903 (11th Cir. 1975).

34. **The Conspiracy Continued After the Prior Dismissal.** A conspiracy does not terminate simply because a court dismisses a specific count; it continues as long as the co-conspirators perform acts in furtherance of their common goal. In this case, while the background narrative provides necessary context for the Defendants' animus, the **damages sought** are based purely on new, post-dismissal acts:

    a. The December 2025 blocking of court filings by the Clerk.

    b. The July 23, 2024, recording of a state-court judgment specifically timed to punish Plaintiff immediately after the federal dismissal.

    c. The ongoing implementation of an automated rejection system that constitutes a fresh constitutional deprivation every time a filing is blocked.

*Case No. 25-cv-26058*
*Polo, et al, V. Barquin, et al.*

35. **The Doctrine of Res Judicata Does Not Bar Claims for New Conduct.** The Report's reliance on the "hallmarks" of the 2023 case suggests an improper application of *res judicata* or collateral estoppel. Under federal law, a prior judgment "cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." **Lawlor v. Nat'l Screen Serv. Corp.**, 349 U.S. 322, 328 (1955). Because the core conduct challenged in the current Amended Complaint occurred **after** the July 22, 2024, dismissal of the prior action, it is a new cause of action that must be evaluated on its own merits.

36. **Conclusion:** The Court should reject the Report's characterization of the Complaint as a "relitigation" of the 2023 Action. The Plaintiff is entitled to plead the history of the Defendants' conspiracy to show motive and intent, provided that the relief sought is limited to the new and ongoing constitutional violations described in the current pleading.

# VI. THE REPORT IMPROPERLY LABELS THE COMPLAINT A "SHOTGUN PLEADING"

37. The Report erroneously characterizes the complaint as a shotgun pleading. Under Eleventh Circuit precedent, a complaint is only a shotgun pleading if it is "calculated to confuse the "enemy," and the court, so that they cannot determine what the plaintiff is claiming and what the relevant facts are." **Weiland v. Palm Beach Cty. Sheriff's Office**, 792 F.3d 1313, 1326 (11th Cir. 2015). The structure of the present Complaint demonstrates the opposite of this confusion.

38. **The Complaint Specifically Avoids the Four Categories of Shotgun Pleadings.** The Eleventh Circuit has identified four specific categories of shotgun pleadings. **Weiland**, 792 F.3d at 1321-23. The Complaint avoids all four:

*Case No. 25-cv-26058*
*Polo, et al. V. Barquin, et al.*

a. **No "Indiscriminate Incorporation":** Unlike the "most common type" of shotgun pleading, each count here refers only to the factual allegations relevant to that specific claim rather than indiscriminately incorporating all preceding allegations.

b. **Distinct Counts:** Each claim is separated into a distinct count, satisfying the requirement that "each claim founded on a separate transaction or occurrence.. must be stated in a separate count." **Fed. R. Civ. P. 10(b).**

c. **Specific Defendants:** Each count identifies the specific defendants involved, avoiding the "vice" of charging multiple defendants with the same act.

39. **Legal Sufficiency is Distinct from Pleading Structure.** The Report appears to conflate the legal sufficiency of Counts II and III with the structural requirements of Rule 8. Even if the Court concludes a claim is pleaded under an incorrect statutory theory, this "does not convert the complaint into a shotgun pleading." Structure is about **notice,** not the ultimate merit of the legal theory. The Eleventh Circuit has held that the "unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another.. to give the defendants adequate notice of the claims against them." **Weiland, 792 F.3d at 1323.** Here, the Defendants are clearly on notice of the conduct alleged.

40. **The Report Erroneously Isolated Phrases Rather than Evaluating the Narrative.** The Report relies on isolated phrases it deems "conclusory." However, at the pleading stage, the Court must "draw on its judicial experience and common sense" to evaluate the narrative as a whole. **Ashcroft v. Iqbal,** 556 U.S. 662, 679 (2009).

a. The Complaint provides the "who, what, when, and where" of the Clerk's conduct, the timing relative to prior litigation, and the coordinated nature of the acts.

b.  The Eleventh Circuit has cautioned that "the Federal Rules do not require a plaintiff to plead with maximum specificity." **Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.**, 953 F.3d 1214, 1225 (11th Cir. 2020).

