# UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

FRANK E. POLO, SR.　　　　　　　　　　　　　　 )
　　Plaintiff,　　　　　　　　　　　　　　　　　 )
　　　　　　v.　　　　　　　　　　　　　　　　　 ) CASE NO: __25-CV-26058__

SCOTT MARCUS BERNSTEIN;　　　　　　　　　 )
MANUEL SEGARRA, III;　　　　　　　　　　　　 )
ST. THOMAS UNIVERSITY, INC.;　　　　　　　　 ) __JURY TRIAL IS DEMANDED__
MERLIN HERNANDEZ;　　　　　　　　　　　　　 )
RANDOLPH MARTINEZ;　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　　　　　 )

Defendants,

Rec'D
FILED BY_____D.C.

APR 0 9 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## § 1.　SECOND AMENDED COMPLAINT

1. Plaintiff, FRANK E. POLO SR., files this complaint against the defendants MANUEL A. SEGARRA, III; SCOTT MARCUS BERNSTEIN (in his Personal Capacity); ST. THOMAS UNIVERSITY, INC.; MERLIN HERNANDEZ, and RANDOLPH MARTINEZ (the "DEFENDANTS" in this complaint), and alleges as follows:

### § 2.　JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over Plaintiff's federal claims under **28 U.S.C. § 1331** because Plaintiff asserts claims under **42 U.S.C. § 1983** and the **First Amendment**.

3. This Court may grant declaratory and equitable relief as authorized by law, including under **28 U.S.C. §§ 2201–2202** and **42 U.S.C. § 1983**.

4. This Court has supplemental jurisdiction over Plaintiff's state-law claims under **28 U.S.C. § 1367(a)** because those claims form part of the same case or controversy as the federal claims.

5. Venue is proper in the Southern District of Florida under **28 U.S.C. § 1391(b)** because a substantial part of the events or omissions giving rise to the claims occurred in Miami-Dade County, Florida, and at least one Defendant resides in or is located in this District for venue purposes.

6. All acts and omissions alleged occurred within this District unless otherwise stated.

7. To the extent Plaintiff asserts any state-law claims previously dismissed without prejudice in the prior federal action, Plaintiff pleads tolling under **28 U.S.C. § 1367(d)** during the pendency of that action and for the applicable post-dismissal period.

8. Plaintiff does not reassert any federal claims previously dismissed with prejudice in the prior action and pleads pre-dismissal conduct only as background facts and factual predicates where relevant.

## § 3. PARTIES

9. Plaintiff **FRANK E. POLO, SR.** is a resident of Miami-Dade County, Florida.

10. Defendant **ST. THOMAS UNIVERSITY, INC. ("STU")** is a Florida not-for-profit corporation with its principal place of business in Miami-Dade County, Florida.

11. Defendant **SCOTT MARCUS BERNSTEIN ("Bernstein"),** a judicial officer assigned to the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, is sued in his individual capacity.

12. Defendant **MERLIN HERNANDEZ ("Hernandez")** is, upon information and belief, a resident of Miami-Dade County, Florida.

13. Defendant **RANDOLPH MARTINEZ ("Martinez")** is, upon information and belief, a resident of Miami-Dade County, Florida.

14. Defendant **MANUEL A. SEGARRA, III ("Segarra")** is, upon information and belief, a Florida resident, an attorney conducting business in Miami-Dade County, Florida, and the owner of Segarra & Associates, P.A. Segarra, personally and/or through Segarra & Associates, P.A., represented Defendant Hernandez in the family-court litigation and related matters and participated in communications, filings, litigation strategy, enforcement-related conduct, and other actions directed at Plaintiff.

## § 4. INTRODUCTION SUMMARY OF THE CASE

15. This action arises from two related groups of claims.

16. First, Plaintiff alleges that, after engaging in protected activity through litigation, court filings, and public criticism concerning misconduct in the family-court proceedings, Defendants Hernandez, Segarra, and Martinez participated in retaliatory post-dismissal conduct directed at Plaintiff's property and parental rights.

17. The principal post-dismissal federal acts alleged are the **July 23, 2024** recordation of a state-court judgment one day after dismissal of Plaintiff's prior federal action and the **June 2025**

removal of the children from the United States to the Bahamas without Plaintiff's valid consent and without court authorization.

18. Second, Plaintiff alleges that Defendant Scott Bernstein and Defendant St. Thomas University, Inc. ("STU") participated in conduct that led to Plaintiff's suspension and expulsion from law school, including Bernstein's **January 31, 2019** post-recusal communication to STU, STU's use of undisclosed materials, and departures from STU's published Honor Code procedures.

19. Counts I through III are federal claims arising from the post–**July 22, 2024** conduct alleged against Hernandez, Segarra, and Martinez. Counts IV through VI are state-law claims against STU and Bernstein for breach of implied-in-fact agreement, tortious interference, and civil conspiracy.

20. Plaintiff pleads pre–**July 22, 2024** facts in the federal counts only as evidence of formation, motive, knowledge, mechanism, and continuity of the alleged retaliatory conspiracy, and not as standalone bases for federal recovery.

21. Plaintiff seeks federal recovery only for post–**July 22, 2024** operative acts and resulting injuries, and seeks relief on the STU-related state-law claims for the injuries and continuing harms alleged in those counts.

## § 5.   STATEMENT OF FACTS

### SECTION 5(A)   PRE–JULY 22, 2024 FACTS SHOWING FORMATION OF THE CONSPIRACY

1. On or about **July 7, 2015**, Plaintiff obtained materials that he believed showed the Guardian ad Litem ("GAL") was intentionally misleading the court to benefit Hernandez. That same day, Plaintiff filed a motion to vacate the final judgment, alleging fraud on the court.

2. Following that filing, the parties entered into an agreed final judgment providing for equal timesharing. In **August 2015**, Plaintiff began attending law school, and Plaintiff communicated that fact to Hernandez's attorney.

3. On or about **December 15, 2015**, Hernandez brought the case back to court over a dispute concerning which parent had the right to take the children on vacation. During the hearing, Plaintiff requested clarification of the parties' rights under the agreed judgment, but the court did not resolve that issue. On **December 24, 2015**, the court entered a written order that still did not clarify the

parties' respective vacation rights. After Plaintiff returned from traveling with the children, the court found Plaintiff in contempt in connection with that travel.

