# UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

(Miami Civil Division)

FILED BY_ MCO _D.C.

MAY 0 6 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

|  |  |  |
|---|---|---|
| **FRANK POLO** | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | **CASE NO:**___25-cv-26058___/ |
| | ) | |
| **SCOTT MARCUS BERNSTEIN;** | ) | |
| **MANUEL A. SEGARRA, III;** | ) | |
| **ST. THOMAS UNIVERSITY, INC.;** | ) | |
| **MERLIN HERNANDEZ; and** | ) | |
| **RANDOLPH MARTINEZ** | ) | |
| | ) | |
| Defendants, | | |
| _____/ | | |

## PLAINTIFF'S RENEWED MOTION UNDER RULES 54(b) AND 15(a)(2) FOR RECONSIDERATION OF NON-FINAL ORDERS AND FOR LEAVE TO FILE PROPOSED SECOND AMENDED COMPLAINT

1. PLAINTIFF, FRANK E. POLO, SR., respectfully files this Renewed Motion under Federal Rules of Civil Procedure 54(b) and 15(a)(2) for reconsideration of the Court's non-final orders denying leave to amend and denying reconsideration, and for leave to file the proposed Second Amended Complaint attached as Exhibit 1.

2. No final judgment has been entered. The orders denying leave to amend and denying reconsideration are non-final orders subject to revision before final judgment under Rule 54(b).

3. PLAINTIFF does not seek to relitigate old matters. PLAINTIFF seeks reconsideration and leave to amend because the Court denied amendment as futile after concluding that it "cannot conceive of any possible basis" on which the proposed § 1983 claims could be stated.

4. That specific futility rationale was first announced in the order denying leave to amend. PLAINTIFF could not have responded to that specific ruling before the Court entered it.

*Case No. 25-cv-26058*

5. Although PLAINTIFF submitted a proposed Second Amended Complaint with his original motion for leave to amend, that motion could only state generally that amendment was not futile on its face. It could not respond to the Court's later conclusion that no possible § 1983 theory could be pleaded because that conclusion had not yet been made.

6. The corrected proposed Second Amended Complaint attached as Exhibit 1 now directly responds to the Court's stated concerns by pleading state action, identifying the First Amendment right at issue, limiting federal damages to post–**July 22, 2024** conduct, separating factual sections by claim, narrowing incorporation by count, and identifying the specific conduct attributed to each defendant.

7. Reconsideration is warranted to prevent manifest injustice because leave to amend was denied as futile even though the corrected proposed pleading demonstrates that amendment is not futile.

## LEGAL STANDARD

8. Rule 54(b) provides that any order adjudicating fewer than all claims or rights and liabilities of all parties "may be revised at any time" before entry of final judgment.

9. Rule 15(a)(2) provides that leave to amend should be freely given when justice so requires.

10. In Foman v. Davis, 371 U.S. 178, 182 (1962), the Supreme Court held that leave to amend may be denied for reasons such as undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, or futility, but that leave should otherwise be freely granted.

11. The Eleventh Circuit has similarly held that "unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." Thomas v. Town of Davie, 847 F.2d 771, 773 (11th Cir. 1988).

12. The relevant issue here is futility. The corrected proposed Second Amended Complaint shows that amendment is not futile because it pleads the specific facts the Court found missing, including state action, deprivation of a First Amendment right, post–**July 22, 2024** operative conduct, causation, and damages limited to post-dismissal acts.

13. Reconsideration is also appropriate to correct clear error or prevent manifest injustice. The Court denied reconsideration on the ground that PLAINTIFF raised the same arguments or arguments that could have been raised earlier. Respectfully, PLAINTIFF could not have addressed the Court's specific futility rationale before the Court announced it

## PLAINTIFF COULD NOT HAVE ADDRESSED THE COURT'S SPECIFIC FUTILITY RATIONALE BEFORE IT WAS ANNOUNCED

14. The Court denied leave to amend, in part, by finding that amendment would be futile because the Court could not conceive of any possible basis on which the Second Amended Complaint could state a § 1983 claim.

15. That futility determination your Honor made, was first made in the order denying leave to amend dated April 16, 2026. *See* ECF: 37.

16. PLAINTIFF's prior motion for leave to amend did not have the benefit of your Honor's futility analysis. It sought leave to file a proposed Second Amended Complaint and stated generally that amendment was not futile on its face.

17. PLAINTIFF's reconsideration motion responded to the Court's newly stated futility rationale by explaining how the newly corrected pleading cured the defects identified by the Court.

18. The reconsideration motion therefore was not merely an attempt to relitigate old matters. It addressed the Court's intervening futility ruling and submitted a corrected proposed pleading directed to the Court's stated concerns.

19. Denying amendment as futile, and then denying reconsideration because PLAINTIFF supposedly could have addressed futility earlier, creates manifest injustice because PLAINTIFF could not respond to this Judge's specific futility reasoning before the Court issued it.

### PRIOR AMENDMENT HISTORY IN SEPARATE LITIGATION SHOULD NOT CONTROL THE RULE 15 ANALYSIS IN THIS CASE

20. To the extent the Court considers PLAINTIFF's amendment history, PLAINTIFF respectfully submits that amendment opportunities in prior litigation should not be treated as repeated failure to cure deficiencies in this action.

21. This case is based on new post–**July 22, 2024** operative facts, including HERNANDEZ's **July 23, 2024** recordation of the **March 13, 2023** judgment and the **June 2025** Bahamas travel involving HERNANDEZ and MARTINEZ.

22. Those post-dismissal acts did not exist as operative federal damages claims in the prior action.

23. The corrected proposed Second Amended Complaint pleads those post–**July 22, 2024** acts as the operative federal damages claims and uses pre–**July 22, 2024** facts only for limited background purposes, including state action, motive, knowledge, mechanism, continuity, and same-nucleus purposes.

24. This action therefore stands on its own operative facts, defendants, and legal theories.

25. Under Foman, "repeated failure to cure deficiencies" may justify denial of leave only where the plaintiff has repeatedly failed to cure deficiencies in the pleading at issue. It should not be applied mechanically based on prior litigation involving different operative facts, particularly where the corrected proposed pleading addresses newly identified deficiencies in this case.

## THE CORRECTED PROPOSED SECOND AMENDED COMPLAINT CURES THE SHOTGUN-PLEADING CONCERN

26. The Court previously concluded that the proposed pleading was "replete with conclusory, vague, and immaterial allegations" and merged "seemingly unrelated events."

27. The corrected proposed Second Amended Complaint cures that concern.

28. First, the corrected proposed complaint separates the factual allegations into discrete sections. Section 5(A) contains pre–**July 22, 2024** background facts relevant only to state action, knowledge, motive, and course of conduct. Section 5(B) contains post–**July 22, 2024** operative facts relevant to the federal counts. Section 5(C) contains facts relevant to the STU implied-in-fact agreement claim. Section 5(D) contains facts relevant to tortious interference against BERNSTEIN. Section 5(E) contains facts relevant to civil conspiracy against STU and BERNSTEIN.

29. Second, each federal count identifies the defendants against whom it is brought and the specific post–**July 22, 2024** conduct at issue. Count I is brought against HERNANDEZ, SEGARRA, and MARTINEZ for the continuing retaliatory conspiracy/joint action. Count II is brought against HERNANDEZ and SEGARRA for the **July 23, 2024** recordation. Count III is brought against HERNANDEZ and MARTINEZ for the **June 2025** Bahamas travel.

30. Third, each federal count incorporates only the specific factual allegations needed for that claim. Count I incorporates Section 5(A) only for limited background purposes and Section 5(B)

as the post-dismissal operative facts. Count II incorporates only the specific paragraphs relevant to PLAINTIFF's protected activity, HERNANDEZ's and SEGARRA's knowledge, the filing restrictions, the judgment-creation process, the prior federal litigation, and the **July 23, 2024** recordation. Count III incorporates only the specific paragraphs relevant to PLAINTIFF's protected activity, HERNANDEZ's and MARTINEZ's knowledge, the preserved filing restrictions and related barriers to prompt judicial relief, the **June 2025** Bahamas travel, and the continued practical effect of the filing restrictions.

31. Fourth, the corrected proposed complaint identifies what each federal defendant allegedly did. HERNANDEZ allegedly recorded the **March 13, 2023** judgment on **July 23, 2024** and participated in the **June 2025** Bahamas travel. MARTINEZ allegedly participated in the **June 2025** Bahamas travel and asserted that an earlier email authorized the travel despite PLAINTIFF's later withdrawal of consent. SEGARRA allegedly served as HERNANDEZ's attorney/legal advisor during the creation and recordation of the judgment and during the Bahamas travel dispute, and PLAINTIFF alleges on information and belief that SEGARRA advised, assisted, authorized, ratified, or supported the post-dismissal use of the judgment, family-court record, filing restrictions, and disputed consent position.

32. Because the corrected proposed pleading separates facts by claim, limits incorporation, identifies defendants by count, and identifies each defendant's conduct, it gives defendants adequate notice of the claims against them and the grounds upon which each claim rests.

## THE EVENTS ARE NOT "SEEMINGLY UNRELATED" IN THE CORRECTED PROPOSED COMPLAINT

33. The Court previously characterized the allegations as attempting to connect the family-law case to "other seemingly unrelated incidents."

Case No. 25-cv-26058

34. The corrected proposed complaint clarifies the connection. The family-court events are not pleaded as standalone federal damages claims. They are pleaded to show state action, motive, knowledge, retaliatory objective, continuity, and the mechanisms allegedly used after dismissal of PLAINTIFF's prior federal action.

35. The operative federal damages acts are narrow: HERNANDEZ's **July 23, 2024** recordation of the **March 13, 2023** judgment and the **June 2025** Bahamas travel involving HERNANDEZ and MARTINEZ.