41. **The Plausibility Analysis Favors the Plaintiff.** The Complaint satisfies the "plausibility standard" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." **Iqbal**, 556 U.S. at 678. The fact that some paragraphs state the inference before describing the supporting facts does not change the substance of the claim. "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." **Conley v. Gibson**, 355 U.S. 41, 45-46 (1957).

42. **Conclusion** When read collectively, the allegations present a coherent factual narrative. The Complaint provides "a short and plain statement of the claim showing that the pleader is entitled to relief," as required by **Rule 8(a)(2)**, and does not exhibit the "grossly incoherent" or "repetitive" nature of the shotgun pleadings condemned by the Eleventh Circuit.

## VII. THE REPORT DOES NOT MEANINGFULLY APPLY THE LIBERAL CONSTRUCTION REQUIRED FOR PRO SE PLEADINGS

43. The Report states that Plaintiff's pleadings are construed liberally, but it then proceeds to evaluate the Complaint using a strict, technical parsing typically reserved for attorney-drafted documents. This approach is a departure from well-settled law.

44. **The "Less Stringent Standards" Mandate.** It is a "settled rule" that "the allegations of [a pro se complaint], however inartfully pleaded, are held to less stringent standards than formal pleadings drafted by lawyers." **Hughes v. Lott**, 350 F.3d 1157, 1160 (11th Cir. 2003) (quoting **Haines v. Kerner**, 404 U.S. 519, 520 (1972)). The Eleventh Circuit has repeatedly emphasized

*Case No. 25-cv-26058*
*Polo, et al, V. Barquin, et al.*

that courts must go beyond the labels used by a pro se litigant to determine if the factual allegations, when viewed broadly, state a claim. **Tannenbaum v. United States**, 148 F.3d 1262, 1263 (11th Cir. 1998).

45. **The Report Failed to "Look Beyond the Labels."** By isolating individual phrases and characterizing them as "conclusory" without analyzing the surrounding factual narrative, the Report failed to apply the required flexibility. In the Eleventh Circuit, liberal construction means that if a court can "reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority [or] his confusion of various legal theories." **Green v. City of Montgomery**, 792 F. App'x 741, 746 (11th Cir. 2019).

46. **Hyper-Technical Parsing is Proscribed.** The Report's approach effectively applied a stricter standard than that normally applied to pro se pleadings. The Eleventh Circuit has cautioned that "liberal construction" is not a mere formality; it is a "duty" of the court to ensure that a pro se litigant's access to the courts is not stifled by technicalities. **Erickson v. Pardus**, 551 U.S. 89, 94 (2007) (reaffirming that pro se complaints are to be "liberally construed").

47. **Failure to Evaluate the Factual Context.** The Complaint contains specific factual allegations describing the Clerk's implementation of an automated rejection system, the timing of these events, and the resulting bar to court access. By ignoring the context of these facts and focusing on the order in which inferences were stated, the Report applied a "hyper-technicality" that the Supreme Court has ruled is inappropriate for pro se litigants. **Estelle v. Gamble**, 429 U.S. 97, 106 (1976).

48. **Conclusion:** The Report's evaluation of the Amended Complaint erroneously replaces the "less stringent" pro se standard with a hyper-technical parsing that penalizes the Plaintiff for his lack of counsel. By isolating individual phrases and ignoring the surrounding factual narrative, the

*Case No. 25-cv-26058*
*Polo, et al. V. Barquin, et al.*

Report failed in its "duty" to determine if the facts, viewed broadly, state a claim. Because the Complaint describes a plausible deprivation of court access, the Court should reject the Report's recommendation and ensure this case is decided on its merits rather than on technicalities.

## VIII. THE REPORT IMPROPERLY RELIES ON PRIOR LITIGATION HISTORY TO CHARACTERIZE THE CURRENT COMPLAINT

49. The Report errs by relying on the dismissal of Plaintiff's previous 2023 Federal Action to conclude that the current Amended Complaint is a shotgun pleading. Under federal law, a court's analysis of a pleading's sufficiency must be confined to the allegations within that specific document.