4. On **February 13, 2017**, Plaintiff filed a civil action against the GAL, Hernandez, and Martinez.

5. On or about **March 17, 2017**, Hernandez raised a dispute regarding which zip code should be used for the children's school registration. On **March 28, 2017**, Judge Judith Kreeger referred that issue to coparenting services, limited to six sessions, and noted Plaintiff's indigency.

6. On **April 3, 2017**, Judge Bernstein entered an order referring the case to a parenting coordinator. Plaintiff did not attend a hearing on that referral, did not receive service of the order at or near the time it was entered, and the order included statements that the parties had an opportunity to consult with an attorney or domestic-violence advocate before consenting.

7. On **July 28, 2017**, Segarra filed a notice setting a hearing for **August 1, 2017**, identified as addressing pending motions. In the days before that hearing, Hernandez proposed that the children remain enrolled in a school located within Plaintiff's zip code, and Plaintiff agreed. As of **August 1, 2017**, the school-selection issue had been resolved.

8. On **August 1, 2017**, the court held a hearing noticed for pending motions, but the discussion focused on referral to a coparenting coordinator rather than school selection. Plaintiff objected that there was no pending issue requiring such a referral. Hernandez asserted that an issue remained pending, and when Plaintiff asked what the issue was, no one answered. When Plaintiff pressed the point, Bernstein cut him off, ordered Plaintiff to pay costs associated with the referral, and extended coparenting services from six sessions to two years. During the same proceeding, Bernstein asked Plaintiff which law school he was attending.

9. On **October 23, 2017**, Plaintiff observed Bernstein at St. Thomas University ("STU") with another judge and STU personnel, including Dean Tamara Lawson and Patricia Moore.

10. On **October 24, 2017**, during a hearing noticed to address competing orders, and not to address access to the court, Bernstein restricted Plaintiff's ability to file documents based on a list of motions produced during the hearing by Segarra. Most motions on that list had already been resolved, related to previous litigation, or were no longer pending, and the list had not been provided to Plaintiff in advance. After that hearing, Plaintiff was barred from filing anything without review by a Florida Bar attorney.

11. On **May 23, 2018**, Segarra deposed Plaintiff. In addition to financial questions, Segarra asked about Plaintiff's law-school status, coursework, and anticipated graduation. Plaintiff stated that he had not yet graduated and did not provide a definite completion date.

12. On **September 25, 2018**, during a court proceeding, Bernstein made statements reflecting knowledge of Plaintiff's academic status consistent with information discussed during the **May 23, 2018** deposition.

13. On **October 2, 2018**, Bernstein entered another order further restricting Plaintiff's ability to file documents and restricting Plaintiff's communications with the judicial assistant. During that same proceeding, statements were made suggesting that Plaintiff had represented himself as an attorney. Plaintiff disputed those statements, and Bernstein later characterized them as a "gross misrepresentation." During the same hearing, Segarra raised contempt and unauthorized-practice allegations and urged punitive action. Plaintiff was also questioned about his law-school status and anticipated completion.

14. On **January 29, 2019**, Bernstein signed an order granting recusal and stated on the record that he had prepared the order and would no longer preside over the case.

15. On **January 31, 2019**, two days after recusal, Bernstein transmitted a letter and the recusal order to STU Dean Tamara Lawson on official court letterhead. In that letter, Bernstein identified Plaintiff as a litigant in his division, stated that he was bringing a matter concerning Plaintiff to STU's attention, and enclosed the recusal order.

16. On **February 7, 2019**, STU initiated an Honor Council proceeding against Plaintiff based on Bernstein's recusal materials. Before any Honor Council determination, STU suspended Plaintiff and instructed Plaintiff to amend his Florida Bar application.

17. Between **January 31, 2019** and **February 26, 2019**, STU received additional family-court filings from Hernandez's counsel. Professor Silver later acknowledged in writing that Manuel Segarra had provided multiple filings from the family case.

18. On **April 15, 2021**, Plaintiff asked Judge Del Rey to remove the filing restrictions previously imposed in the family-court case. Judge Del Rey declined, stating they were the law of the case. A written order prepared by Segarra reflected a limited restriction, but the Clerk later did not accept Plaintiff's attempted filings.

19. On **October 8, 2021**, Plaintiff filed a federal action seeking declaratory and injunctive relief against Judge Bernstein and Judge Del Rey. Judge Del Rey later recused, and Judge Multack was assigned to the case.

20. On **July 5, 2022**, Plaintiff informed Judge Multack that prior filing restrictions had been imposed without notice or a hearing and that filings were not being accepted by the Clerk. During that hearing, Judge Multack stated on the record that Plaintiff could proceed by motion practice and that filings would be accepted. Judge Multack then asked about Judge Del Rey's recusal. Plaintiff informed Judge Multack that he had a case against Bernstein and that Segarra was part of the conspiracy, and Multack cut him off.

21. On **July 11, 2022**, Judge Multack entered a written order limiting Plaintiff's filings to matters related to Hernandez's pending motion for attorney's fees. That written order was narrower than the filing access described on the record on **July 5, 2022**.

22. On **January 12, 2023**, Plaintiff objected that the court lacked jurisdiction to adjudicate the fee motion because final judgment had been entered, jurisdiction had not been reserved, and the rehearing period had expired. Plaintiff declined to participate further and exited. The court proceeded with the hearing, denied Plaintiff's motion to dismiss, denied Plaintiff's exceptions, and directed opposing counsel to submit a proposed order. A proposed order was then submitted and approved.

23. The timing, sequence, and repetition of these acts support a reasonable inference that Bernstein, Del Rey, Multack, Segarra, Hernandez, and later cooperating participants used recurring procedural methods — including hearings noticed for one issue but used for another, proposed orders prepared through Hernandez's counsel, and filing restrictions enforced as a practical filing bar — to retaliate against Plaintiff for his filings, objections, litigation, and public criticism.

## SECTION 5(B)   POST–JULY 22, 2024 OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

24. On **May 4, 2023**, Plaintiff filed a federal action against, among others, Bernstein, Del Rey, Multack, Hernandez, Segarra, and Martinez. Hernandez, Segarra, and Martinez were served with or otherwise became aware of that action.