36. The pre–**July 22, 2024** events explain why those later acts are plausibly retaliatory and why the private defendants' conduct is alleged to be fairly attributable to the State.

37. The corrected proposed complaint pleads a chronology showing how the post-dismissal acts arose from the same family-court proceedings, state-created mechanisms, court records, filing restrictions, proposed-order practice, fee-related proceedings, and continued use of those mechanisms after dismissal of PLAINTIFF's federal action.

38. The corrected proposed complaint therefore does not merge unrelated events. It separates background facts from operative post-dismissal facts and expressly limits federal damages to injuries caused by post–**July 22, 2024** conduct.

## THE CORRECTED PROPOSED COMPLAINT PLEADS STATE ACTION

39. The Court found no indication that HERNANDEZ, SEGARRA, or MARTINEZ were anything other than private actors.

40. The corrected proposed complaint cures that defect by expressly pleading state action through joint action, conspiracy, and use of state-created mechanisms.

41. PLAINTIFF does not allege that private parties automatically become state actors merely by litigating in state court. Instead, PLAINTIFF alleges that the private defendants acted jointly with state actors and used state-created mechanisms as instruments of retaliation.

42. Count I pleads that HERNANDEZ's conduct is fairly attributable to the State because she participated in, benefited from, and later used state-created mechanisms, including family-court orders, the **March 13, 2023** judgment, filing restrictions, and the family-court record.

43. Count I pleads that SEGARRA's conduct is fairly attributable to the State because he participated in litigation conduct, proposed-order practice, the judgment-creation process, the fee-related record, and record-building activity, and remained HERNANDEZ's attorney/legal advisor during the post–**July 22, 2024** use of those mechanisms.

44. Count I pleads that MARTINEZ's conduct is fairly attributable to the State because he acted with HERNANDEZ after **July 22, 2024** to exploit the practical effect of state-created filing restrictions and related barriers limiting PLAINTIFF's ability to obtain immediate court intervention.

45. The corrected proposed complaint further clarifies that the state-created filing restrictions remained operative after the family-court case had closed. Specifically, the proposed pleading alleges that in **January 2026** and **February 2026**, the Clerk continued rejecting PLAINTIFF's attempted filings seeking judicial relief based on the filing-restriction order.

46. That allegation supports the plausibility of PLAINTIFF's theory that the filing restrictions were not merely historical background, but continuing state-created barriers that materially impaired PLAINTIFF's practical ability to obtain prompt judicial relief when HERNANDEZ and MARTINEZ proceeded with the **June 2025** Bahamas travel.

Case No. 25-cv-26058

47. The corrected proposed complaint does not ask this Court to review, reverse, modify, or declare invalid any state-court filing-restriction order. PLAINTIFF alleges only that the continued practical effect of the filing restrictions is relevant to show state-created barriers, defendants' knowledge of those barriers, and why HERNANDEZ's and MARTINEZ's post–**July 22, 2024** conduct impaired PLAINTIFF's practical ability to obtain prompt judicial relief.

48. At the pleading stage, the question is plausibility, not proof. The corrected proposed complaint pleads the state-action theory with specific dates, orders, filings, restrictions, recordation, post-dismissal conduct, and continuing legal-advisor relationships

## THE CORRECTED PROPOSED COMPLAINT PLEADS DEPRIVATION OF A FEDERAL RIGHT

49. The Court also found that recording a judgment and taking children on vacation did not deprive PLAINTIFF of a federal right.

50. The corrected proposed complaint clarifies that the federal right at issue is the First Amendment right to petition and speak without retaliation.

51. A First Amendment retaliation claim requires protected activity, adverse action that would deter a person of ordinary firmness, and a causal connection between the protected activity and the adverse action.

52. The corrected proposed complaint pleads protected activity, including motions, subpoenas, objections, lawsuits, federal actions, and public criticism concerning alleged misconduct, filing restrictions, lack of jurisdiction, abuse of process, and corruption in the family-court proceedings.

53. The corrected proposed complaint pleads adverse action. The **July 23, 2024** recordation allegedly impaired PLAINTIFF's property interests, imposed financial pressure, and would deter a person of ordinary firmness from continuing protected litigation and speech. The **June 2025**

Bahamas travel allegedly interfered with PLAINTIFF's parental and timesharing rights, occurred after PLAINTIFF withdrew consent, and was undertaken while filing restrictions remained in effect.

54. The corrected proposed complaint pleads causation through timing, knowledge, sequence, and use of state-created mechanisms. HERNANDEZ recorded the judgment one day after dismissal of PLAINTIFF's federal action, even though the judgment had not been recorded immediately after entry. SEGARRA was HERNANDEZ's attorney/legal advisor during the creation and recordation of the judgment. HERNANDEZ and MARTINEZ proceeded with the **June 2025** travel despite PLAINTIFF's objection and withdrawal of consent, while the filing restrictions remained in effect.

55. Those allegations plausibly plead retaliation for protected First Amendment activity.

## THE STATE-LAW CLAIMS SHOULD REMAIN UNDER SUPPLEMENTAL JURISDICTION

56. The Court previously concluded that it would not have jurisdiction over the state-law claims because there was no valid federal claim.

57. If reconsideration is granted as to Counts I through III, the basis for declining supplemental jurisdiction no longer applies.

58. The corrected proposed complaint also clarifies that the state-law claims arise from the same common nucleus of operative facts. The STU-related claims arise from the same alleged family-court materials, judicial communications, record-building conduct, and disciplinary consequences that form part of the background and course of conduct pleaded in support of the federal claims.

59. Supplemental jurisdiction is therefore proper under 28 U.S.C. § 1367(a).

*Case No. 25-cv-26058*

## AMENDMENT IS NOT FUTILE AND DENIAL OF LEAVE WOULD RESULT IN MANIFEST INJUSTICE

60. The corrected proposed Second Amended Complaint pleads: (a) specific protected activity; (b) each federal defendant's knowledge of that protected activity; (c) post–**July 22, 2024** operative acts; (d) state action through joint action, conspiracy, and use of state-created mechanisms; (e) adverse action sufficient to deter a person of ordinary firmness; (f) causation through timing, sequence, knowledge, and continuity; and (g) damages limited to post–**July 22, 2024** injuries.

61. Because the corrected proposed complaint cures the defects identified by the Court, amendment is not futile under Rule 15(a)(2), Foman, and Thomas.

62. Manifest injustice would result if leave to amend is denied as futile while PLAINTIFF is not allowed to file a corrected proposed pleading showing that amendment is not futile.

63. This is particularly true because the Court's own cited authority recognizes that a pro se civil-rights plaintiff should be allowed to amend defective pleadings unless amendment would be futile.

64. Here, the corrected proposed Second Amended Complaint demonstrates that amendment is not futile.

65. PLAINTIFF therefore respectfully requests reconsideration of the non-final orders and leave to file the proposed Second Amended Complaint attached as Exhibit 1.

## REQUESTED RELIEF

66. WHEREFORE, PLAINTIFF respectfully requests that the Court:

A) reconsider its non-final orders denying leave to amend and denying reconsideration;

B) vacate or revise those non-final orders to the extent they deny leave to amend;

*Case No. 25-cv-26058*

C)  grant PLAINTIFF leave under Rule 15(a)(2) to file the proposed Second Amended

Complaint attached as Exhibit 1;

D)  direct the Clerk to accept the proposed Second Amended Complaint for filing; and

E)  grant any other relief the Court deems just and proper.

Dated: **May 6, 2026**

Respectfully submitted,

By: _____
Frank E. Polo, Sr.
Plaintiff, pro se

## § 1.CERTIFICATE OF SERVICE

67. I hereby certify that a true and correct copy of the foregoing was filed with the Clerk of

Court on this 6th day of May, 2026, and that a copy of the foregoing will be served on all counsel

of record via CM/ECF.

By: _____
Frank E. Polo, Sr.
Plaintiff, pro se

## § 2.CERTIFICATE OF CONFERRAL (S.D. FLA. L.R. 7.1(A)(3))

Pursuant to Local Rule 7.1(a)(3), PLAINTIFF certifies that on **May 5, 2026**, PLAINTIFF

attempted to confer with counsel for Defendant MANUEL A. SEGARRA, III, the only Defendant

who has appeared through counsel and accepted waiver of service to date, regarding the relief

requested in this Motion. PLAINTIFF attempted conferral by:

[✓] email

*Case No. 25-cv-26058*

[✓] telephone

[✗] both email and telephone

As of the time of filing this Motion:

[  ] PLAINTIFF received a response from counsel.

[✓] PLAINTIFF did not receive a response from counsel.

Counsel's position, if any:

[  ] Defendant SEGARRA opposes the Motion.

[  ] Defendant SEGARRA does not oppose the Motion.

[  ] Counsel stated she could not take a position before reviewing the Motion.

By: _____
Frank E. Polo, Sr.
Plaintiff, pro se
1475 SW 8th St. Apt. 411
Miami, FL. 33135
Phone: 305-901-3360
E-Mail: Frank.Polo@msn.com

Case No. 25-cv-26058

**EXHIBIT 1**

# UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| FRANK E. POLO, SR.       PLAINTIFF, | ) |
|         v. | )   CASE NO: <u>25-CV-26058</u> |
| SCOTT MARCUS BERNSTEIN; | ) |
| MANUEL SEGARRA, III; | ) |
| ST. THOMAS UNIVERSITY, INC.; | )   **JURY TRIAL IS DEMANDED** |
| MERLIN HERNANDEZ; | ) |
| RANDOLPH MARTINEZ; | ) |
| | ) |

Defendants,

## § 1.   SECOND AMENDED COMPLAINT

1. PLAINTIFF, FRANK E. POLO SR., files this complaint against the defendants MANUEL A. SEGARRA, III; SCOTT MARCUS BERNSTEIN (in his Personal Capacity); ST. THOMAS UNIVERSITY, INC.; MERLIN HERNANDEZ, and RANDOLPH MARTINEZ (the "DEFENDANTS" in this complaint), and alleges as follows:

## § 2.   JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over PLAINTIFF'S federal claims under **28 U.S.C. § 1331** because PLAINTIFF asserts claims under **42 U.S.C. § 1983** and the **First Amendment.**

3. This Court may grant declaratory and equitable relief as authorized by law, including under **28 U.S.C. §§ 2201–2202** and **42 U.S.C. § 1983**.