50. **Each Pleading Must Be Judged on Its Own Merits.** The Eleventh Circuit has made clear that the determination of whether a complaint is a shotgun pleading depends on whether *that specific document* fails to give the defendants adequate notice of the claims against them. **Weiland v. Palm Beach Cty. Sheriff's Office**, 792 F.3d 1313, 1323 (11th Cir. 2015). By scotching the current complaint based on the "hallmarks" of a completely separate filing from a prior case, the Report fails to conduct the independent review required by **Rule 8**.

51. **Prior Deficiencies Do Not Establish a Permanent "Shotgun" Status.** The Report's reliance on Judge Scola's descriptions of a prior, 147-page complaint to characterize the current, much more streamlined Amended Complaint is legally unsound. Even if a litigant has filed shotgun pleadings in the past, a court may not dismiss a new action simply because of that history. The "drastic remedy" of dismissal with prejudice for shotgun pleading is only appropriate when a party has been given a chance to amend *the specific complaint at issue* and fails to do so. **Vibe Micro, Inc. v. Shabanets**, 878 F.3d 1291, 1295 (11th Cir. 2018).

52. **The Report Fails to Identify Specific Structural Defects in the Current Pleading.** Instead of identifying how the *current* Amended Complaint violates the four categories of shotgun pleadings established in *Weiland*, the Report simply adopts the reasoning used in a prior case. This "guilt by association" approach ignores the fact that the current Complaint:

 a. Separates counts by defendant and cause of action.

 b. Avoids the "indiscriminate incorporation" of facts by only citing relevant paragraphs.

 c. Provides a linear timeline of the specific 2025 events giving rise to the claims.

53. **The Use of Extrinsic Evidence (Prior Case Orders) is Improper.** At the motion to dismiss or screening stage, a court is generally limited to the "four corners" of the complaint. **Wilchombe v. TeeVee Toons, Inc.**, 555 F.3d 949, 959 (11th Cir. 2009). While a court may take judicial notice of its own records, it cannot use the *characterization* of a prior, unrelated document to bypass a factual analysis of the current pleading. The Report's statement that "Plaintiff is no stranger to.. the concept of a shotgun pleading" suggests a bias based on litigation history rather than a neutral application of **Rule 8(a)** to the document currently before the Court.

54. **Conclusion:** The Court should reject the Report's characterization of the Amended Complaint as a shotgun pleading. The current filing provides "fair notice" of the claims and the grounds upon which they rest, satisfying the requirements of the Federal Rules regardless of the outcome of Plaintiff's prior, unrelated litigation.

## IX. DISMISSAL WITH PREJUDICE IS PREMATURE

55. Even if the Court concludes that the Complaint contains pleading deficiencies, dismissal with prejudice is a "drastic remedy" that is premature at this stage of the litigation.

56. **Plaintiff Has Not Been Afforded a Meaningful Opportunity to Amend.** While Plaintiff amended the complaint once as of right pursuant to **Federal Rule of Civil Procedure 15(a)(1)**, that amendment occurred prior to service and prior to any judicial screening. The Eleventh Circuit has established a "longstanding" rule that **"[w]here a more carefully drafted complaint might state a claim, a pro se litigant must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice."** Bank v. Pitt, 928 F.2d 1108, 1112 (11th Cir. 1991); *see also Woldeab v. Dekalb Cty. Sch. Dist.*, 885 F.3d 1289, 1291 (11th Cir. 2018). Because this is the first time judicially identified defects have been presented, a dismissal with prejudice violates this mandate.

57. **Amendment is Not Futile.** The Report recommends dismissal with prejudice on the grounds of "futility," but the Eleventh Circuit defines futility narrowly. An amendment is only futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment. Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007).

    a.  The Report evaluates the complaint primarily under 42 U.S.C. § 1985. However, the underlying facts concerning the conduct of Hernandez, Martinez, and Segarra can support claims under **42 U.S.C. § 1983** if pleaded as "joint action" between private parties and state actors.

    b.  Private individuals who act in concert with state officials to deprive a person of constitutional rights act "under color of state law" for § 1983 purposes. Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 941 (1982).

58. Plaintiff can provide additional historical background—including the specific sequence of events following prior federal litigation and the coordinated nature of the defendants' conduct with government officials—that would satisfy the § 1983 "nexus" or "joint action" tests.