25. On **March 13, 2023**, a state-court judgment was entered. On **January 27, 2024**, Plaintiff recorded a Lady Bird deed reflecting a remainder interest in real property. The **March 13, 2023** judgment was not recorded during the period immediately following its entry.

26. On **July 22, 2024**, Plaintiff's federal action was dismissed. On **July 23, 2024**, Hernandez recorded the **March 13, 2023** judgment in the Miami-Dade County Official Records. Prior to entry of the operative order underlying that judgment, the court had directed counsel associated with Segarra's firm to submit a proposed order, and a written order was thereafter prepared and entered. The **July 23, 2024** recordation followed the dismissal of Plaintiff's federal action by one day.

27. At the time of the **July 23, 2024** recordation, Plaintiff had previously challenged actions taken by Hernandez and Segarra in court proceedings.

28. In **June 2025**, during Plaintiff's timesharing period, Hernandez and Martinez traveled with the children from the United States to the Bahamas without a court order. Before that travel, Plaintiff informed Hernandez that his planned vacation dates of **June 10, 2025** through **June 17, 2025** conflicted with her plans and that any prior consent was withdrawn. Plaintiff also informed Hernandez that existing orders required either his written consent or a court order for international travel with the children. Hernandez and Martinez proceeded with the travel without obtaining a court order.

29. The departure occurred from Port Canaveral rather than Miami, where the parties reside. After the departure, Plaintiff contacted the cruise line and was informed that an earlier email from Plaintiff had been presented as evidence of consent. Plaintiff later participated in a call in which Martinez asserted that the earlier email authorized the travel despite Plaintiff's later objection. Hernandez later stated that passports were not required for the travel. At the time of the **June 2025** travel, the filing limitations described above remained in effect.

30. The **July 23, 2024** recordation and the **June 2025** travel occurred after Plaintiff had engaged in prior litigation involving the same parties and after the family case had already closed.

## SECTION 5(C)   FACTS RELEVANT TO COUNT 4
### (Breach of Implied-In-Fact Agreement Against STU)

31. On **January 31, 2019**, Plaintiff was enrolled at St. Thomas University School of Law. Plaintiff's tuition and fees had been paid through federal student loans, and Plaintiff was nearing completion of his Juris Doctor degree and a Tax Law Certificate.

32. STU's published Honor Code stated that the Council shall not be used to resolve personal conflicts, that the accused has the right to be present during all testimony and to request further questions at the conclusion of testimony, that a finding of guilt requires clear and convincing evidence, and that the Associate Dean for Academic Affairs shall be the chairperson.

33. At the relevant time, Patricia Moore was the Associate Dean for Academic Affairs.

34. The Honor Code also stated that a complaint shall consist of a written statement identifying the name of the accused and the nature of the suspected violation; that the Council shall notify the accused of the hearing date and identity of the Hearing Panel; that the chairperson shall review the complaint and determine whether the allegations are acceptable for Council disposition; and that the hearing is inquisitorial, with the Hearing Panel deciding what documentary evidence to request, what witnesses to call, and what questions to present, while the chairperson has final authority over evidentiary and scheduling matters.

35. On **February 7, 2019**, Dean Tamara Lawson sent Plaintiff a letter invoking allegations derived from Judge Bernstein's recusal materials, using those materials as the initiating basis for the disciplinary process, citing Honor Code provisions, and immediately suspending Plaintiff from specified Law School activities pending the Honor Council's investigation and hearing.

36. That letter also instructed Plaintiff to amend his Florida Bar application and report the matter to the Florida Bar.

37. On **February 20, 2019**, Professor Silver sent Plaintiff notice of an Honor Code complaint and a hearing set for **February 26, 2019**, and identified himself as the Hearing Officer.

38. On **February 21, 2019**, Plaintiff requested the complaint and the name of the accuser so that Plaintiff could better prepare for the hearing. In response, Silver stated that he had received from the Dean a written statement referencing alleged conduct based on Judge Bernstein's **January 29, 2019** order, but he did not identify the accuser.

39. At the Honor Council hearing, Plaintiff was excluded from the room during the testimony of Professor Juan Carlos Planas, the only live witness presented against Plaintiff, and Plaintiff was not provided a summary of that testimony before the hearing.

40. Between **January 31, 2019** and **February 26, 2019**, STU received family-court filings supplied by Hernandez's counsel, Manuel Segarra. On **February 25, 2019**, Associate Dean Moore authored a "Highly Confidential Memorandum" to Professor Silver, and STU did not provide that memorandum or its attachments to Plaintiff before the hearing.

41. Before the second hearing on or about **March 23, 2019**, STU had deactivated Plaintiff's campus access, removed Plaintiff from the security access list, revoked Plaintiff's network access, and removed Plaintiff's pro bono community hours from the system. On **April 22, 2019**, STU confirmed that Plaintiff's pro bono hours had been on file since **2018**.

42. On **April 6, 2019**, Professor Silver informed the Plaintiff that the Honor Council had found him guilty of all accusations. On or about **April 16, 2019**, the Plaintiff appealed. The appeal consisted of an in-person discussion with Dean Lawson and Dean Moore, during which no documentary evidence was reviewed, and the Plaintiff was questioned about matters such as why he ran for office; however, none of the Plaintiff's evidence was considered.

43. On **May 17, 2019**, STU issued a letter stating that Plaintiff's expulsion was final. On **May 20, 2019**, Plaintiff discovered for the first time Honor Council materials that had been classified as "Highly Confidential," including Judge Bernstein's **January 31, 2019** letter, the **January 29, 2019** recusal order, and Moore's memorandum. Plaintiff requested reconsideration based on those materials, but STU did not reopen the disciplinary proceedings.

## SECTION 5(D)   FACTS RELEVANT TO COUNT 5
### (Tortious Interference Against Bernstein)

44. On **August 1, 2017**, during a proceeding in the family-court case, Bernstein asked Plaintiff which law school Plaintiff was attending.

45. On **October 23, 2017**, Plaintiff observed Judge Bernstein at STU with another judge and STU personnel, including Dean Tamara Lawson and Patricia Moore.