4. PLAINTIFF'S state-law claims arise from the same common nucleus of operative facts as PLAINTIFF'S federal claims. The state-law claims are not isolated disputes. They arise from the same continuing sequence of events involving Judge BERNSTEIN's **October 23, 2017** visit to STU, the **October 24, 2017** filing restriction that limited PLAINTIFF'S access to the family-court docket without prior notice or a hearing noticed for that purpose, the development and use of family-court materials during the period PLAINTIFF'S court access was restricted, BERNSTEIN's **January 31, 2019** transmission of family-court materials to STU, STU's receipt of additional family-court filings from HERNANDEZ's counsel, and STU's use of those materials in disciplinary proceedings against PLAINTIFF.

5. The same actors, timing, communications, family-court materials, retaliatory use of judicial records, and resulting injuries support PLAINTIFF'S federal claims and

PLAINTIFF'S related state-law claims. Accordingly, the state-law claims form part of the same case or controversy under 28 U.S.C. § 1367(a).

6. Venue is proper in the Southern District of Florida under **28 U.S.C. § 1391(b)** because a substantial part of the events or omissions giving rise to the claims occurred in Miami-Dade County, Florida, and at least one Defendant resides in or is located in this District for venue purposes.

7. All acts and omissions alleged occurred within this District unless otherwise stated.

8. To the extent PLAINTIFF asserts any state-law claims previously dismissed without prejudice in the prior federal action, PLAINTIFF pleads tolling under **28 U.S.C. § 1367(d)** during the pendency of that action and for the applicable post-dismissal period.

9. PLAINTIFF does not reassert any federal claims previously dismissed with prejudice in the prior action and pleads pre-dismissal conduct only as background facts and factual predicates where relevant.

## § 3.  PARTIES

10. PLAINTIFF **FRANK E. POLO, SR.** is a resident of Miami-Dade County, Florida.

11. Defendant **ST. THOMAS UNIVERSITY, INC. ("STU")** is a Florida not-for-profit corporation with its principal place of business in Miami-Dade County, Florida.

12. Defendant **SCOTT MARCUS BERNSTEIN ("Bernstein"),** a judicial officer assigned to the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, is sued in his individual capacity.

13. Defendant **MERLIN HERNANDEZ ("Hernandez")** is, upon information and belief, a resident of Miami-Dade County, Florida.

14. Defendant **RANDOLPH MARTINEZ ("Martinez")** is, upon information and belief, a resident of Miami-Dade County, Florida.

15. Defendant **MANUEL A. SEGARRA, III ("Segarra")** is, upon information and belief, a Florida resident, an attorney conducting business in Miami-Dade County, Florida, and the owner of Segarra & Associates, P.A. Segarra, personally and/or through Segarra & Associates, P.A., represented Defendant Hernandez in the family-court litigation and related matters and

participated in communications, filings, litigation strategy, enforcement-related conduct, and other actions directed at PLAINTIFF.

## § 4.   INTRODUCTION SUMMARY OF THE CASE

16. This action arises from two related groups of claims.

17. First, PLAINTIFF alleges that, after engaging in protected activity through litigation, court filings, and public criticism concerning misconduct in the family-court proceedings, Defendants Hernandez, Segarra, and Martinez participated in retaliatory post-dismissal conduct directed at PLAINTIFF'S property and parental rights.

18. The principal post-dismissal federal acts alleged are the **July 23, 2024** recordation of a state-court judgment one day after dismissal of PLAINTIFF'S prior federal action and the **June 2025** removal of the children from the United States to the Bahamas without PLAINTIFF'S valid consent and without court authorization.

19. Second, PLAINTIFF alleges that Defendant Scott Bernstein and Defendant St. Thomas University, Inc. ("STU") participated in conduct that led to PLAINTIFF'S suspension and expulsion from law school, including Bernstein's **January 31, 2019** post-recusal communication to STU, STU's use of undisclosed materials, and departures from STU's published Honor Code procedures.

20. Counts I through III are federal claims arising from the post–**July 22, 2024** conduct alleged against Hernandez, Segarra, and Martinez. Counts IV through VI are state-law claims against STU and Bernstein for breach of implied-in-fact agreement, tortious interference, and civil conspiracy.

21. PLAINTIFF pleads pre–**July 22, 2024** facts in the federal counts only as evidence of formation, motive, knowledge, mechanism, and continuity of the alleged retaliatory conspiracy, and not as standalone bases for federal recovery.

22. PLAINTIFF seeks federal recovery only for post–**July 22, 2024** operative acts and resulting injuries, and seeks relief on the STU-related state-law claims for the injuries and continuing harms alleged in those counts.

## § 5.  STATEMENT OF FACTS

## SECTION 5(A)

### PRE–JULY 22, 2024 BACKGROUND FACTS RELEVANT TO STATE ACTION, KNOWLEDGE, MOTIVE, AND COURSE OF CONDUCT

23. On **May 29, 2013**, JUDGE BERNSTEIN appointed LILLIANA REAL as guardian ad litem ("GAL") in the family-court case.

24. On or about **February 26, 2014**, the GAL filed her report on the date of the final hearing.

25. JUDGE BERNSTEIN denied PLAINTIFF'S request for a continuance.

26. On **August 7, 2014**, JUDGE BERNSTEIN entered the Final Judgment.

27. In the **August 7, 2014** Final Judgment, JUDGE BERNSTEIN stated that PLAINTIFF had signed an agreement providing HERNANDEZ majority time-sharing.

28. PLAINTIFF disputed that statement and continued litigating the time-sharing issue after entry of the Final Judgment.

29. In the **August 7, 2014** Final Judgment, JUDGE BERNSTEIN awarded HERNANDEZ child support based on overnight calculations that PLAINTIFF disputed.

30. JUDGE BERNSTEIN later admitted on the record that the overnight calculations were incorrect.

31. On **August 29, 2014**, PLAINTIFF filed a motion to amend the Final Judgment and correct the child-support calculations.

32. On **October 6, 2014**, PLAINTIFF served a subpoena seeking evidence concerning the GAL's statements, conduct, and communications.

33. On **May 26, 2015**, PLAINTIFF filed a motion to vacate the Final Judgment, alleging fraud on the court.

34. PLAINTIFF began law school on or about **August 1, 2015**.

35. Before HERNANDEZ brought the case back to court in **November 2015**, PLAINTIFF informed HERNANDEZ's prior counsel, in HERNANDEZ's presence, that PLAINTIFF was starting law school. HERNANDEZ and her prior counsel were therefore aware of PLAINTIFF's law-school status before the **November 2015** proceedings.

36. On **November 23, 2015**, HERNANDEZ brought the case back to court regarding interpretation of a vacation provision in the parties' agreement.

37. During the **November 23, 2015** hearing, PLAINTIFF informed JUDGE BERNSTEIN that PLAINTIFF was relying on the disputed provision to take the children on vacation.

38. JUDGE BERNSTEIN did not rule on the disputed provision before PLAINTIFF left on vacation with the children.

39. After PLAINTIFF returned from vacation, JUDGE BERNSTEIN found PLAINTIFF in contempt.

40. The contempt finding occurred by telephone.

41. PLAINTIFF was not given a hearing to present evidence before the contempt finding.

42. The contempt finding occurred while PLAINTIFF was enrolled in law school.

43. On **February 13, 2017**, PLAINTIFF filed a lawsuit against HERNANDEZ, MARTINEZ, and JUDGE BERNSTEIN's appointed GAL.

44. On **March 22, 2017**, SEGARRA filed a motion alleging that PLAINTIFF had attempted to unilaterally register the children in school and had attempted to use his mother's zip code for school registration.

45. PLAINTIFF disputed the allegations in SEGARRA's **March 22, 2017** motion.

46. On **April 3, 2017**, JUDGE BERNSTEIN entered an order referring the parties to parenting coordination.

47. The **April 3, 2017** order was entered without a hearing and without service on PLAINTIFF.

48. On **August 1, 2017**, during a hearing noticed by SEGARRA, JUDGE BERNSTEIN addressed parenting coordination.

49. During the **August 1, 2017** hearing, JUDGE BERNSTEIN ordered PLAINTIFF to pay 100% of the parenting-coordinator fees.

50. At the time of the **August 1, 2017** hearing, the record showed that PLAINTIFF was indigent, and JUDGE JUDITH KREEGER had previously found PLAINTIFF indigent.

51. During the **August 1, 2017** hearing, JUDGE BERNSTEIN asked PLAINTIFF which law school he was attending.

52. On **October 23, 2017**, PLAINTIFF observed JUDGE BERNSTEIN at ST. THOMAS UNIVERSITY ("STU") with another judge and STU personnel, including DEAN TAMARA LAWSON and PATRICIA MOORE.

53. On **October 24, 2017**, a hearing noticed by SEGARRA as a hearing to resolve competing orders was held in the family-court case.

54. During the **October 24, 2017** hearing, the court addressed PLAINTIFF'S access to the family-court docket, although the hearing had not been noticed for that purpose.

55. During the **October 24, 2017** hearing, SEGARRA produced a list of PLAINTIFF'S motions but did not provide the list to PLAINTIFF before the hearing.

56. The motions on SEGARRA's list had already been resolved, related to prior litigation, or were no longer pending.

57. After the **October 24, 2017** hearing, PLAINTIFF was barred from filing documents without review by a Florida Bar attorney.