59. **The Magistrate's Reliance on Prior Litigation History is Improper.** The Report suggests that because Plaintiff has had prior cases dismissed as shotgun pleadings, he should not be granted leave to amend here. However, the Eleventh Circuit has held that a court must provide a pro se litigant with "fair notice" of the defects in the **current** complaint and a "meaningful opportunity" to fix them *before* resorting to the "last resort" of dismissal with prejudice. **Vibe Micro, Inc. v. Shabanets**, 878 F.3d 1291, 1295 (11th Cir. 2018).

60. **Conclusion:** Because Plaintiff can allege additional facts to support a federal claim under § 1983, the amendment is not futile. The appropriate course of action under Rule 15 and the Eleventh Circuit's pro se policy is to grant leave to amend rather than dismiss the action with prejudice

## CONCLUSION

61. For the reasons set forth above, the Magistrate Judge's Report and Recommendation is legally and procedurally flawed and should be rejected. The Report improperly denied Plaintiff's *in forma pauperis* status based on the singular fact that a filing fee was paid, and subsequently applied an inapplicable § 1915(e) screening standard to a fee-paid complaint.

62. Furthermore, the Report's immunity analysis and "shotgun pleading" characterization rest on an erroneous interpretation of the Clerk's administrative conduct and an improper reliance on extrinsic litigation history. The Report confuses the pleading of historical background facts— necessary to show the existence and intent of a conspiracy—with an attempt to relitigate prior claims. Plaintiff's current claims are based purely on new, actionable conduct that occurred after the July 22, 2024, dismissal of his prior action. Finally, the Report fails to recognize the "common nucleus of operative fact" shared between the state and federal claims, which are inextricably linked by a single retaliatory narrative.

*Case No. 25-cv-26058*
*Polo, et al, V. Barquin, et al.*

63. Plaintiff acknowledges that 42 U.S.C. § 1985 may not be the optimal statutory vehicle for the facts alleged. However, the underlying conduct of Defendants Hernandez, Martinez, and Segarra supports viable federal claims under 42 U.S.C. § 1983 when pleaded as "joint action" between private parties and state actors. Because these deficiencies are structural and legal rather than factual, amendment is not futile.

**WHEREFORE**, Plaintiff FRANK E. POLO, SR. respectfully requests that the District Court:

1. **REJECT** the Report and Recommendation in its entirety;

2. **GRANT** Plaintiff's Motion to Proceed *In Forma Pauperis*;

3. **SET ASIDE** the recommendation of dismissal with prejudice and instead **GRANT** Plaintiff **forty-five (45) days** from the date of the Court's Order to file a Second Amended Complaint; and

4. **GRANT** an additional **ninety (90) days** from the date of the filing of the Second Amended Complaint to effectuate service of process, in light of the delays caused by the pending motions for IFP status and U.S. Marshal service.

Dated: March 19, 2026

Respectfully submitted,

By: _____
Frank E. Polo, Sr.
Plaintiff, pro se
1475 SW 8th St. Apt. 411
Miami, FL. 33135
Phone: 305-901-3360
E-Mail: Frank.Polo@msn.com

EXHIBIT A

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

FAMILY DIVISION

Merlin Hernandez

Petitioner,

vs.

Frank Enrique Polo

Respondent.

_____/

CASE NO. 2012-17787 FC 04

ORDER Re Resolution of Competing Orders

THIS CAUSE having come on to be heard on October 24, 2012 on Petitioner's/Respondent's Motion Resolution of Competing Orders by the Parties.

and the Court having read argument of counsel, and being otherwise advised in the Premises, it is

hereupon,

**ORDERED AND ADJUDGED** that said Motion be, and the same is hereby

The Court has entered the two (2) proposed orders submitted by Petitioner. Court further finds that Respondent's objection to proposed orders and conduct during pending litigation is vexatious. The Respondent shall not file any further pleadings, motions or letters to the Court in this matter without having the same reviewed by a member of the Florida Bar.

**DONE AND ORDERED** in Chambers, at Miami, Miami-Dade County, Florida, this 24

day of ___Oct.___ 20_17_.

Circuit Court Judge

Scott M. Bernstein
Circuit Court Judge

Copies furnished to: M. Segarra
F. Polo