46. On **May 23, 2018**, during Plaintiff's child-support deposition, Defendant Segarra questioned Plaintiff not only about child-support issues but also about Plaintiff's law-school progress, expected graduation date, whether Plaintiff had applied to the Florida Bar, and whether

Plaintiff had applied for admission in any other jurisdiction. Plaintiff objected that the questioning extended beyond proper child-support discovery.

47. By **September 25, 2018**, Bernstein spoke in open court in a manner reflecting knowledge of Plaintiff's academic and bar-admission status that Plaintiff had provided in the **May 23, 2018** deposition and had not otherwise provided directly to Bernstein.

48. On **October 2, 2018**, Bernstein questioned Plaintiff about Plaintiff's law-school status and time remaining before completion and stated that Plaintiff had claimed to be a lawyer or admitted to practice. Plaintiff stated that Plaintiff was not licensed and had not claimed to be licensed.

49. On **January 29, 2019**, Bernstein signed an order granting disqualification/recusal. At the recusal hearing, Bernstein stated on the record, "I have drafted an order granting disqualification which I am now signing in your presence," and, after signing the recusal order, further stated that he was no longer the judge in the case and could not sign Plaintiff's counsel's motion to withdraw.

50. On **January 31, 2019**, two days after recusal, Bernstein sent a letter and his recusal order to STU Dean Tamara Lawson on official Eleventh Judicial Circuit letterhead and with his official signature block. In that letter, Bernstein wrote that he felt compelled to bring to STU's attention a matter concerning Plaintiff, identified Plaintiff as a litigant in his family-court division, and enclosed the recusal materials.

51. On **February 7, 2019**, STU initiated an Honor Council proceeding against Plaintiff based on allegations contained in Bernstein's recusal materials and, before any Honor Council finding, suspended Plaintiff and instructed Plaintiff to amend his Florida Bar application.

52. On **May 17, 2019**, STU issued a letter stating that Plaintiff's expulsion was final.

### SECTION 5(E)    FACTS RELEVANT TO COUNT 6
(Civil Conspiracy Against STU and Bernstein)

53. On **August 1, 2017**, during a hearing in the family-court case, Bernstein asked Plaintiff which law school Plaintiff was attending.

54. On or about **October 23, 2017**, Plaintiff observed Bernstein at St. Thomas University with another judge and STU personnel, including Dean Tamara Lawson and Patricia Moore.

55. On **October 24, 2017**, the day after that meeting, Bernstein restricted Plaintiff's access to the family court during a hearing noticed to resolve competing orders, based on a list of alleged "open motions" presented by Segarra. Although the resulting order purported to limit only certain filings, the Clerk thereafter would not allow Plaintiff to file anything at all.

56. On **May 23, 2018,** during Plaintiff's child-support deposition, Segarra questioned Plaintiff not only about child-support issues but also about Plaintiff's law-school progress, expected graduation date, whether Plaintiff had applied to the Florida Bar, and whether Plaintiff had applied for admission in any other jurisdiction. Plaintiff objected that the questioning extended beyond proper child-support discovery.

57. By **September 25, 2018**, Bernstein spoke in open court in a manner reflecting knowledge of Plaintiff's academic and bar-admission status that Plaintiff had provided in the **May 23, 2018** deposition and had not otherwise provided directly to Bernstein.

58. On **October 2, 2018**, Bernstein questioned Plaintiff about Plaintiff's law-school status and time remaining before completion and stated that Plaintiff had claimed to be a lawyer or admitted to practice. Plaintiff stated that Plaintiff was not licensed and had not claimed to be licensed.

59. During that same **October 2, 2018** hearing, Segarra escalated the issue into contempt and unauthorized-practice themes and urged punitive action against Plaintiff.

60. Plaintiff alleges that, by this period, Bernstein and Segarra had developed and were using themes concerning Plaintiff's supposed dishonesty, misuse of legal status, and interference with judicial process that were later reflected in Bernstein's recusal materials and then used in the STU disciplinary process.

61. On **January 29, 2019**, Bernstein signed an order granting disqualification/recusal. At the recusal hearing, Bernstein stated on the record, "I have drafted an order granting disqualification which I am now signing in your presence," and, after signing the recusal order, further stated that he was no longer the judge in the case and could not sign Plaintiff's counsel's motion to withdraw.

62. On **January 31, 2019**, two days after recusal, Bernstein sent a letter and his recusal order to STU Dean Tamara Lawson on official Eleventh Judicial Circuit letterhead and with his official signature block. In that letter, Bernstein wrote that he felt compelled to bring to STU's attention a matter concerning Plaintiff, identified Plaintiff as a litigant in his family-court division, and enclosed the recusal materials.

63. On **February 7, 2019**, STU initiated an Honor Council proceeding against Plaintiff based on allegations contained in Bernstein's recusal materials and, before any Honor Council finding, suspended Plaintiff and instructed Plaintiff to amend his Florida Bar application.

64. On **February 8, 2019**, Plaintiff submitted a written objection to the Honor Council members, Dean Lawson, and Professor Silver, stating that the allegations in the recusal order were being treated as true, objecting that the school and Plaintiff's career were being used as a tool of retaliation, and requesting to be informed who had provided the information to the school.

65. On **February 21, 2019**, Plaintiff requested the complaint and the name of the accuser so that Plaintiff could better prepare for the hearing. Professor Silver responded that he had received from the Dean a written statement referencing alleged conduct based on Judge Bernstein's **January 29, 2019** order, but he did not identify the accuser.

66. Between **January 31, 2019** and **February 26, 2019**, STU also received family-court filings supplied by Hernandez's counsel. In a **February 26, 2019** email to Honor Council participants, Professor Silver wrote that "Mr. Manuel Segarra, the opposing counsel in that case, provided me with numerous filings."

67. On **February 25, 2019**, Associate Dean Moore authored a "Highly Confidential Memorandum" attaching Bernstein's letter and recusal order and including internal evaluative comments regarding Plaintiff.

68. The Honor Council process proceeded using materials not disclosed to Plaintiff before the hearing, including Bernstein's letter, the recusal order, the filings supplied by Segarra, and the internal memorandum.