58. On **May 23, 2018**, SEGARRA deposed PLAINTIFF and questioned him about his law-school status, coursework, anticipated graduation date, Florida Bar application, and possible admission in other jurisdictions.

59. PLAINTIFF stated during the **May 23, 2018** deposition that he had not yet graduated and did not provide a definite completion date.

60. On or about **June 6, 2018**, PLAINTIFF registered to run for State Representative.

61. During the campaign and afterward, PLAINTIFF engaged in political speech concerning alleged judicial corruption in the Miami-Dade Family Court system.

62. On **September 25, 2018**, during a court proceeding, JUDGE BERNSTEIN made statements reflecting knowledge of PLAINTIFF'S academic status.

63. On **October 2, 2018**, JUDGE BERNSTEIN entered another order further restricting PLAINTIFF'S ability to file documents and restricting PLAINTIFF'S communications with the judicial assistant.

64. During the **October 2, 2018** proceeding, JUDGE BERNSTEIN accused PLAINTIFF of dishonest conduct by claiming that PLAINTIFF had represented himself as an attorney in court.

65. PLAINTIFF disputed JUDGE BERNSTEIN's accusation that PLAINTIFF had represented himself as an attorney.

66. During the same **October 2, 2018** proceeding, SEGARRA raised contempt and unauthorized-practice-of-law allegations.

67. During the same **October 2, 2018** proceeding, SEGARRA urged JUDGE BERNSTEIN to put PLAINTIFF in jail.

68. During the same **October 2, 2018** proceeding, JUDGE BERNSTEIN questioned PLAINTIFF about his law-school status and anticipated completion date.

69. On **January 29, 2019**, JUDGE BERNSTEIN signed an order granting recusal.

70. During the **January 29, 2019** proceeding, JUDGE BERNSTEIN stated on the record that he had prepared the recusal order and would no longer preside over the case.

71. On **January 31, 2019**, two days after recusal, JUDGE BERNSTEIN transmitted a letter and the recusal order to STU DEAN TAMARA LAWSON on official court letterhead.

72. In the **January 31, 2019** letter, JUDGE BERNSTEIN identified PLAINTIFF as a litigant in his division, stated that he was bringing a matter concerning PLAINTIFF to STU's attention, and enclosed the recusal order.

73. On **February 7, 2019**, STU initiated an Honor Council proceeding against PLAINTIFF based on JUDGE BERNSTEIN's recusal materials.

74. Before any Honor Council determination, STU suspended PLAINTIFF and instructed PLAINTIFF to amend his Florida Bar application.

75. Between **January 31, 2019**, and **February 26, 2019**, STU received additional family-court filings from HERNANDEZ's counsel.

76. PROFESSOR SILVER later acknowledged in writing that MANUEL SEGARRA had provided multiple filings from the family case.

77. On **April 15, 2021**, PLAINTIFF asked JUDGE DEL REY to remove the filing restrictions previously imposed in the family-court case.

78. JUDGE DEL REY declined to remove the filing restrictions and stated that the restrictions were the law of the case.

79. A written order prepared by SEGARRA reflected only a limited filing restriction.

80. The Clerk later refused to accept PLAINTIFF'S attempted filings.

81. On **October 8, 2021**, PLAINTIFF filed a federal action seeking declaratory and injunctive relief against JUDGE BERNSTEIN and JUDGE DEL REY.

82. JUDGE DEL REY later recused, and JUDGE MULTACK was assigned to the family-court case.

83. On **July 5, 2022**, PLAINTIFF informed JUDGE MULTACK that the prior filing restrictions had been imposed without notice or a hearing and that the Clerk was not accepting his filings.

84. During the **July 5, 2022** hearing, JUDGE MULTACK stated on the record that PLAINTIFF could proceed by motion practice and that PLAINTIFF'S filings would be accepted.

85. During the **July 5, 2022** hearing, JUDGE MULTACK asked about JUDGE DEL REY's recusal.

86. PLAINTIFF informed JUDGE MULTACK that PLAINTIFF had a case against JUDGE BERNSTEIN and that PLAINTIFF alleged SEGARRA was involved in the challenged course of conduct.

87. On **July 11, 2022**, JUDGE MULTACK entered a written order limiting PLAINTIFF'S filings to matters related to HERNANDEZ's pending motion for attorney's fees.

88. On **January 12, 2023**, PLAINTIFF objected that the court lacked jurisdiction to adjudicate HERNANDEZ's fee motion because final judgment had already been entered, jurisdiction had not been reserved, and the rehearing period had expired.

89. During the **January 12, 2023** hearing, PLAINTIFF declined to participate further and exited the hearing.

90. The court proceeded, denied PLAINTIFF'S motion to dismiss, denied PLAINTIFF'S exceptions, and directed opposing counsel to submit a proposed order.

91. On **March 13, 2023**, a state-court judgment was entered against PLAINTIFF.

92. SEGARRA was HERNANDEZ's legal advisor during the proceedings that resulted in the **March 13, 2023** judgment.

93. Before entry of the operative order underlying the **March 13, 2023** judgment, the court directed counsel associated with SEGARRA's firm to submit a proposed order.

94. On **May 4, 2023**, PLAINTIFF filed a federal action against, among others, JUDGE BERNSTEIN, JUDGE DEL REY, JUDGE MULTACK, HERNANDEZ, SEGARRA, and MARTINEZ.

95. HERNANDEZ, SEGARRA, and MARTINEZ were served with or otherwise became aware of the **May 4, 2023** federal action.

96. On **January 27, 2024**, PLAINTIFF recorded a Lady Bird deed reflecting a remainder interest in real property.

97. The **March 13, 2023** judgment was not recorded during the period immediately following its entry.

## SECTION 5(B)
## POST–JULY 22, 2024 OPERATIVE FACTS RELEVANT TO FEDERAL COUNTS

98. On **July 22, 2024**, PLAINTIFF'S federal action was dismissed.

99. On **July 23, 2024**, one day after dismissal of PLAINTIFF'S federal action, HERNANDEZ recorded the **March 13, 2023** judgment in the Miami-Dade County Official Records.

100.     SEGARRA was HERNANDEZ's legal advisor when HERNANDEZ recorded the **March 13, 2023** judgment on **July 23, 2024**.

101.     At the time of the **July 23, 2024** recordation, PLAINTIFF had previously challenged actions taken by HERNANDEZ and SEGARRA in state and federal court proceedings.

102. In **June 2025**, during PLAINTIFF'S timesharing period, HERNANDEZ and MARTINEZ traveled with the children from the United States to the Bahamas without a court order.

103. Before the **June 2025** travel, PLAINTIFF informed HERNANDEZ that his planned vacation dates of **June 10, 2025** through **June 17, 2025** conflicted with HERNANDEZ's plans and that any prior consent was withdrawn.

104. PLAINTIFF also informed HERNANDEZ that existing orders required either PLAINTIFF'S written consent or a court order for international travel with the children.

105. HERNANDEZ and MARTINEZ proceeded with the **June 2025** travel without obtaining a court order.

106. The departure occurred from Port Canaveral rather than Miami, where the parties reside.

107. After the departure, PLAINTIFF contacted the cruise line and was informed that an earlier email from PLAINTIFF had been presented as evidence of consent.

108. PLAINTIFF later participated in a call in which MARTINEZ asserted that the earlier email authorized the travel despite PLAINTIFF'S later objection and withdrawal of consent.

109. HERNANDEZ later stated that passports were not required for the travel.

110. At the time of the **June 2025** travel, the filing limitations described above remained in effect.

111. In **January 2026** and **February 2026**, the Clerk continued rejecting PLAINTIFF's attempted filings seeking judicial relief based on the filing-restriction order. PLAINTIFF does not ask this Court to review, reverse, modify, or declare invalid any state-court filing-restriction order; PLAINTIFF alleges these facts only to show that the restrictions remained operative and continued to impair PLAINTIFF's practical ability to obtain prompt judicial relief.

112. SEGARRA was HERNANDEZ's legal advisor during the **June 2025** Bahamas travel dispute.

113. As of the filing of this action, SEGARRA remains HERNANDEZ's legal advisor.

114.     The **July 23, 2024** recordation and the **June 2025** travel occurred after PLAINTIFF had filed prior litigation involving HERNANDEZ, SEGARRA, MARTINEZ, and the state actors identified above.

## SECTION 5(C)   FACTS RELEVANT TO COUNT 4
### (Breach of Implied-In-Fact Agreement Against STU)

115.     On **January 31, 2019**, PLAINTIFF was enrolled at St. Thomas University School of Law. PLAINTIFF'S tuition and fees had been paid through federal student loans, and PLAINTIFF was nearing completion of his Juris Doctor degree and a Tax Law Certificate.

116.     STU's published Honor Code stated that the Council shall not be used to resolve personal conflicts, that the accused has the right to be present during all testimony and to request further questions at the conclusion of testimony, that a finding of guilt requires clear and convincing evidence, and that the Associate Dean for Academic Affairs shall be the chairperson.

117.     At the relevant time, Patricia Moore was the Associate Dean for Academic Affairs.

118.     The Honor Code also stated that a complaint shall consist of a written statement identifying the name of the accused and the nature of the suspected violation; that the Council shall notify the accused of the hearing date and identity of the Hearing Panel; that the chairperson shall review the complaint and determine whether the allegations are acceptable for Council disposition; and that the hearing is inquisitorial, with the Hearing Panel deciding what documentary evidence to request, what witnesses to call, and what questions to present, while the chairperson has final authority over evidentiary and scheduling matters.

119.     On **February 7, 2019**, Dean Tamara Lawson sent PLAINTIFF a letter invoking allegations derived from Judge Bernstein's recusal materials, using those materials as the initiating basis for the disciplinary process, citing Honor Code provisions, and immediately suspending PLAINTIFF from specified Law School activities pending the Honor Council's investigation and hearing.

120.     That letter also instructed PLAINTIFF to amend his Florida Bar application and report the matter to the Florida Bar.