69. On **May 17, 2019**, STU issued a letter stating that Plaintiff's expulsion was final.

70. The timing, sequence, and interdependent use of Bernstein's post-recusal communication, STU's immediate disciplinary response, and Segarra's separate supply of family-court filings support a reasonable inference that Bernstein and STU reached an understanding to use family-court accusations and materials to bring about adverse disciplinary action against Plaintiff.

71. Plaintiff further alleges that Bernstein and STU did not act through isolated or accidental events. Bernstein used his judicial office to transmit accusations and recusal materials to Plaintiff's

law school, while STU used those materials, together with filings separately supplied by Segarra, to initiate and carry through the Honor Council process that culminated in Plaintiff's expulsion.

## § 6.    FEDERAL COUNTS

### COUNT 1: 42 U.S.C. § 1983 – FIRST AMENDMENT RETALIATORY CONSPIRACY / JOINT ACTION

### (Against Hernandez, Segarra, and Martinez)

72.    Plaintiff incorporates paragraphs 1 through 30.

73.    The First Amendment protects the right to petition the government for redress of grievances, including by filing and pursuing civil litigation, and protects speech on matters of public concern, including alleged corruption in the judicial system.

74.    Plaintiff engaged in protected activity by filing motions, objections, civil actions, and federal litigation challenging alleged misconduct, lack of jurisdiction, abuse of process, and corruption in the family-court proceedings, including the federal actions filed on October 8, 2021 and **May 4, 2023**, and by publicly criticizing corruption and misconduct in the family-court system.

75.    Hernandez, Segarra, and Martinez knew of Plaintiff's protected activity, including Plaintiff's prior litigation and public criticism. Hernandez, Segarra, and Martinez were also aware of the **May 4, 2023** federal action, and the complaint alleges earlier knowledge through the prior proceedings, filings, and interactions described above.

76.    Plaintiff alleges that Bernstein, Del Rey, Multack, Segarra, Hernandez, and later cooperating participants, including Martinez, participated in a continuing retaliatory conspiracy directed at Plaintiff in response to Plaintiff's protected activity, as shown by, among other things, Bernstein's inquiry into Plaintiff's law-school status on **August 1, 2017**, Bernstein's meeting with STU personnel on **October 23, 2017**, the filing restriction imposed on **October 24, 2017**, Segarra's law-school and graduation-related deposition questions on **May 23, 2018**, Bernstein's later statements reflecting knowledge of that information, Bernstein's **January 31, 2019** transmission of recusal materials to STU, the **July 5, 2022** and **July 11, 2022** Multack proceedings concerning Plaintiff's filing access, and the **January 12, 2023** hearing in which the court directed opposing counsel to submit a proposed order.

77. Plaintiff further alleges that the conspiracy was initiated, advanced, or facilitated through the participation of state actors, including Bernstein, Del Rey, and Multack, and through recurring procedural methods reflected in the facts alleged above, including hearings noticed for one issue but used to address another, proposed orders prepared through Hernandez's counsel, including Segarra, and filing restrictions enforced in practice as a bar to Plaintiff's access to the court.

78. Plaintiff pleads pre–**July 22, 2024** facts in this Count only as evidence of the existence, formation, participants, motive, mechanism, and continuity of the retaliatory conspiracy, and not as standalone bases for federal recovery.

79. The later overt acts were not independent private disputes. They were the means by which private co-conspirators continued carrying out the same retaliation after state actors had already created, preserved, or maintained the filing restrictions, proposed-order practice, and related procedural barriers described above, including the preserved filing restrictions, the **July 11, 2022** narrowing of filing access, and the **January 12, 2023** proposed-order sequence, all of which materially impaired Plaintiff's practical ability to obtain prompt judicial relief.

80. On **July 23, 2024**, one day after dismissal of Plaintiff's federal action, Hernandez recorded the **March 13, 2023** judgment in the Miami-Dade County Official Records. Plaintiff alleges that this was a post-dismissal overt act in furtherance of the conspiracy because it followed immediately after dismissal of the federal action and occurred in a setting where Plaintiff's ability to obtain prompt judicial relief remained materially impaired by the filing restrictions and related barriers described above.

81. Before the operative order underlying that judgment was entered, counsel associated with Segarra's firm was directed to submit a proposed order, and a written order was thereafter prepared and entered. Based on those facts, Plaintiff alleges that Segarra participated in the preparation, approval, timing, or use of the order and the later recordation.

82. In **June 2025**, during Plaintiff's timesharing period, Hernandez and Martinez removed the children from the United States to the Bahamas without a court order and after Plaintiff had withdrawn any prior consent and objected to the travel, despite Plaintiff's notice that the governing orders required either Plaintiff's written consent or a court order for such travel.

83. The close temporal proximity between the **July 22, 2024** dismissal and the **July 23, 2024** recordation supports a reasonable inference that the recordation was undertaken in retaliation for Plaintiff's protected activity.

84. The timing and circumstances of the **June 2025** travel, including Plaintiff's prior objection, the use of an earlier email as purported consent after withdrawal, the Port Canaveral departure rather than a Miami departure, and Martinez's participation in defending the travel, support a reasonable inference that the travel was undertaken in retaliation for Plaintiff's protected activity.

85. Plaintiff further alleges that Hernandez, Segarra, and Martinez acted with knowledge that Plaintiff's practical ability to obtain prompt judicial relief had been materially impaired by the filing restrictions and related barriers preserved through prior court orders and practices, including Del Rey's refusal to lift the restrictions, Multack's **July 11, 2022** narrowing of filing access after the **July 5, 2022** hearing, and the continued rejection or limitation of Plaintiff's filings described above.

86. The post–**July 22, 2024** overt acts described above would deter a person of ordinary firmness from continuing to engage in protected petitioning activity and public criticism.

87. As a direct result of those post–**July 22, 2024** overt acts in furtherance of the conspiracy, Plaintiff suffered new injury, including encumbrance of property interests, interference with parental rights, economic harm, emotional distress, and chilling of continued protected activity.

88. Plaintiff seeks relief on this Count only for the post–**July 22, 2024** overt acts and resulting injuries described above.

**WHEREFORE**, Plaintiff demands judgment against Hernandez, Segarra, and Martinez for compensatory damages, punitive damages where permitted by law, costs, attorney's fees where authorized by law, and such other relief as the Court deems just and proper.