121.     On **February 20, 2019**, Professor Silver sent PLAINTIFF notice of an Honor Code complaint and a hearing set for **February 26, 2019**, and identified himself as the Hearing Officer.

122. On **February 21, 2019**, PLAINTIFF requested the complaint and the name of the accuser so that PLAINTIFF could better prepare for the hearing. In response, Silver stated that he had received from the Dean a written statement referencing alleged conduct based on Judge Bernstein's **January 29, 2019** order, but he did not identify the accuser.

123. At the Honor Council hearing, PLAINTIFF was excluded from the room during the testimony of Professor Juan Carlos Planas, the only live witness presented against PLAINTIFF, and PLAINTIFF was not provided a summary of that testimony before the hearing.

124. Between **January 31, 2019** and **February 26, 2019**, STU received family-court filings supplied by Hernandez's counsel, Manuel Segarra. On **February 25, 2019**, Associate Dean Moore authored a "Highly Confidential Memorandum" to Professor Silver, and STU did not provide that memorandum or its attachments to PLAINTIFF before the hearing.

125. Before the second hearing on or about **March 23, 2019**, STU had deactivated PLAINTIFF'S campus access, removed PLAINTIFF from the security access list, revoked PLAINTIFF'S network access, and removed PLAINTIFF'S pro bono community hours from the system. On **April 22, 2019**, STU confirmed that PLAINTIFF'S pro bono hours had been on file since **2018**.

126. On **April 6, 2019**, Professor Silver informed the PLAINTIFF that the Honor Council had found him guilty of all accusations.

127. On or about **April 16, 2019**, PLAINTIFF appealed. The appeal consisted of an in-person discussion with DEAN LAWSON and DEAN MOORE. During the appeal meeting, DEAN LAWSON and DEAN MOORE did not discuss PLAINTIFF's documentary evidence, did not identify any evidence submitted by PLAINTIFF that they had reviewed, and did not address the factual basis of PLAINTIFF's defenses. Instead, they questioned PLAINTIFF, attempted to have PLAINTIFF admit culpability, and questioned PLAINTIFF about why PLAINTIFF had run for public office.

128. On **May 17, 2019**, STU issued a letter stating that PLAINTIFF's expulsion was final. On **May 20, 2019**, PLAINTIFF discovered for the first time Honor Council materials that had been classified as "Highly Confidential," including JUDGE BERNSTEIN's **January 31, 2019** letter, the **January 29, 2019** recusal order, and MOORE's memorandum. PLAINTIFF requested reconsideration based on those materials, but STU did not reopen the disciplinary proceedings.

## SECTION 5(D)    FACTS RELEVANT TO COUNT 5

### (Tortious Interference Against Bernstein)

129.       On **August 1, 2017**, during a proceeding in the family-court case, Bernstein asked PLAINTIFF which law school PLAINTIFF was attending.

130.       On **October 23, 2017**, PLAINTIFF observed Judge Bernstein at STU with another judge and STU personnel, including Dean Tamara Lawson and Patricia Moore.

131.       On **May 23, 2018**, during PLAINTIFF'S child-support deposition, Defendant Segarra questioned PLAINTIFF not only about child-support issues but also about PLAINTIFF'S law-school progress, expected graduation date, whether PLAINTIFF had applied to the Florida Bar, and whether PLAINTIFF had applied for admission in any other jurisdiction. PLAINTIFF objected that the questioning extended beyond proper child-support discovery.

132.       By **September 25, 2018**, Bernstein spoke in open court in a manner reflecting knowledge of PLAINTIFF'S academic and bar-admission status that PLAINTIFF had provided in the **May 23, 2018** deposition and had not otherwise provided directly to Bernstein.

133.       On **October 2, 2018**, Bernstein questioned PLAINTIFF about PLAINTIFF'S law-school status and time remaining before completion and stated that PLAINTIFF had claimed to be a lawyer or admitted to practice. PLAINTIFF stated that PLAINTIFF was not licensed and had not claimed to be licensed.

134.       On **January 29, 2019**, Bernstein signed an order granting disqualification/recusal. At the recusal hearing, Bernstein stated on the record, "I have drafted an order granting disqualification which I am now signing in your presence," and, after signing the recusal order, further stated that he was no longer the judge in the case and could not sign PLAINTIFF'S counsel's motion to withdraw.

135.       On **January 31, 2019**, two days after recusal, Bernstein sent a letter and his recusal order to STU Dean Tamara Lawson on official Eleventh Judicial Circuit letterhead and with his official signature block. In that letter, Bernstein wrote that he felt compelled to bring to STU's attention a matter concerning PLAINTIFF, identified PLAINTIFF as a litigant in his family-court division, and enclosed the recusal materials.

136.       On **February 7, 2019**, STU initiated an Honor Council proceeding against PLAINTIFF based on allegations contained in Bernstein's recusal materials and, before any Honor

Council finding, suspended PLAINTIFF and instructed PLAINTIFF to amend his Florida Bar application.

137.　　On **May 17, 2019**, STU issued a letter stating that PLAINTIFF'S expulsion was final.

## SECTION 5(E)　　FACTS RELEVANT TO COUNT 6
### (Civil Conspiracy Against STU and Bernstein)

138.　　On **August 1, 2017**, during a hearing in the family-court case, Bernstein asked PLAINTIFF which law school PLAINTIFF was attending.

139.　　On or about **October 23, 2017**, PLAINTIFF observed Bernstein at St. Thomas University with another judge and STU personnel, including Dean Tamara Lawson and Patricia Moore.

140.　　On **October 24, 2017**, the day after that meeting, Bernstein restricted PLAINTIFF'S access to the family court during a hearing noticed to resolve competing orders, based on a list of alleged "open motions" presented by Segarra. Although the resulting order purported to limit only certain filings, the Clerk thereafter would not allow PLAINTIFF to file anything at all.

141.　　On **May 23, 2018**, during PLAINTIFF'S child-support deposition, Segarra questioned PLAINTIFF not only about child-support issues but also about PLAINTIFF'S law-school progress, expected graduation date, whether PLAINTIFF had applied to the Florida Bar, and whether PLAINTIFF had applied for admission in any other jurisdiction. PLAINTIFF objected that the questioning extended beyond proper child-support discovery.

142.　　By **September 25, 2018**, Bernstein spoke in open court in a manner reflecting knowledge of PLAINTIFF'S academic and bar-admission status that PLAINTIFF had provided in the **May 23, 2018** deposition and had not otherwise provided directly to Bernstein.

143.　　On **October 2, 2018**, Bernstein questioned PLAINTIFF about PLAINTIFF'S law-school status and time remaining before completion and stated that PLAINTIFF had claimed to be a lawyer or admitted to practice. PLAINTIFF stated that PLAINTIFF was not licensed and had not claimed to be licensed.

144. During that same **October 2, 2018** hearing, Segarra escalated the issue into contempt and unauthorized-practice themes and urged punitive action against PLAINTIFF.

145. By this period, the family-court record included accusations or themes concerning PLAINTIFF's alleged dishonesty, alleged misuse of legal status, and alleged interference with judicial process. Those themes later appeared in BERNSTEIN's recusal materials and were used in the STU disciplinary process.

146. On **January 29, 2019**, Bernstein signed an order granting disqualification/recusal. At the recusal hearing, Bernstein stated on the record, "I have drafted an order granting disqualification which I am now signing in your presence," and, after signing the recusal order, further stated that he was no longer the judge in the case and could not sign PLAINTIFF'S counsel's motion to withdraw.

147. On **January 31, 2019**, two days after recusal, Bernstein sent a letter and his recusal order to STU Dean Tamara Lawson on official Eleventh Judicial Circuit letterhead and with his official signature block. In that letter, Bernstein wrote that he felt compelled to bring to STU's attention a matter concerning PLAINTIFF, identified PLAINTIFF as a litigant in his family-court division, and enclosed the recusal materials.

148. On **February 7, 2019**, STU initiated an Honor Council proceeding against PLAINTIFF based on allegations contained in Bernstein's recusal materials and, before any Honor Council finding, suspended PLAINTIFF and instructed PLAINTIFF to amend his Florida Bar application.

149. On **February 8, 2019**, PLAINTIFF submitted a written objection to the Honor Council members, Dean Lawson, and Professor Silver, stating that the allegations in the recusal order were being treated as true, objecting that the school and PLAINTIFF'S career were being used as a tool of retaliation, and requesting to be informed who had provided the information to the school.

150. On **February 21, 2019**, PLAINTIFF requested the complaint and the name of the accuser so that PLAINTIFF could better prepare for the hearing. Professor Silver responded that he had received from the Dean a written statement referencing alleged conduct based on Judge Bernstein's **January 29, 2019** order, but he did not identify the accuser.

151.     Between **January 31, 2019** and **February 26, 2019**, STU also received family-court filings supplied by Hernandez's counsel. In a **February 26, 2019** email to Honor Council participants, Professor Silver wrote that "Mr. Manuel Segarra, the opposing counsel in that case, provided me with numerous filings."

152.     On **February 25, 2019**, Associate Dean Moore authored a "Highly Confidential Memorandum" attaching Bernstein's letter and recusal order and including internal evaluative comments regarding PLAINTIFF.

153.     The Honor Council process proceeded using materials not disclosed to PLAINTIFF before the hearing, including Bernstein's letter, the recusal order, the filings supplied by Segarra, and the internal memorandum.

154.     On **May 17, 2019**, STU issued a letter stating that PLAINTIFF'S expulsion was final.

155.     The timing, sequence, and interdependent use of Bernstein's post-recusal communication, STU's immediate disciplinary response, and Segarra's separate supply of family-court filings support a reasonable inference that Bernstein and STU reached an understanding to use family-court accusations and materials to bring about adverse disciplinary action against PLAINTIFF.