## COUNT 2: 42 U.S.C. § 1983 – FIRST AMENDMENT RETALIATION
### (Against Hernandez and Segarra)

89. Plaintiff incorporates paragraphs 1, 2, and 18 through 30 only.

90.     Plaintiff engaged in protected activity, including the federal action filed on May 4, 2023, prior civil actions and court filings challenging misconduct, lack of jurisdiction, abuse of process, and corruption in the family-court proceedings, and public criticism of corruption and misconduct in the family-court system.

91.     Hernandez and Segarra knew of that protected activity and were aware of the May 4, 2023 federal action, as well as Plaintiff's prior litigation and objections arising from the same family-court proceedings.

92.     On **July 23, 2024**, one day after dismissal of Plaintiff's federal action, Hernandez recorded the **March 13, 2023** judgment in the Miami-Dade County Official Records.

93.     Before the operative order underlying that judgment was entered, counsel associated with Segarra's firm was directed to submit a proposed order, and a written order was thereafter prepared and entered. Plaintiff alleges that Segarra participated in the preparation, approval, timing, or use of the order and the later recordation.

94.     The close temporal proximity between the **July 22, 2024** dismissal and the **July 23, 2024** recordation, together with Hernandez's and Segarra's knowledge of Plaintiff's protected activity, the fact that the **March 13, 2023** judgment had not been recorded during the period immediately following its entry, and their knowledge that Plaintiff's practical ability to obtain prompt judicial relief remained materially impaired by preserved filing barriers, support a reasonable inference that the recordation was undertaken in retaliation for Plaintiff's protected activity.

95.     The July 23, 2024 recordation imposed concrete pressure on Plaintiff's property interests by encumbering those interests after dismissal of Plaintiff's federal action and would deter a person of ordinary firmness from continuing to engage in protected petitioning activity.

96.     As a direct result of the **July 23, 2024** recordation, Plaintiff suffered encumbrance of property interests, economic harm, and chilling of continued protected activity.

**WHEREFORE**, Plaintiff demands judgment against Hernandez and Segarra for compensatory damages, punitive damages where permitted by law, costs, attorney's fees where authorized by law, and such other relief as the Court deems just and proper.

### COUNT 3: 42 U.S.C. § 1983 – FIRST AMENDMENT RETALIATION

**(Against Defendants Hernandez and Martinez)**

97.    Plaintiff incorporates paragraphs 28 through 30 only.

98.    Plaintiff further alleges that Plaintiff engaged in protected activity by filing prior civil actions and federal litigation, including the federal action filed on **May 4, 2023,** challenging misconduct, lack of jurisdiction, abuse of process, and corruption in the family-court proceedings, and by publicly criticizing corruption and misconduct in the Miami-Dade family-court system. Plaintiff further alleges that Defendants Hernandez and Martinez knew of that protected activity.

99.    In **June 2025,** during Plaintiff's timesharing period, Hernandez and Martinez removed the children from the United States to the Bahamas without a court order and after Plaintiff had withdrawn any prior consent and objected to the travel.

100.    Hernandez and Martinez proceeded despite Plaintiff's notice that existing orders required either Plaintiff's written consent or a court order for international travel. They later relied on Plaintiff's earlier email as purported consent notwithstanding Plaintiff's subsequent objection, and Martinez later defended the travel on that basis.

101.    Plaintiff alleges that the **June 2025** travel was undertaken in retaliation for Plaintiff's protected activity and as a continuation of the retaliatory conduct described above, as shown by Plaintiff's prior objection, Plaintiff's withdrawal of any earlier consent, Defendants' reliance on an earlier email as purported consent after that withdrawal, the Port Canaveral departure, and the fact that the travel occurred at the next practical opportunity Defendants Hernandez and Martinez had to retaliate against Plaintiff through Plaintiff's parental rights after the family case had already closed.

102.    Plaintiff further alleges that the lapse of time between the **July 23, 2024** recordation and the **June 2025** travel does not defeat the retaliatory inference because the travel occurred at the next practical opportunity Defendants Hernandez and Martinez had to retaliate against Plaintiff through Plaintiff's parental rights after the family case had already closed, after the prior recordation had already been carried out, and during the next vacation period in which such interference could occur.

103.    Plaintiff further alleges that Hernandez and Martinez acted with knowledge that Plaintiff's practical ability to obtain prompt judicial relief remained materially impaired by the filing restrictions and related barriers preserved through prior court orders and practices, including

the refusal to remove those restrictions and the later narrowing of filing access described above. Plaintiff further alleges that Hernandez and Martinez undertook the **June 2025** travel in reliance on those preserved barriers and in circumstances where they understood timely judicial intervention would be more difficult for Plaintiff to obtain.

104. The timing and circumstances of the **June 2025** travel, including Plaintiff's prior objection, the use of an earlier email as purported consent after withdrawal, and Martinez's participation in defending the travel, support a reasonable inference that the travel was undertaken in retaliation for Plaintiff's protected activity.

105. As a direct result of that conduct, Plaintiff suffered interference with parental rights, emotional distress, and chilling of continued protected activity.

**WHEREFORE**, Plaintiff demands judgment against Hernandez and Martinez for compensatory damages, punitive damages where permitted by law, costs, attorney's fees where authorized by law, and such other relief as the Court deems just and proper.

## § 7.    STATE COUNTS

### COUNT 4: BREACH OF IMPLIED-IN-FACT AGREEMENT
(AGAINST DEFENDANT ST. THOMAS UNIVERSITY, INC. ("STU"))

106. Plaintiff realleges and incorporates by reference **Section 5(C) Facts Relevant to Count 4**, and no other factual allegations into this Count.

107. As of **January 31, 2019**, Plaintiff was enrolled at STU. Plaintiff's tuition and fees had been paid through federal student loans, and Plaintiff was nearing completion of his Juris Doctor degree and Tax Law Certificate. Plaintiff's enrollment, matriculation, payment of tuition and fees, and STU's provision of instruction, academic credit, and degree candidacy gave rise to an implied-in-fact agreement.

108. Under that implied-in-fact agreement, STU agreed to administer disciplinary proceedings in a manner consistent with its published Honor Code and procedures, including the provisions identified in **Section 5(C)**.