156.     PLAINTIFF further alleges that BERNSTEIN and STU did not act through isolated or accidental events. BERNSTEIN used his judicial office to transmit accusations and recusal materials to PLAINTIFF's law school, while STU used those materials, together with filings separately supplied by SEGARRA, to initiate and carry through the Honor Council process that culminated in PLAINTIFF's expulsion.

## § 6.     FEDERAL COUNTS

### COUNT 1: 42 U.S.C. § 1983 – FIRST AMENDMENT RETALIATORY CONSPIRACY / JOINT ACTION

### (Against Hernandez, Segarra, and Martinez)

157.     PLAINTIFF incorporates Section 5(A), the pre–**July 22, 2024** factual allegations, only as background facts establishing protected activity, knowledge, motive, state-action relationship, joint-action relationship, retaliatory objective, continuity, and same nucleus of operative facts. PLAINTIFF does not seek damages in this Count for acts occurring

before **July 22, 2024**, to the extent those acts were dismissed with prejudice in the prior federal action.

158.     PLAINTIFF incorporates Section 5(B), the post–**July 22, 2024** factual allegations, as the operative injury-producing acts for which damages are sought in this Count.

159.     This Count is brought under 42 U.S.C. § 1983 against HERNANDEZ, SEGARRA, and MARTINEZ for First Amendment retaliation, retaliatory conspiracy, and joint action with state actors.

160.     PLAINTIFF engaged in protected First Amendment activity by filing motions, subpoenas, objections, lawsuits, and federal actions challenging family-court orders, filing restrictions, alleged fraud on the court, alleged retaliation, alleged lack of jurisdiction, and alleged judicial misconduct.

161.     PLAINTIFF also engaged in protected political speech by publicly criticizing alleged judicial corruption and misconduct in the Miami-Dade Family Court system.

162.     HERNANDEZ knew of PLAINTIFF'S protected activity because she was PLAINTIFF'S opposing party in the family-court proceedings, benefited from the challenged orders and restrictions, and was named in PLAINTIFF'S federal litigation.

163.     SEGARRA knew of PLAINTIFF'S protected activity because he represented and advised HERNANDEZ in the family-court proceedings, participated in litigation conduct involving the challenged orders and judgment, and was named in PLAINTIFF'S federal litigation.

164.     MARTINEZ knew of PLAINTIFF'S protected activity because he acted with HERNANDEZ after PLAINTIFF had filed the federal action and while the family-court filing restrictions remained in effect.

165.     The facts alleged in Sections 5(A) and 5(B) support a reasonable inference that HERNANDEZ and SEGARRA participated with state actors in a retaliatory course of conduct directed at PLAINTIFF because of PLAINTIFF'S protected petitioning, litigation activity, and political speech.

166. The facts alleged in Sections 5(A) and 5(B) further support a reasonable inference that MARTINEZ joined, ratified, or participated in the retaliatory course of conduct after **July 22, 2024** by acting with HERNANDEZ during the **June 2025** Bahamas travel dispute.

167. HERNANDEZ's conduct is fairly attributable to the State because, as alleged in Sections 5(A) and 5(B), she did not merely benefit from favorable rulings; she invoked, supported, and later used state-created mechanisms, including family-court orders, the March 13, 2023 judgment, filing restrictions, and the family-court record, in a continuing course of conduct with state actors after PLAINTIFF engaged in protected activity.

168. SEGARRA's conduct is fairly attributable to the State because he participated in the litigation conduct, proposed-order process, judgment-creation process, fee-related record, and record-building activity described in Sections 5(A) and 5(B), and and continued advising HERNANDEZ during the post-dismissal recordation and Bahamas travel dispute.

169. MARTINEZ's conduct is fairly attributable to the State because, as alleged in Section 5(B), he acted with HERNANDEZ after July 22, 2024 to exploit the practical effect of state-created filing restrictions and related barriers that remained in effect and limited PLAINTIFF's ability to obtain immediate court intervention.

170. The agreement or meeting of the minds may be inferred from the timing of PLAINTIFF'S protected activity, the repeated use of court-created mechanisms against PLAINTIFF, the involvement of HERNANDEZ and SEGARRA in those proceedings, JUDGE BERNSTEIN's adverse orders and record-building conduct, and the later use of those records in court and non-court proceedings involving PLAINTIFF'S parental, property, educational, and litigation interests.

171. The common retaliatory objective was to punish PLAINTIFF for protected petitioning, litigation activity, and political speech; deter PLAINTIFF from pursuing civil, disciplinary, public, or judicial remedies; burden PLAINTIFF'S parental, property, educational, and litigation interests; and create or use a record against PLAINTIFF.

172. The conspiracy did not end before **July 22, 2024**. HERNANDEZ continued the alleged retaliatory course of conduct by recording the March 13, 2023 judgment on **July 23, 2024**, one day after dismissal of PLAINTIFF'S prior federal action.

173. SEGARRA continued the alleged retaliatory course of conduct by remaining HERNANDEZ's legal advisor during the post-dismissal use of the judgment, family-court record, filing restrictions, and disputed consent position against PLAINTIFF.

174. HERNANDEZ and MARTINEZ further continued the alleged retaliatory course of conduct by proceeding with the **June 2025** Bahamas travel during PLAINTIFF'S timesharing period, without a court order, after PLAINTIFF withdrew any prior consent and objected to the travel.

175. The **July 23, 2024** recordation and the **June 2025** Bahamas travel would deter a person of ordinary firmness from continuing to file lawsuits, seek judicial relief, object to unlawful orders, speak publicly about judicial misconduct, and petition the government for redress.

176. PLAINTIFF'S protected activity was a substantial or motivating factor in HERNANDEZ's **July 23, 2024** recordation of the judgment, HERNANDEZ's and MARTINEZ's **June 2025** Bahamas travel during PLAINTIFF'S timesharing period, and SEGARRA's continued advisory participation in the post-dismissal use of the judgment, family-court record, filing restrictions, and disputed consent position.

177. PLAINTIFF seeks damages in this Count only for injuries caused by acts occurring on or after **July 22, 2024**.

178. As a direct and proximate result of HERNANDEZ's recordation of the judgment, HERNANDEZ's and MARTINEZ's **June 2025** Bahamas travel, and SEGARRA's continued advisory participation in the post-dismissal use of the judgment, family-court record, filing restrictions, and disputed consent position, PLAINTIFF suffered financial harm, impairment of property interests, interference with parental and timesharing rights, emotional distress, costs incurred to respond to the challenged conduct, loss of use and enjoyment of legal rights, and chilling of First Amendment activity.

179. HERNANDEZ, MARTINEZ, and SEGARRA acted intentionally, willfully, maliciously, and with reckless disregard for PLAINTIFF'S federally protected rights.

180. As a result, HERNANDEZ, MARTINEZ, and SEGARRA are liable to PLAINTIFF under 42 U.S.C. § 1983.

**WHEREFORE,** PLAINTIFF respectfully requests that this Court enter judgment in his favor and against HERNANDEZ, MARTINEZ, and SEGARRA, jointly and severally to the extent permitted by law, and award compensatory damages for post–**July 22, 2024** injuries, nominal damages, punitive damages, costs, reasonable attorney's fees under 42 U.S.C. § 1988, interest, and all other relief the Court deems just and proper.

### COUNT 2: 42 U.S.C. § 1983 – FIRST AMENDMENT RETALIATION
### (Against Hernandez and Segarra)

181.       PLAINTIFF incorporates paragraphs 23 through 33, 43 through 45, 53 through 57, and 77 through 97 only. These paragraphs are incorporated only to establish the origin of PLAINTIFF's protected challenges to the family-court record, PLAINTIFF's protected activity, HERNANDEZ's and SEGARRA's knowledge, the filing restrictions, the judgment-creation process, the prior federal litigation, and the circumstances making the **July 23, 2024** recordation plausibly retaliatory. PLAINTIFF does not seek damages in this Count for acts occurring before **July 22, 2024,** to the extent those acts were dismissed with prejudice in the prior federal action.

182.       PLAINTIFF incorporates paragraphs 98 through 101 only as the post–**July 22, 2024** operative facts concerning the **July 23, 2024** recordation of the **March 13, 2023** judgment.

183.       This Count is brought under 42 U.S.C. § 1983 against HERNANDEZ and SEGARRA for First Amendment retaliation arising from the **July 23, 2024** recordation of the March 13, 2023 judgment.

184.       PLAINTIFF engaged in protected First Amendment activity by filing prior civil actions, court papers, objections, and federal litigation challenging misconduct, lack of jurisdiction, abuse of process, filing restrictions, retaliation, and corruption in the family-court proceedings.

185.       HERNANDEZ and SEGARRA knew of PLAINTIFF'S protected activity because HERNANDEZ was a party to the family-court proceedings, SEGARRA represented or advised HERNANDEZ in those proceedings, both were named in PLAINTIFF'S federal litigation, and both were aware of PLAINTIFF'S prior litigation and objections arising from the same proceedings.

186.       HERNANDEZ and SEGARRA acted under color of state law because the July 23, 2024 recordation was not pleaded as ordinary private collection activity, but as the post-dismissal

use of state-created mechanisms allegedly produced or preserved through the joint-action relationship described in Section 5(A), including the March 13, 2023 judgment, fee-related record, proposed-order process, and filing restrictions.

187. On **July 23, 2024**, one day after dismissal of PLAINTIFF'S federal action, HERNANDEZ recorded the March 13, 2023 judgment in the Miami-Dade County Official Records.

188. The March 13, 2023 judgment had not been recorded during the period immediately following its entry.

189. SEGARRA was HERNANDEZ's attorney and legal advisor during the proceedings that resulted in the **March 13, 2023** judgment, when HERNANDEZ recorded that judgment on **July 23, 2024**, and remains HERNANDEZ's attorney and legal advisor as of the filing of this action.