109. The Honor Code provided in **§ 3.02(A)** that the Associate Dean for Academic Affairs "shall be the chairperson," yet STU assigned Professor Jay Silver to act as the "Hearing Officer" in Plaintiff's case while Patricia Moore was the Associate Dean for Academic Affairs.

110.    Plaintiff performed his obligations under the implied-in-fact agreement by paying tuition and fees, completing coursework, and completing required pro bono hours, which STU later confirmed had been on file since **2018**.

111.    STU breached the implied-in-fact agreement by failing to apply its published disciplinary rules and procedures in Plaintiff's case, including by:

A) suspending Plaintiff before any Honor Council finding;

B) failing to provide Plaintiff the written complaint after request and failing to identify the initiating source of the accusations before the hearing;

C) excluding Plaintiff from live witness testimony and failing to provide a summary of that testimony beforehand;

D) failing to disclose before the hearing that Bernstein's letter and recusal materials were the initiating basis of the accusations used in the disciplinary process;

E) receiving and using family-court filings supplied by Hernandez's counsel without disclosing those materials to Plaintiff before the hearing;

F) relying on Moore's undisclosed "Highly Confidential Memorandum" and related materials;

G) deactivating Plaintiff's access and removing Plaintiff's pro bono hours during the disciplinary process;

H) conducting an appeal in which no documentary evidence was discussed and Plaintiff was questioned about the matter rather than being provided a review of the materials underlying the disciplinary determination; and

I) refusing to reopen the proceedings after Plaintiff discovered the previously undisclosed materials.

112.    As a direct and proximate result of STU's breach, Plaintiff suffered damages, including loss of continued enrollment, delay in degree completion, additional loan-related harm, impairment of professional and licensing prospects, lost earnings, and other consequential damages to be proven at trial with reasonable certainty.

113.    Plaintiff further alleges continuing harm from STU's maintenance of the disciplinary and expulsion records and from the risk that those records may continue to be relied upon or disseminated.

114.    Plaintiff lacks an adequate remedy at law to address the continuing and prospective harms caused by STU's maintenance of those disciplinary and expulsion records.

**WHEREFORE**, Plaintiff demands judgment against Defendant STU for compensatory damages, declaratory relief, and permanent injunctive relief requiring STU to expunge the expulsion and disciplinary findings from Plaintiff's records, plus costs, interest as allowed by law, and such other relief as the Court deems just and proper.

## COUNT 5: TORTIOUS INTERFERENCE WITH CONTRACT
### (Against Scott Bernstein)

115.    Plaintiff realleges and incorporates by reference **Section 5(D) Facts Relevant to Count 5** and no other factual allegations into this Count.

116.    At all times material, Plaintiff had an existing contractual relationship with St. Thomas University, Inc. ("STU"), arising from Plaintiff's enrollment, payment of tuition and fees, continued degree candidacy, and expected completion of Plaintiff's Juris Doctor degree and Tax Law Certificate.

117.    Defendant Bernstein was not a party to that relationship.

118.    On **August 1, 2017**, during a proceeding in the family-court case, Bernstein asked Plaintiff which law school Plaintiff was attending. On **October 23, 2017**, Plaintiff observed Bernstein at STU with another judge and STU personnel, including Dean Tamara Lawson and Patricia Moore.

119.    By **September 25, 2018**, Bernstein spoke in open court in a manner reflecting knowledge of Plaintiff's academic and bar-admission status that Plaintiff had provided in the **May 23, 2018** deposition and had not otherwise provided directly to Bernstein.

120.    On **January 29, 2019**, Bernstein signed an order granting disqualification/recusal and stated on the record that he was no longer the judge in the case.

121.    On **January 31, 2019**, two days after recusal, Bernstein sent a letter and the recusal order to STU Dean Tamara Lawson on official Eleventh Judicial Circuit letterhead and with his

official signature block. In that letter, Bernstein identified Plaintiff as a litigant in his division, stated that he felt compelled to bring a matter concerning Plaintiff to STU's attention, and enclosed the recusal materials.

122. Bernstein knew, or reasonably should have known, that sending those materials to Plaintiff's law school would interfere with Plaintiff's educational relationship with STU and would foreseeably trigger adverse academic and disciplinary consequences because Bernstein had previously inquired into Plaintiff's law-school status, had been observed at STU with STU personnel on **October 23, 2017**, and then transmitted the materials on official judicial letterhead on **January 31, 2019** directly to the officials who initiated the disciplinary process.

123. STU, in fact, used Bernstein's communication and recusal materials in the Honor Council process against Plaintiff. On **February 7, 2019**, STU initiated Honor Council proceedings against Plaintiff based on Bernstein's recusal materials and, before any Honor Council finding, suspended Plaintiff and instructed Plaintiff to amend Plaintiff's Florida Bar application. On **May 17, 2019**, STU issued a letter stating that Plaintiff's expulsion was final.

124. Bernstein's **January 31, 2019** communication to STU was intentional and unjustified because, two days earlier, Bernstein had recused himself and stated on the record that he was no longer the judge in the family case, yet he nevertheless used official judicial letterhead and his judicial office to transmit accusations and recusal materials to Plaintiff's law school.

125. As a direct and proximate result of Bernstein's interference, Plaintiff suffered expulsion from STU, loss of continued enrollment, loss of degree completion and certification opportunities, impairment of licensing and professional prospects, reputational harm, emotional distress, and other damages to be proven at trial.

126. Because Bernstein's conduct was intentional, malicious, and carried out in conscious or reckless disregard of Plaintiff's rights, punitive damages are recoverable to the extent permitted by law.

**WHEREFORE**, Plaintiff demands judgment against Defendant Scott Bernstein, in his individual capacity, for compensatory damages, punitive damages where permitted by law, costs, interest as allowed by law, and such other relief as the Court deems just and proper.

## COUNT 6: CIVIL CONSPIRACY

**(Against St. Thomas University Inc ("STU") and Scott Bernstein)**

127.     Plaintiff realleges and incorporates by reference **Section 5(E) Facts Relevant to Count 6**, and no other allegations, as if fully set forth herein.

128.     At all material times, Plaintiff had an existing relationship with STU arising from Plaintiff's enrollment, payment of tuition and fees, continued degree candidacy, and expected completion of Plaintiff's Juris Doctor degree and Tax Law Certificate.