190. Based on SEGARRA's continuing role as HERNANDEZ's attorney and legal advisor during the creation and recordation of the judgment, PLAINTIFF alleges on information and belief that SEGARRA advised, assisted, authorized, ratified, or supported HERNANDEZ's post-dismissal use and recordation of the judgment.

191. The close temporal proximity between the **July 22, 2024** dismissal and the **July 23, 2024** recordation, the prior non-recordation of the judgment, SEGARRA's continuing legal-advisor role, and the preserved filing barriers support a reasonable inference that the recordation was undertaken because of PLAINTIFF'S protected activity.

192. The **July 23, 2024** recordation imposed concrete pressure on PLAINTIFF'S property interests, impaired those interests after dismissal of PLAINTIFF'S federal action, and would deter a person of ordinary firmness from continuing to file lawsuits, object to court misconduct, challenge jurisdictional defects, pursue judicial relief, or publicly criticize corruption and misconduct in the family-court system.

193. PLAINTIFF'S protected activity was a substantial or motivating factor in HERNANDEZ's decision to record the March 13, 2023 judgment and in SEGARRA's advisory participation in, authorization of, ratification of, or support for the post-dismissal recordation of that judgment.

194.    As a direct and proximate result of the **July 23, 2024** recordation, PLAINTIFF suffered encumbrance of property interests, economic harm, impairment of property rights, costs incurred to respond to the recordation, and chilling of continued protected activity.

195.    HERNANDEZ and SEGARRA acted intentionally, willfully, maliciously, and with reckless disregard for PLAINTIFF'S federally protected rights.

196.    HERNANDEZ and SEGARRA are liable to PLAINTIFF under 42 U.S.C. § 1983 for First Amendment retaliation.

**WHEREFORE**, PLAINTIFF demands judgment against HERNANDEZ and SEGARRA for compensatory damages, nominal damages, punitive damages where permitted by law, costs, reasonable attorney's fees under 42 U.S.C. § 1988 where authorized by law, pre-judgment and post-judgment interest, and such other relief as the Court deems just and proper.

### COUNT 3: 42 U.S.C. § 1983 – FIRST AMENDMENT RETALIATION
### (Against Defendants Hernandez and Martinez)

197.    PLAINTIFF incorporates paragraphs 31 through 33, 43, 60 through 61, 77 through 87, and 94 through 95 only. These paragraphs are incorporated only to establish PLAINTIFF's protected activity, HERNANDEZ's and MARTINEZ's knowledge of PLAINTIFF's protected activity, the preserved filing restrictions and related barriers to prompt judicial relief, the prior federal litigation, and the circumstances making the **June 2025** Bahamas travel plausibly retaliatory. PLAINTIFF does not seek damages in this Count for acts occurring before **July 22, 2024**, to the extent those acts were dismissed with prejudice in the prior federal action.

198.    PLAINTIFF incorporates paragraphs 102 through 111 and 114 only as the post– **July 22, 2024** operative facts concerning the **June 2025** Bahamas travel, the continued effect of the filing restrictions on PLAINTIFF'S ability to obtain prompt judicial relief, and the fact that the travel occurred after PLAINTIFF had filed prior litigation involving HERNANDEZ, MARTINEZ, and the state actors identified above.

199.    This Count is brought under 42 U.S.C. § 1983 against HERNANDEZ and MARTINEZ for First Amendment retaliation arising from the **June 2025** international travel during PLAINTIFF'S timesharing period.

200. PLAINTIFF engaged in protected First Amendment activity by filing prior civil actions, court papers, objections, and federal litigation challenging misconduct, lack of jurisdiction, abuse of process, filing restrictions, retaliation, and corruption in the family-court proceedings.

201. PLAINTIFF also engaged in protected political speech by publicly criticizing corruption and misconduct in the Miami-Dade Family Court system.

202. HERNANDEZ knew of PLAINTIFF'S protected activity because she was a party to the family-court proceedings, was named in PLAINTIFF'S federal litigation, and was aware of PLAINTIFF'S prior litigation, objections, and public criticism arising from the same proceedings.

203. MARTINEZ knew of PLAINTIFF'S protected activity because he acted with HERNANDEZ after PLAINTIFF had filed the federal action and while the filing restrictions and related family-court barriers remained in effect.

204. HERNANDEZ and MARTINEZ acted under color of state law because the **June 2025** travel is pleaded as part of the continuing retaliatory course of conduct described in Section 5(A), and because HERNANDEZ and MARTINEZ proceeded while state-created filing restrictions and related barriers remained in effect, limiting PLAINTIFF's practical ability to obtain immediate court intervention after PLAINTIFF withdrew consent and objected to the travel.

205. In **June 2025**, during PLAINTIFF'S timesharing period, HERNANDEZ and MARTINEZ traveled with the children from the United States to the Bahamas without a court order.

206. Before the **June 2025** travel, PLAINTIFF informed HERNANDEZ that PLAINTIFF'S planned vacation dates of **June 10, 2025** through **June 17, 2025** conflicted with HERNANDEZ's plans and that any prior consent was withdrawn.

207. PLAINTIFF also informed HERNANDEZ that existing orders required either PLAINTIFF'S written consent or a court order for international travel with the children.

208. HERNANDEZ and MARTINEZ proceeded with the **June 2025** travel without obtaining a court order.

209. After the departure, PLAINTIFF contacted the cruise line and was informed that an earlier email from PLAINTIFF had been presented as evidence of consent.

210. MARTINEZ later asserted that the earlier email authorized the travel despite PLAINTIFF'S later objection and withdrawal of consent.

211. At the time of the **June 2025** travel, the filing limitations and related barriers described in Section 5(A) remained in effect.

212. The timing and circumstances of the **June 2025** travel support a reasonable inference of retaliation, including PLAINTIFF's prior protected activity, PLAINTIFF's withdrawal of any prior consent, HERNANDEZ's and MARTINEZ's reliance on an earlier email after that withdrawal, the continued filing restrictions, and HERNANDEZ's and MARTINEZ's knowledge that immediate judxicial relief would be more difficult for PLAINTIFF to obtain.

213. The **June 2025** travel would deter a person of ordinary firmness from continuing to file lawsuits, object to court misconduct, challenge jurisdictional defects, pursue judicial relief, or publicly criticize corruption and misconduct in the family-court system.

214. PLAINTIFF'S protected activity was a substantial or motivating factor in HERNANDEZ's and MARTINEZ's decision to proceed with the **June 2025** travel despite PLAINTIFF'S objection, withdrawal of consent, and notice that a court order or written consent was required.

215. As a direct and proximate result of the **June 2025** travel, PLAINTIFF suffered interference with parental and timesharing rights, emotional distress, costs incurred to respond to the travel, loss of use and enjoyment of legal rights, and chilling of continued protected activity.

216. HERNANDEZ and MARTINEZ acted intentionally, willfully, maliciously, and with reckless disregard for PLAINTIFF'S federally protected rights.

217. HERNANDEZ and MARTINEZ are liable to PLAINTIFF under 42 U.S.C. § 1983 for First Amendment retaliation.

**WHEREFORE,** PLAINTIFF demands judgment against HERNANDEZ and MARTINEZ for compensatory damages, nominal damages, punitive damages where permitted by

law, costs, reasonable attorney's fees under 42 U.S.C. § 1988 where authorized by law, pre-judgment and post-judgment interest, and such other relief as the Court deems just and proper.

## § 7. STATE COUNTS

### COUNT 4: BREACH OF IMPLIED-IN-FACT AGREEMENT
(AGAINST DEFENDANT ST. THOMAS UNIVERSITY, INC. ("STU"))

218. PLAINTIFF realleges and incorporates by reference **Section 5(C) Facts Relevant to Count 4**, and no other factual allegations into this Count.

219. As of **January 31, 2019**, PLAINTIFF was enrolled at STU. PLAINTIFF'S tuition and fees had been paid through federal student loans, and PLAINTIFF was nearing completion of his Juris Doctor degree and Tax Law Certificate. PLAINTIFF'S enrollment, matriculation, payment of tuition and fees, and STU's provision of instruction, academic credit, and degree candidacy gave rise to an implied-in-fact agreement.

220. Under that implied-in-fact agreement, STU agreed to administer disciplinary proceedings in a manner consistent with its published Honor Code and procedures, including the provisions identified in **Section 5(C)**.

221. The Honor Code provided in **§ 3.02(A)** that the Associate Dean for Academic Affairs "shall be the chairperson," yet STU assigned Professor Jay Silver to act as the "Hearing Officer" in PLAINTIFF'S case while Patricia Moore was the Associate Dean for Academic Affairs.

222. PLAINTIFF performed his obligations under the implied-in-fact agreement by paying tuition and fees, completing coursework, and completing required pro bono hours, which STU later confirmed had been on file since **2018**.

223. STU breached the implied-in-fact agreement by failing to apply its published disciplinary rules and procedures in PLAINTIFF'S case, including by:

A) suspending PLAINTIFF before any Honor Council finding;

B) failing to provide PLAINTIFF the written complaint after request and failing to identify the initiating source of the accusations before the hearing;

C) excluding PLAINTIFF from live witness testimony and failing to provide a summary of that testimony beforehand;

D) failing to disclose before the hearing that Bernstein's letter and recusal materials were the initiating basis of the accusations used in the disciplinary process;

E) receiving and using family-court filings supplied by Hernandez's counsel without disclosing those materials to PLAINTIFF before the hearing;

F) relying on Moore's undisclosed "Highly Confidential Memorandum" and related materials;

G) deactivating PLAINTIFF'S access and removing PLAINTIFF'S pro bono hours during the disciplinary process;

H) conducting an appeal in which no documentary evidence was discussed and PLAINTIFF was questioned about the matter rather than being provided a review of the materials underlying the disciplinary determination; and

I) refusing to reopen the proceedings after PLAINTIFF discovered the previously undisclosed materials.