129.     Plaintiff alleges that Bernstein and STU reached an agreement, understanding, or meeting of the minds to use Bernstein's post-recusal accusations and related family-court materials to initiate and carry forward disciplinary proceedings against Plaintiff, resulting in Plaintiff's suspension and expulsion from STU.

130.     Plaintiff alleges that Defendants pursued that objective through unlawful means, including Bernstein's post-recusal transmission of accusations and recusal materials to STU, STU's use of undisclosed materials, STU's failure to identify the initiating source of the accusations before the hearing, exclusion of Plaintiff from live witness testimony, withholding of materials used against Plaintiff before adjudication, and reliance on family-court filings separately supplied by Hernandez's counsel.

131.     In furtherance of the conspiracy, Bernstein committed overt acts by transmitting to STU on or about **January 31, 2019**, after recusal and after stating on the record that he was no longer the judge in the family case, an extrajudicial letter on official judicial letterhead identifying Plaintiff and enclosing recusal materials containing accusations concerning Plaintiff.

132.     In furtherance of the conspiracy, STU committed overt acts, including:

A) initiating an Honor Council proceeding and imposing interim suspension and related limitations before any Honor Council finding of guilt;

B) after Plaintiff requested the complaint and the name of the accuser, failing to provide the complaint and failing to identify the initiating source of the accusations before the hearing;

C) excluding Plaintiff from the room during the testimony of the only live witness and not providing a summary beforehand;

D) circulating and/or relying upon a "Highly Confidential Memorandum" and related attachments and internal evaluative comments without providing them to Plaintiff before the hearing;

E) receiving and using family-court filings supplied by Hernandez's counsel in the Honor Council process;

F) restricting Plaintiff's access, including ID, gate, and network access, while the disciplinary process was pending; and

G) issuing and maintaining a final expulsion decision based on the foregoing process.

133.    The foregoing facts support a reasonable inference of a meeting of the minds between Bernstein and STU. Those facts include Bernstein's inquiry into Plaintiff's law-school status on **August 1, 2017**, Plaintiff's observation of Bernstein with STU personnel including Dean Lawson and Patricia Moore on or about **October 23, 2017**, the filing restriction imposed the following day, Bernstein's later use of themes concerning Plaintiff's academic and professional status, Bernstein's post-recusal transmission of official accusations and recusal materials to STU, STU's immediate use of those materials to initiate discipline, and STU's simultaneous use of family-court filings separately supplied by Segarra.

134.    Plaintiff alleges that Bernstein and STU did not act through isolated or accidental events. Their acts were interdependent and operated together to bring about Plaintiff's suspension, expulsion, and termination of Plaintiff's relationship with STU.

135.    As a direct and proximate result of Defendants' conspiracy and overt acts in furtherance of it, Plaintiff suffered damages including loss of continued enrollment, loss of degree completion and certification opportunities, impairment of licensing and professional prospects, reputational harm, emotional distress, and other damages to be proven at trial.

136.    Defendants are jointly and severally liable for the damages caused by the conspiracy, and because Defendants' conduct was intentional, malicious, and carried out in conscious or reckless disregard of Plaintiff's rights, punitive damages are recoverable to the extent permitted by law.

**WHEREFORE**, Plaintiff demands judgment against Defendants STU and Scott Bernstein, jointly and severally, for compensatory damages, punitive damages to the extent

permitted by law, costs, pre-judgment and post-judgment interest as allowed by law, and such other relief as the Court deems just and proper.

## § 8.   DAMAGES

137.    Plaintiff seeks compensatory damages in an amount to be proven at trial.

138.    Although this Complaint includes factual allegations spanning from **2015** to the present for context, motive, conspiracy-formation, and course-of-conduct purposes, Plaintiff seeks compensatory and punitive damages on the federal causes of action only for operative acts occurring after the **July 22, 2024** dismissal of the prior federal action, Case No. **23-cv-21663**. This limitation does not apply to Plaintiff's state-law causes of action, including the St. Thomas University-related claims, which are asserted here based on the injuries and conduct alleged in those counts.

139.    Plaintiff also seeks punitive damages where permitted by law, prejudgment and post-judgment interest where permitted by law, costs, attorney's fees where authorized by law, declaratory and injunctive relief where authorized by law, and such other relief as may be available under the specific causes of action alleged herein.

## § 9.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment and grant relief as follows:

### COUNT 1

140.    Compensatory damages; punitive damages to the extent permitted by law; prejudgment and post-judgment interest to the extent permitted by law; costs; attorney's fees under **42 U.S.C. § 1988** to the extent permitted by law; and such other relief as the Court deems just and proper.

### COUNT 2

141.    Compensatory damages; punitive damages to the extent permitted by law; prejudgment and post-judgment interest to the extent permitted by law; costs; attorney's fees under **42 U.S.C. § 1988** to the extent permitted by law; and such other relief as the Court deems just and proper.

## COUNT 3

142.　　　Compensatory damages; punitive damages to the extent permitted by law; prejudgment and post-judgment interest to the extent permitted by law; costs; attorney's fees under **42 U.S.C. § 1988** to the extent permitted by law; and such other relief as the Court deems just and proper.

## COUNT 4

143.　　　Compensatory damages; declaratory relief; permanent injunctive relief requiring STU to expunge the Honor Council findings and expulsion decision from Plaintiff's records; costs; prejudgment and post-judgment interest to the extent permitted by law; and such other relief as the Court deems just and proper.

## COUNT 5

144.　　　Compensatory damages; punitive damages to the extent permitted by law; prejudgment and post-judgment interest to the extent permitted by law; costs; and such other relief as the Court deems just and proper.

## COUNT 6

145.　　　Compensatory damages; punitive damages to the extent permitted by law; prejudgment and post-judgment interest to the extent permitted by law; costs; and such other relief as the Court deems just and proper.

### § 10.　JURY DEMAND

A) Plaintiff demands trial by jury on all claims so triable.

Respectfully submitted,

Dated: April 9, 2026

FRANK E. POLO, SR.
Plaintiff, Pro Se
1475 SW 8th St Apt 411,
Miami, FL. 33135
Telephone: 305-901-3360
Email: Frank.Polo@msn.com