224. As a direct and proximate result of STU's breach, PLAINTIFF suffered damages, including loss of continued enrollment, delay in degree completion, additional loan-related harm, impairment of professional and licensing prospects, lost earnings, and other consequential damages to be proven at trial with reasonable certainty.

225. PLAINTIFF further alleges continuing harm from STU's maintenance of the disciplinary and expulsion records and from the risk that those records may continue to be relied upon or disseminated.

226. PLAINTIFF lacks an adequate remedy at law to address the continuing and prospective harms caused by STU's maintenance of those disciplinary and expulsion records.

**WHEREFORE**, PLAINTIFF demands judgment against Defendant STU for compensatory damages, declaratory relief, and permanent injunctive relief requiring STU to expunge the expulsion and disciplinary findings from PLAINTIFF'S records, plus costs, interest as allowed by law, and such other relief as the Court deems just and proper.

## COUNT 5: TORTIOUS INTERFERENCE WITH CONTRACT
### (Against Scott Bernstein)

227. PLAINTIFF realleges and incorporates by reference **Section 5(D) Facts Relevant to Count 5** and no other factual allegations into this Count.

228. At all times material, PLAINTIFF had an existing contractual relationship with St. Thomas University, Inc. ("STU"), arising from PLAINTIFF'S enrollment, payment of tuition and fees, continued degree candidacy, and expected completion of PLAINTIFF'S Juris Doctor degree and Tax Law Certificate.

229. Defendant Bernstein was not a party to that relationship.

230. On **August 1, 2017**, during a proceeding in the family-court case, Bernstein asked PLAINTIFF which law school PLAINTIFF was attending. On **October 23, 2017**, PLAINTIFF observed Bernstein at STU with another judge and STU personnel, including Dean Tamara Lawson and Patricia Moore.

231. By **September 25, 2018**, Bernstein spoke in open court in a manner reflecting knowledge of PLAINTIFF'S academic and bar-admission status that PLAINTIFF had provided in the **May 23, 2018** deposition and had not otherwise provided directly to Bernstein.

232. On **January 29, 2019**, Bernstein signed an order granting disqualification/recusal and stated on the record that he was no longer the judge in the case.

233. On **January 31, 2019**, two days after recusal, Bernstein sent a letter and the recusal order to STU Dean Tamara Lawson on official Eleventh Judicial Circuit letterhead and with his official signature block. In that letter, Bernstein identified PLAINTIFF as a litigant in his division, stated that he felt compelled to bring a matter concerning PLAINTIFF to STU's attention, and enclosed the recusal materials.

234. Bernstein knew, or reasonably should have known, that sending those materials to PLAINTIFF'S law school would interfere with PLAINTIFF'S educational relationship with STU and would foreseeably trigger adverse academic and disciplinary consequences because Bernstein had previously inquired into PLAINTIFF'S law-school status, had been observed at STU with STU personnel on **October 23, 2017**, and then transmitted the materials on official judicial letterhead on **January 31, 2019** directly to the officials who initiated the disciplinary process.

235. STU, in fact, used Bernstein's communication and recusal materials in the Honor Council process against PLAINTIFF. On **February 7, 2019**, STU initiated Honor Council

proceedings against PLAINTIFF based on Bernstein's recusal materials and, before any Honor Council finding, suspended PLAINTIFF and instructed PLAINTIFF to amend PLAINTIFF'S Florida Bar application. On **May 17, 2019**, STU issued a letter stating that PLAINTIFF'S expulsion was final.

236. Bernstein's **January 31, 2019** communication to STU was intentional and unjustified because, two days earlier, Bernstein had recused himself and stated on the record that he was no longer the judge in the family case, yet he nevertheless used official judicial letterhead and his judicial office to transmit accusations and recusal materials to PLAINTIFF'S law school.

237. As a direct and proximate result of Bernstein's interference, PLAINTIFF suffered expulsion from STU, loss of continued enrollment, loss of degree completion and certification opportunities, impairment of licensing and professional prospects, reputational harm, emotional distress, and other damages to be proven at trial.

238. Because Bernstein's conduct was intentional, malicious, and carried out in conscious or reckless disregard of PLAINTIFF'S rights, punitive damages are recoverable to the extent permitted by law.

**WHEREFORE**, PLAINTIFF demands judgment against Defendant Scott Bernstein, in his individual capacity, for compensatory damages, punitive damages where permitted by law, costs, interest as allowed by law, and such other relief as the Court deems just and proper.

## COUNT 6: CIVIL CONSPIRACY
### (Against St. Thomas University Inc ("STU") and Scott Bernstein)

239. PLAINTIFF realleges and incorporates by reference **Section 5(E) Facts Relevant to Count 6**, and no other allegations, as if fully set forth herein.

240. At all material times, PLAINTIFF had an existing relationship with STU arising from PLAINTIFF'S enrollment, payment of tuition and fees, continued degree candidacy, and expected completion of PLAINTIFF'S Juris Doctor degree and Tax Law Certificate.

241. PLAINTIFF alleges that Bernstein and STU reached an agreement, understanding, or meeting of the minds to use Bernstein's post-recusal accusations and related family-court materials to initiate and carry forward disciplinary proceedings against PLAINTIFF, resulting in PLAINTIFF'S suspension and expulsion from STU.

242.     PLAINTIFF alleges that Defendants pursued that objective through unlawful means, including Bernstein's post-recusal transmission of accusations and recusal materials to STU, STU's use of undisclosed materials, STU's failure to identify the initiating source of the accusations before the hearing, exclusion of PLAINTIFF from live witness testimony, withholding of materials used against PLAINTIFF before adjudication, and reliance on family-court filings separately supplied by Hernandez's counsel.

243.     In furtherance of the conspiracy, Bernstein committed overt acts by transmitting to STU on or about **January 31, 2019**, after recusal and after stating on the record that he was no longer the judge in the family case, an extrajudicial letter on official judicial letterhead identifying PLAINTIFF and enclosing recusal materials containing accusations concerning PLAINTIFF.

244.     In furtherance of the conspiracy, STU committed overt acts, including:

A) initiating an Honor Council proceeding and imposing interim suspension and related limitations before any Honor Council finding of guilt;

B) after PLAINTIFF requested the complaint and the name of the accuser, failing to provide the complaint and failing to identify the initiating source of the accusations before the hearing;

C) excluding PLAINTIFF from the room during the testimony of the only live witness and not providing a summary beforehand;

D) circulating and/or relying upon a "Highly Confidential Memorandum" and related attachments and internal evaluative comments without providing them to PLAINTIFF before the hearing;

E) receiving and using family-court filings supplied by Hernandez's counsel in the Honor Council process;

F) restricting PLAINTIFF'S access, including ID, gate, and network access, while the disciplinary process was pending; and

G) issuing and maintaining a final expulsion decision based on the foregoing process.

245.     The foregoing facts support a reasonable inference of a meeting of the minds between Bernstein and STU. Those facts include Bernstein's inquiry into PLAINTIFF'S law-school status on **August 1, 2017**, PLAINTIFF'S observation of Bernstein with STU personnel

Page **29** of **31**

including Dean Lawson and Patricia Moore on or about **October 23, 2017**, the filing restriction imposed the following day, Bernstein's later use of themes concerning PLAINTIFF'S academic and professional status, Bernstein's post-recusal transmission of official accusations and recusal materials to STU, STU's immediate use of those materials to initiate discipline, and STU's simultaneous use of family-court filings separately supplied by Segarra.

246. PLAINTIFF alleges that Bernstein and STU did not act through isolated or accidental events. Their acts were interdependent and operated together to bring about PLAINTIFF'S suspension, expulsion, and termination of PLAINTIFF'S relationship with STU.

247. As a direct and proximate result of Defendants' conspiracy and overt acts in furtherance of it, PLAINTIFF suffered damages including loss of continued enrollment, loss of degree completion and certification opportunities, impairment of licensing and professional prospects, reputational harm, emotional distress, and other damages to be proven at trial.

248. Defendants are jointly and severally liable for the damages caused by the conspiracy, and because Defendants' conduct was intentional, malicious, and carried out in conscious or reckless disregard of PLAINTIFF'S rights, punitive damages are recoverable to the extent permitted by law.

**WHEREFORE**, PLAINTIFF demands judgment against Defendants STU and Scott Bernstein, jointly and severally, for compensatory damages, punitive damages to the extent permitted by law, costs, pre-judgment and post-judgment interest as allowed by law, and such other relief as the Court deems just and proper.

## § 8. DAMAGES

249. PLAINTIFF seeks damages and relief as stated in each count.

250. PLAINTIFF pleads pre–**July 22, 2024** facts for context, motive, state-action relationship, joint-action relationship, conspiracy formation, continuity, and common-nucleus purposes. PLAINTIFF seeks compensatory and punitive damages on the federal causes of action only for operative acts occurring after the **July 22, 2024** dismissal of the prior federal action, Case No. 23-cv-21663. This limitation does not apply to PLAINTIFF'S state-law causes of action, including the STU-related claims.

251. PLAINTIFF also seeks punitive damages where permitted by law, prejudgment and post-judgment interest where permitted by law, costs, attorney's fees where authorized by

law, declaratory and injunctive relief where authorized by law, and any other relief available under the causes of action alleged.

## § 9.    PRAYER FOR RELIEF

252.    WHEREFORE, PLAINTIFF respectfully requests that the Court enter judgment in PLAINTIFF'S favor and grant the relief requested in Counts I through VI, together with costs, interest, attorney's fees where authorized by law, and any other relief the Court deems just and proper.

## § 10.    JURY DEMAND

A) PLAINTIFF demands trial by jury on all claims so triable.

Respectfully submitted,

Dated: May 6, 2026

FRANK E. POLO, SR.
PLAINTIFF, Pro Se
1475 SW 8th St Apt 411,
Miami, FL. 33135
Telephone: 305-901-3360
Email: Frank.Polo@msn.com